IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NORTH CYPRESS MEDICAL CENTER   §
OPERATING CO., LTD. AND NORTH   §
CYPRESS MEDICAL CENTER   §
OPERATING COMPANY GP, LLC.   §
  §             CIVIL ACTION NO.
VS.   §
  §
CIGNA HEALTHCARE AND   §
CONNECTICUT GENERAL LIFE   §
INSURANCE COMPANY   §

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGES OF SAID COURT:

COME NOW Plaintiffs, **NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD.** and **NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC,** (collectively, "North Cypress" or "Plaintiffs") and file this Original Complaint complaining of Defendants, **CIGNA HEALTHCARE** and **CONNECTICUT GENERAL LIFE INSURANCE COMPANY** and would show the following:

### PARTIES

1.     Plaintiff North Cypress Medical Center Operating Co., Ltd. is a Texas limited partnership doing business in Harris County, Texas.

2.     Plaintiff North Cypress Medical Center Operating Company GP, LLC. is a Texas limited liability company doing business in Harris County, Texas.

3.     Defendant Cigna Healthcare is a corporation doing business in Texas, and during all material times acted in most cases as a "third party administrator" of various employers'

healthcare plans and may be served through its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas  75201.

4.       Defendant Connecticut General Life Insurance Company ("Connecticut") is a corporation doing business in Texas, and during all material times acted in most cases as a "third party administrator" of various employers' healthcare plans and may be served through its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas  75201. (Cigna and Connecticut shall be collectively referred to herein as "Cigna".)

## JURISDICTION AND VENUE

5.       Plaintiffs' claims arise under 29 USC §§ 1001, *et seq.*, Employment Retirement Income Security Act ("ERISA"), under 28 USC § 1331 (federal question jurisdiction) and under 28 USC § 1332 (diversity of citizenship).

6.       Venue is appropriately established in this Court under 28 USC § 1391 because Defendant Cigna conducts a substantial amount of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRODUCTION

7.       Plaintiffs assert claims sounding in ERISA as well as applicable state law. Plaintiffs own and/or operate North Cypress Medical Center and thus, are providers of medical services.

8.       Plaintiffs bring this action pursuant to healthcare plans directly insured and/or administered by Cigna.  The plans at issue, PPO and POS permit subscribers to obtain healthcare services from facilities such as North Cypress which have not entered into contracts with CIGNA (referred to as "out-of-network" or "non-participating" providers).  Furthermore, HMO plans are at issue since Cigna members/subscribers utilize North Cypress' emergency room facilities which will be covered under their respective HMO plans.  Cigna is required under the terms of

2

its healthcare contracts and state law to promptly pay benefits for such out-of-network and emergent care services based on the usual, customary and reasonable ("UCR") rates for those services. Under information and belief, Cigna has breached its ERISA-governed plan language and non-ERISA contracts by using, either intentionally or recklessly, flawed or inadequate data to determine UCR amounts, which results in reimbursements well below actual UCR for such out-of-network and emergent care medical services. Furthermore, Cigna has failed to promptly pay these claims to North Cypress.

9.      Generally, a patient's healthcare benefit plan is governed by the applicable provisions of ERISA, 29 USC §§ 1001, *et seq*. The patient's ERISA health plan is interpreted by the plan administrator, which is the employer and not by a third party administrator such as Cigna. The employee member pays a part of the cost of the insurance. The plan provides the employee member certain benefits, which include the right to go to a doctor or facility to treat illness and to obtain reimbursement.

10.     With regard to all Cigna beneficiaries/members/subscribers, North Cypress requires that he or she signs documents whereby the employee member agrees to be personally responsible for all charges of North Cypress. As a part of these documents, North Cypress obtains an Assignment of Benefits and Rights that makes North Cypress a beneficiary of the ERISA plan and the non-ERISA contracts. North Cypress does not waive a deductible or co-payment by the acceptance of the Assignment. With this beneficiary status conferred upon North Cypress comes the standing to sue Cigna under ERISA as well as pursuant to non-ERISA contracts.

3

## APPLICABLE FACTS

*Improper UCR Determinations:*

11.     Cigna directly insures many group health plans.  When Cigna insures such group health plans, it functions as the third party "plan administrator" as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators.  Cigna also acts as a direct insurer for numerous patients who receive benefits at North Cypress.  Under ERISA, the plan administrator and fiduciary are defined as follows:

     (a)    the term "administrator" means –

          (i)    the person specifically so designated by the terms of the instrument under which the plan is operated;

          (ii)    if an administrator is not so designated, the plan sponsor; or

          (iii)    in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

     (b)    a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretional authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or to other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 405(c)(1)(B).

12.     Cigna also functions as a fiduciary for self-funded health plans and is obligated to comply with ERISA's fiduciary duties.  Cigna exercises discretionary authority and control in its interactions with self-funded health plans and their subscribers.  Thus, Cigna is a fiduciary and administrator as defined by ERISA.

13.    By making UCR determinations without valid or appropriate data to support reduced payments, Cigna violated its fiduciary obligations under ERISA as well as disclosure and other statutory obligations.

14.    As noted above, when Cigna insures a plan directly, as well as when it exercises discretionary authority or control, Cigna is an ERISA fiduciary.  Cigna therefore owes fiduciary duties to all subscribers in its ERISA plans and also to North Cypress as a beneficiary and assignee of the Assignment of Benefits and Rights signed by Cigna's members/subscribers who procure and receive services at North Cypress.

15.    Under present information and belief, rather than setting out rates for healthcare services based on what providers actually charge in the market place, Cigna utilizes relative values which are substantially less than those actually charged in the market place.  Further, under present information and belief, Cigna obtains its substantially low UCR figures by under-reporting the actual number of procedures performed in a geographic area and often eliminating the highest charges for each type of medical procedure maintained in its database; including charges for medical procedures from other, and non-comparable, geographic areas, in which the provider charges are lower; failing to segregate procedures performed by providers of the same or similar skill and experience level, but rather, indiscriminately blending together all provider charges by procedure code without regard to skill or experience level; applying unsupported edits or "scrubbing" to exclude data that is not justified based on statistical analyses; *and/or*, lacking control, such as basic auditing, to ensure the validity and authenticity of data submitted to it for inclusion in its database.[1]

---

[1]On or about February 18, 2009, Cigna agreed to end its use of databases (Ingenix/United Healthcare) to determine payments for out-of-network medical services, but not before utilizing such databases to both North Cypress' and Cigna's members' detriment.

16.    On many occasions, Cigna made UCR determinations on claims submitted by North Cypress and paid amounts grossly less than the charges customarily charged by North Cypress and other equivalent facilities, well below fair or customary market rates, and on many occasions, failed to promptly pay claims as required by law.  In situations where Cigna acts as the insurer, the benefit to making lower-than-required reimbursements is clear:  the money saved goes into Cigna's coffers.  However, when Cigna acts as a third party administrator, the savings obtained by making lower-than-required reimbursements is passed on to its self-insured plans and Cigna is compensated based upon a percentage of savings and/or retention of services.  In either event, Cigna makes more money.

17.    As an acute care facility, North Cypress is required by both federal and Texas law to provide services to all patients seeking emergency care, including Cigna's PPO/POS and HMO members/subscribers.  See, e.g., (i) the Emergency Treatment and Active Labor Act, 42 USC § 1395dd - if North Cypress does not comply with this Act, it is subject to a civil penalty of $50,000 per violation and civil liability for personal injuries under state law 42 USC § 1395dd(d) and (d)(2); and, (ii) §§ 241.027, *et seq.*, Tex. Health & Safety Code (Vernon's 2006).  Many of these patients maintain policies with Cigna or have self-funded policies which are administered by Cigna.  On most occasions, Cigna will either pay substantially less than the emergency room charges claimed by North Cypress, sometimes as low as 1% and on many occasions will refuse to make any payments.  North Cypress has repeatedly requested from Cigna information and data regarding Cigna's determination as well as payments of the claims.  Despite its repeated requests, Cigna failed to provide such data or documentation and never provided adequate redress.  Since North Cypress is required by both federal and state laws to provide emergent care services to Cigna's members/subscribers, it is placed in a precarious financial position when

6

Cigna either underpays or fails to pay North Cypress for same.  For example, North Cypress will provide emergency room services for $20,000 of which Cigna pays only $200.00 or less, or nothing at all.  Such practices can quickly bankrupt an acute care hospital and put it out of business.  Public policy alone should prohibit these actions.  North Cypress should not be required by law to provide a community service or perform an act dictated by public policy only to have the health insurer, Cigna financially benefits from same at North Cypress' and the members' expense.

18.     Pursuant to §§ 843.338 and 843.351, Tex. Ins. Code, Cigna is/was required to pay North Cypress' claims, including emergency room claims, not later than the forty fifth (45) day after the date on which Cigna received a clean claim from North Cypress.  This, Cigna failed to do.

19.     As a consequence of Cigna's practices, North Cypress has been reimbursed in amounts substantially less than what it should have been paid pursuant to the healthcare plans of their subscriber patients and in some instances, nothing at all.  Cigna's unilateral reductions in reimbursements to North Cypress are greater than seventy-five (75%) of the usual, customary and reasonable rates.   Cigna pursued standard and uniform policies in making UCR determinations in a fashion that conflicted with its contractual obligations under such plans and, in addition, it has misrepresented to its subscribers and the assignee thereof, North Cypress, that the UCR amounts were calculated on the basis of valid data or legitimate reasons.  When Cigna acts as a third party administrator, it should not be exercising fiduciary duties.  However, under ERISA, once Cigna undertook the exercise of fiduciary functions such as determining to pay less-than-required benefits to North Cypress, Cigna became an ERISA fiduciary.  Specifically,

Cigna made decisions for the plans not for the benefit of the plan or its members (as a fiduciary must) but for the benefit of Cigna.

***"Prompt Pay Discounts":***

20.     Cigna has claimed that North Cypress' business decision to provide patients with prompt pay discounts is improper and has denied the payments of many claims based upon that flawed logic. Each individual member participant has made an economic investment in his or her healthcare by paying the premiums and by making any additional payments to the provider. Cigna's actions in this regard serve to maximize the plan member's out-of-pocket expenses and are contrary to its fiduciary duties/responsibilities to the beneficiaries in both its role as an insurer and a third party administrator.

21.     North Cypress has come to the conclusion, for the purpose of collections, that it is in a better financial position to collect money from the patient upfront – or offer a substantial discount if paid in a short period of time after the procedure is provided rather than having to turn the accounts receivable over to a collection company or attorney. These accounts receivable can only be sold for approximately one cent on the dollar because they virtually have no value. Moreover, collection companies and attorneys require excessive fees of up to 80%, assuming one can find such a collection company or attorney, who would be willing to take on a medical collections case. North Cypress believes its best and most reasonable option is to follow a collection policy that will maximize its cash flow.

22.     Like most hospitals in the United States, North Cypress is confronted with cash flow shortages. In order to survive and provide the highest level of medical care, North Cypress had adopted a business plan to seek the highest level of collections from its patients. This business plan recognizes three basic factors:

a.      a patient can only pay what he or she can afford to pay;

b.      providing medical services in our society is costly; and,

c.      collection actions against patients are not economically feasible.

23.     Consequently, North Cypress' business model provides that it will discount its facility and medical fees if the patient pays a certain amount within a fixed period of time.  If the patient does not pay that amount within the applicable time period, then the discount will not apply.

24.     As a provider of medical services, North Cypress seeks to provide the highest level of medical services at a fee structure which is affordable to its patients.  It would be ineffective for North Cypress to establish a collection department that would antagonize the community and individual patients through harassing telephone calls, turning collections over to a collection agency and ultimately lawsuits.  The collection methodology adopted by North Cypress necessarily takes into consideration not only its needs but the needs of the community and its individual members.

25.     Every individual that becomes a patient at North Cypress, either through emergent care or elective care signs documentation that clearly states that the patient is totally responsible for all facility and medical charges.  The basic charge for all procedures at North Cypress is a non-discounted charge.  The patients are personally liable for these basic charges because North Cypress does not waive this amount.  Moreover, prior to any meeting with a member of the hospital staff, a patient is informed of the discounted collection procedure.

26.     There are never discussions at any time of any waiver of any facility or medical fees. The collection procedures at North Cypress are not advertised in any fashion whatsoever to the community at large or to any individual patient. Each participant, in writing, signs his or her

rights under his or her health benefits plan to North Cypress. North Cypress thereby becomes a beneficiary under the terms of the healthcare plan of the participant.

27.    In many of the transactions complained of herein, Cigna acts solely as a third party administrator of employee health benefit plans. As a third party administrator, Cigna is responsible not only to the employer which adopted the healthcare plan but also to the individual employee members. The health benefit plans at issue are governed by ERISA. ERISA requires that the interpretation and implementation of the plan shall be solely in the best interest of the participants and beneficiaries for the exclusive purpose of providing benefits for participants and their beneficiaries. This is the public policy as set forth in ERISA. The interpretation of the rights of employees is the responsibility of the plan administrator or the trustees of the healthcare plan. Cigna is neither, and thus, does not have the authority to interpret an employee healthcare plan document. Nonetheless it does and thereby becomes an ERISA fiduciary for the benefit of the plan and its members.

28.    The employee members contribute along with the employer to the cost of administering the plan and the benefits provided under the plan. The employee participant is promised at least two benefits under the terms of the healthcare plan:

        a.    the participant can seek the healthcare provider's choice (freedom of choice); and,

        b.    the participant can expect reasonable reimbursements for healthcare costs.

29.    Cigna has wrongfully attempted to adopt the role of both administrator and trustee by making decisions as to what is allegedly in the best interest of the employee participants. As noted, Cigna has denied services to employee participants rendered at North Cypress and/or has inappropriately and unilaterally reduced North Cypress' charges for services provided to

10

beneficiaries of plans administered by Cigna claiming that North Cypress has engaged in alleged wrongful "prompt pay discounts" notwithstanding the fact that under federal law, including Medicare rules and/or regulations, prompt payment discounts are acceptable because there is a recognition that such a program is not implemented with an improper purpose but rather for the purpose of successful bill collection.  North Cypress has not engaged in any wrongful "prompt pay discounting" and Cigna has breached fiduciary duties that it took on in its refusal to pay legitimate and clean claims.

30.     Furthermore, as noted above, Cigna has wrongfully attempted to claim that pursuant to Texas law, charges made by North Cypress are inappropriate or unlawful. Notwithstanding, Texas statutes are not applicable to self-funded ERISA plans.

31.     The employee participant covered under a self-funded ERISA plan has among his/her benefits the right of freedom of choice to any medical provider and not to have to go into a hostile collection process with the provider of medical services.  This is especially true when the employees are paying a significant amount of the total cost of the healthcare program.

32.     Furthermore, the OIG Advisory Opinion No. 08-03 provides the bases for prompt pay discounts which were adhered to by North Cypress.

33.     Based upon the foregoing, Cigna has wrongfully withheld payments from North Cypress in violation of both state and federal law.

***Document Requests/Civil Penalties:***

34.     The civil enforcement section of ERISA, particularly 502(C), codified at 29 USC § 1132(c)(1)(B) provides the following:

> "Any administrator who fails to refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by

11

mailing the material requested to the last known address of the requesting participant or beneficiary within thirty (30) days after such request may in the court's discretion be personally liable to the participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such relief as it deems proper."

35.     When a doctor or hospital, that is a healthcare provider, holding valid assignments of claims and rights, they are proper beneficiaries for the purposes of this Section.  It has been well established that an assignee of a beneficiary in an ERISA-governed insurance policy has standing to sue under ERISA.  See, *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988); *Tango Transport v. Healthcare Financial Services, Inc.*, 322 F.3d 888 (5th Cir. 2003); *I. V. Services of America, Inc. v. Trustees of the America Consulting Engineers Council Ins. Trust Fund*, 136 F.3d 114 (2nd Cir. 1998).

36.     In *Total Sleep Diagnostics, Inc., et al v. United Healthcare Ins. Co., et al*, 209 U.S. Dist. Lexus 27572, the United States District Court for the Eastern District of Louisiana held that an assignee such as North Cypress is entitled to seek penalties and relief for failure to produce plan documents under § 104(b)(4), 29 USC § 1024(b) and 29 USC § 1132(c) and that the assignee has an alternative means for seeking documents under § 503.

37.     North Cypress has requested from Cigna both plan and plan associated documents on claims made by North Cypress.  Cigna has refused to provide such documents.  North Cypress is entitled to the requested plan documents and associated documents and that a civil penalty of $100 per day for failure to timely comply with the request under 29 USC § 1132(c) be imposed until the documents are produced.

## COUNT 1

### CIGNA'S FAILURE TO COMPLY WITH
### GROUP PLANS IN VIOLATION OF ERISA:
### PROVIDER'S CLAIMS AS ASSIGNEE

38.     The allegations contained in paragraphs 1 through 37 are realleged and incorporated herein as if set forth *verbatim*.

39.     North Cypress is entitled to enforce the terms of the plans, as assignees of directly insured subscribers/members under 29 USC § 1132(a)(1)(B), for whom Cigna has made UCR determinations without valid data and/or has done so in an arbitrary fashion, and to obtain appropriate relief under such provision.

40.     Cigna breached the terms of the plans of such directly insured subscribers/members in whose shoes the assignee facility (North Cypress) stands, by making UCR determinations that had the effect of reimbursing less than the stated percentage of their provider's actual charges without valid data to substantiate such determinations and/or in an arbitrary fashion.

41.     As a proximate result of Cigna's wrongful acts, North Cypress has been damaged in the amount of at least $20 million.

## COUNT 2

### CIGNA'S BREACH OF FIDUCIARY DUTY
### OF LOYALTY AND CARE UNDER ERISA

42.     The allegations contained in paragraphs 1 through 41 are realleged and incorporated herein as if set forth *verbatim*.

43.     North Cypress, as the assignee of ERISA subscribers/members is entitled to assert a claim for relief under Cigna's breach of the fiduciary duties of loyalty and care under 29 USC § 1132(a)(3).

13

44.    In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, Cigna is a fiduciary.

45.    The duty of loyalty imposed on ERISA fiduciaries, such as Cigna, prohibits self-dealing and financial arrangements that benefit the fiduciary at the expense of plan subscribers and their assignees under 29 USC § 1106.

46.    Cigna breached its duty of loyalty to the assignee, North Cypress by making reduced UCR determinations without valid data to substantiate such determinations and/or doing so in an arbitrary fashion, by omitting material information about its databases and/or determinations from its subscribers and/or by making misrepresentations about its UCR determinations.

47.    By engaging in the conduct described above, Cigna failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan.  29 USC § 1104(a)(1)(B) and (D).

48.    Cigna further breached its duty of care by failing to act solely in their interest, or for the exclusive purpose of providing benefits to participants and subscribers.  29 USC § 1104(a)(1)(A).

49.    As a direct and proximate cause of such breach of fiduciary duties of loyalty and care, the assignee North Cypress has been and continues to be damaged in the amount of at least $20 million.

## COUNT 3

### CIGNA'S FAILURE TO PROVIDE
### FULL AND FAIR REVIEW UNDER ERISA

50.     The allegations contained in paragraphs 1 through 49 are realleged and incorporated herein as if set forth *verbatim*.

51.     Cigna functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator for such plan.  As such, North Cypress is entitled to assert a claim for relief under 29 USC § 1132(a)(3).

52.     Although Cigna was obligated to do so, it failed to provide a "full and fair review" and otherwise failed to make necessary disclosures pursuant to 29 USC § 1133 (and its regulations).

53.     North Cypress was proximately harmed by Cigna's failure to comply with 29 USC § 1133 and has been damaged in the amount of at least $20 million.

## COUNT 4

### CIGNA'S VIOLATIONS OF CLAIMS
### PROCEDURE VIOLATIONS UNDER ERISA

54.     The allegations contained in paragraphs 1 through 53 are realleged and incorporated herein as if set forth *verbatim*.

55.     Cigna is an insurance company that is subject to regulation under the insurance laws of more than one state, including the State of Texas.  Further, Cigna processes benefit claims for self-funded plans providing claims filing and notices of decisions to policyholders in such plans.

56.     Cigna is an insurance company which therefore must comply with claims procedures defined by law (e.g., 29 CFR § 2560.503-1) for subscribers and members of which North Cypress is an assignee.  North Cypress is therefore entitled to seek additional relief if an insurance company failed to comply with federal law.  29 USC § 1132(a)(3).

57.     Cigna violated these claims procedure regulations by engaging in conduct that rendered its claims procedures and appeals process unfair to subscribers and their assignees, North Cypress.

58.     As a proximate result of its violation of such regulations, North Cypress has been harmed in the amount of at least $20 million.

## COUNT 5

### REQUEST FOR INFORMATION

59.     The allegations contained in paragraphs 1 through 58 are realleged and incorporated herein as if set forth *verbatim*.

60.     The acts and omissions on the part of Cigna in failing to comply with the request for information pursuant to 29 USC § 1132(c)(1)(B) provides a civil penalty/sanction in the amount of $100 a day for such failure or refusal to provide the requested documents.  As such, North Cypress is not only entitled to the requested documents through the appropriate Order of this Court, but is also entitled to the $100 per day civil penalty.

## COUNT 6

### STATE CAUSES OF ACTION

61.     The allegations contained in paragraphs 1 through 60 are realleged and incorporated herein as if set forth *verbatim*.

62.   The acts and omissions on the part of Cigna noted hereinabove constitute breaches of contract, breaches of § 843.338, Tex. Ins. Code (Vernon's 2006) (prompt payment of claims); and, breaches of §§ 843.338 and 843.351, Tex. Ins. Code (failure to pay claims within the statutory period).

63.   Pursuant to § 843.342(a), if Cigna fails to pay North Cypress' claims within the forty-five (45) day period, it must pay the claim plus a penalty in the amount of lesser of fifty percent (50%) of the difference between the billed charges submitted on the claim and the rate or $100,000.  Pursuant to § 843.342(b), if the claim is paid on or after the forty sixth (46th) day and before the ninety first (91st) day, after the date that Cigna was required to pay the claim, Cigna is required to pay the penalty in the amount of the lesser of one hundred percent (100%) of the difference between the billed charged as submitted on the claim and the contracted rate or $200,000.  In this situation, since Cigna has not only failed to pay the claims within the ninety first (91st) day, pursuant to § 843.342(c), Cigna is required to pay the penalty computed under Section (b) plus eighteen percent (18%) annual interest in the amount.   Since Cigna also wrongfully paid only portions of claims, pursuant to § 843.342(d), in addition to the contracted amount owed, an additional penalty in the amount of the lesser of fifty percent (50%) of the underpaid amount or $100,000 is due.  On those claims that have not been paid within ninety one (91) days, pursuant to § 843.342(c), Cigna must pay the balance of the claim in the amount of the lesser of one hundred percent (100%) of the underpaid amount or $200,000.

64.   The amounts due hereunder together with the statutory penalties far exceed the jurisdictional limits of this Court.

## COUNT 7

### ATTORNEY'S FEES

65.     The allegations contained in paragraphs 1 through 64 are realleged and incorporated herein as if set forth *verbatim*.

66.     Pursuant to the applicable provisions of ERISA, § 17.41, Tex. Bus. & Comm. Code, §§ 38.001, *et seq.*, Tex. Civ. Prac. & Rem. Code, and § 843.343, Tex. Ins. Code, the Plaintiffs are entitled to the award of attorney's fees in the amount of at least $250,000.

## COUNT 8

### PUNITIVE/EXEMPLARY DAMAGES

67.     The allegations contained in paragraphs 1 through 66 are realleged and incorporated herein as if set forth *verbatim*.

68.     The acts and omissions on the part of Cigna was committed with malice and were intentional in nature, justifying the imposition of punitive and exemplary damages against Cigna, jointly and severally, in the amount of at least Thirty Million and No/100 Dollars ($30,000,000.00).

### ADDITIONAL RELIEF

69.     The allegations contained in paragraphs 1 through 68 are realleged and incorporated herein as if set forth *verbatim.*

70.     North Cypress is also entitled to all relief whether or not requested herein pursuant to Rule 54(c), Fed. R. Civ. P. which is supported by the facts and evidence presented by North Cypress, including but not limited to injunctive relief.

## DAMAGES

71.     The allegations contained in paragraphs 1 through 70 are realleged and incorporated herein as if set forth *verbatim*.

72.     The Plaintiffs are entitled to compensatory damages in the amount of at least $20 million and punitive and exemplary damages in the amount of at least $30 million.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs **NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD.** and **NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC** respectfully pray that upon final hearing hereof that they have judgment of and against Defendants Cigna Healthcare and Connecticut General Life Insurance Company for damages requested herein, both actual and punitive/exemplary, attorneys' fees, both pre-judgment and post-judgment interest at the highest rates allowed by law; taxable costs; the entry of an Order requiring Cigna to produce the requested plan and associated documents; and, such other and further relief to which they may show themselves justly entitled, including but not limited to injunctive relief when requested.

Respectfully submitted,

/s/

By:_____

**J. DOUGLAS SUTTER**
State Bar No. 19525500
Federal ID No. 3791

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

**OF COUNSEL**

**KELLY, SUTTER & KENDRICK, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, Texas  77056
(713) 595-6000 – Telephone
(713) 595-6001 – Facsimile

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury as to the State and non-ERISA causes of action.

/s/
_____
**J. DOUGLAS SUTTER**