UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL CENTER | § | |
| OPERATING CO. *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-2556 |
| | § | |
| CIGNA HEALTHCARE *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Connecticut General Life Insurance Company and CIGNA Healthcare's (collectively, "Defendants" or "CIGNA") Motion to Dismiss Plaintiffs' First Amended Complaint and to Strike Jury Demand. (Doc. No. 57.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that CIGNA's motion should be **GRANTED** in part and **DENIED** in part.

### I.      BACKGROUND

Plaintiffs North Cypress Medical Center Operating Co., LTD and North Cypress Medical Center Operating Company GP, LLC (collectively, "North Cypress") own and operate an approximately 150-bed general acute care hospital in Houston, Texas. North Cypress is a full service hospital offering a range of medical care facilities, such as an emergency room, surgery center, and oncology and pediatrics units. The hospital does not maintain contracts with healthcare insurance carriers and, thus, is considered "out-of-network" for purposes of reimbursement for medical treatment and services it renders to patients.

North Cypress alleges that CIGNA insures and/or administers various employers' ERISA-governed healthcare plans. North Cypress treats thousands of patents, including those

1

covered by plans CIGNA administers and/or insures.  According to North Cypress, the Preferred Provider Organization ("PPO") and Point of Service ("PSO") ERISA plans at issue permit subscribers/members to obtain healthcare services from out-of-network facilities like North Cypress.  Further, Health Maintenance Organization ("HMO") plans insured and/or administered by CIGNA are at issue because CIGNA subscribers utilize North Cypress' emergency room facilities, and that care is covered under the respective HMO plans.

North Cypress alleges that, following medical treatment and services provided to plan members/subscribers, CIGNA is obligated by the terms of the various plans to pay benefits for such out-of-network and emergent care services based on the usual, customary, and reasonable ("UCR") rate for that service in the relevant market.  Notwithstanding this legal duty, North Cypress alleges, first, that CIGNA has underpaid North Cypress considerably for out-of-network and emergency services it provided to patients participating in health plans insured and/or administered by CIGNA.[1]  North Cypress alleges that this significant underpayment has resulted, in part, from CIGNA's intentional or reckless use of flawed or inadequate data to calculate UCR amounts.  Secondly, CIGNA has allegedly failed to promptly pay North Cypress' reimbursement claims.  Third, North Cypress contends that CIGNA entered into "Discount Agreements" with North Cypress via a re-pricing agent, through which CIGNA agreed to pay a discounted price of North Cypress' invoices for CIGNA's members.  According to North Cypress, CIGNA failed to pay even the discounted amount agreed to in the contracts.  As a result of CIGNA's acts, North Cypress claims that it has been damaged in the amount of at least $20 million.  To remedy these alleged violations, North Cypress has brought claims against CIGNA pursuant to the Employee

---

[1] With respect to emergent care, North Cypress alleges that CIGNA "will either pay substantially less than the emergency room charges claimed by North Cypress, sometimes as low as 1% and on many occasions will refuse to make any payments."  (Compl. ¶ 17.)

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, as well as Texas state law.

Specifically, North Cypress brings the following ERISA claims: (1) a claim to recover benefits under ERISA § 502(a)(1)(B); (2) claims for breach of fiduciary duty under ERISA § 502(a)(3); (3) a claim for failure to provide a full and fair review under ERISA § 502(a)(3); (4) a claim for violations of claims procedures regulations under ERISA § 502(a)(3); and, (5) a claim for failure to comply with a request for information under ERISA § 502(c)(1)(B).  North Cypress also alleges that CIGNA failed to promptly pay benefits in violation of Texas Insurance Code §§ 843.338 and 843.351, and that it breached contracts with North Cypress.

CIGNA has brought the present motion to dismiss challenging the sufficiency of various aspects of North Cypress' first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]  CIGNA also moves to strike North Cypress' amended jury demand as untimely and improper pursuant to Federal Rule of Procedure 38(b).

CIGNA argues that all of North Cypress's ERISA claims must be dismissed for lack of standing, as North Cypress "does not plead facts showing that it received valid assignments from its patients, that its patients suffered the injury-in-fact required for them to have assignable claims, or that it exhausted the available administrative remedies."[3]  (Mot. at 3.)  North Cypress' ERISA claims must also be dismissed for substantive flaws, CIGNA argues, including that CIGNA is not a proper defendant for two of North Cypress' claims, and that North Cypress cannot seek money damages under ERISA § 502(a)(3).  CIGNA further argues that North

---

[2] All references to North Cypress' complaint are to the first amended complaint.  (Doc. No. 46.)  CIGNA previously filed a motion to dismiss North Cypress' original complaint.  (Doc. No. 9.)  After North Cypress filed its first amended complaint, and after CIGNA moved to dismiss that complaint, CIGNA's previous motion to dismiss was dismissed as moot.  (Doc. No. 59.)

[3] CIGNA's Rule 12(b)(1) motion for lack of subject matter jurisdiction is brought on the basis that North Cypress has failed to plead facts demonstrating it has standing to sue CIGNA.  Accordingly, the Court will treat CIGNA's 12(b)(1) motion as a "facial attack" on North Cypress' complaint.  Section II, *supra*, discusses the legal standard governing such motions.

Cypress' state law claims are preempted by ERISA, and that even if they were not, North Cypress did not adequately plead them.

CIGNA also objects to the extent that North Cypress' complaint amends its jury demand to include its ERISA claims.  North Cypress' original jury demand was limited to its state law, non-ERISA claims.  Because North Cypress' complaint does not raise any new claims or materially different allegations, and because North Cypress does not have a right to a jury trial for its ERISA claims, CIGNA argues, the demand is untimely and improper, and should be struck.

## II.  LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000).  Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (internal citation omitted).

"A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Castro v. United States*, 560 F.3d 381 (5th Cir. 2009), *rev'd en banc on other grounds*, 608 F.3d 266 (5th Cir. 2010).  "[U]nder Rule 12(b)(1), the court may find a plausible set of facts supporting subject matter jurisdiction by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Lane*, 529 F.3d at 557). "A 'facial attack' on the complaint" challenging the court's subject matter jurisdiction pursuant to Rule 12(b)(1) "requires the court merely to look and see if [a] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## III.    ANALYSIS

### A.  Standing Arguments

CIGNA first argues that North Cypress' claims must be dismissed for lack of standing.[4] North Cypress, CIGNA contends, has not pled facts sufficient to demonstrate that it obtained valid assignments from its patients or that those patients suffered injuries necessary for assignable claims to exist. CIGNA also argues that North Cypress has failed to exhaust the available administrative remedies, which North Cypress must do before it may bring suit for a wrongful denial of benefits. The Court disagrees with CIGNA, however, that North Cypress has failed to plead facts sufficient to show it has standing to bring the present claims.

#### 1.  Valid Assignment

CIGNA first argues that North Cypress lacks standing to bring ERISA claims. "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir. 2005). Specifically, "an assignee of a plan participant has derivative standing to bring a cause of action

---

[4] Although not explicit in CIGNA's motion, the Court assumes that CIGNA's standing challenge is brought under Federal Rule of Civil Procedure 12(b)(1), as it implicates the Court's subject matter jurisdiction.

for enforcement under ERISA." *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891-92 (5th Cir. 2003).   This is so because a plan participant's assignee is considered a "beneficiary" of the plan and, therefore, may bring litigation to collect benefits owed under the plan.   *See* 29 U.S.C. § 1132(a)(1).   North Cypress alleges that it has acquired standing to sue for both ERISA and non-ERISA claims as its patients' beneficiary by routinely obtaining assignments of the patients' benefits and rights.

> Specifically, North Cypress' complaint alleges:
>
> With regard to all Cigna (sic)[5] beneficiaries/members/subscribers, North Cypress requires that he or she signs documents whereby the employee member agrees to be personally responsible for all charges of North Cypress.   As part of these documents, North Cypress obtains an Assignment of Benefits and Rights that makes North Cypress a beneficiary of the ERISA plan and the non-ERISA contracts.   North Cypress does not waive a deductible or co-payment by the acceptance of the Assignment.

(Compl. ¶ 10).   Elsewhere in the complaint North Cypress alleges that "[e]ach participant, in writing, signs his or her rights under his or her health benefits plan to North Cypress.   North Cypress thereby becomes a beneficiary under the terms of the healthcare plan of the participant." (*Id*. ¶ 26.)   Despite the well-pleaded facts in North Cypress' complaint that it obtains "an Assignment of Benefits and Rights that makes North Cypress a beneficiary of the ERISA plan and the non-ERISA contracts" from each of its patients, CIGNA maintains that they are insufficient to demonstrate North Cypress' standing to bring ERISA claims.   Rather, CIGNA contends, to bring ERISA claims as an assignee, North Cypress must show that it obtained a valid and full assignment of benefits.   North Cypress' complaint, it argues, offers nothing but conclusory assertions that it obtains assignments of benefits as a general matter, which is inadequate to meet its burden.

---

[5] Throughout North Cypress' complaint and its response to CIGNA's motion to dismiss, North Cypress refers to CIGNA as "Cigna."   When quoting from North Cypress' documents, the Court will hereinafter refrain from noting the differing capitalization.

The Court believes that CIGNA would have the Court hold North Cypress to a higher standard than the case law requires.  Indeed, taking North Cypress' allegations as true, as the Court is required to do, it obtains an assignment of rights from each patient, which is sufficient to confer beneficiary status upon it to bring ERISA claims.  The Court is permitted to dismiss the case at this stage "only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction."  Based on the facts alleged, North Cypress has met this burden.

The case law CIGNA cites does not hold to the contrary.  Indeed, in *American Surgical Assistants, Inc. v. United Healthcare of Texas, Inc.*, the plaintiff admitted that it did not obtain a valid assignment and the claim was dismissed on that basis.   No. 4:09-cv-0774, 2010 WL 1340557, at *4 (S.D. Tex. Mar. 30, 2010).  *Morgan v. MEBA Med. & Benefits Plan* is likewise inapposite in that it involved a motion to remand a case that was brought in state court alleging state law causes of action.  No. 07-6252, 2007 WL 4591233, at *3 (E.D. La. Dec. 28, 2007).  The defendant removed the case arguing that the controversy actually arose under ERISA and, thus, presented a federal question.  The court analyzed whether the plaintiff could have actually brought ERISA claims to determine whether ERISA preempted the plaintiff's state law causes of action.  It was in this context that the court determined there was no evidence that the plaintiff obtained a valid assignment necessary to pursue ERISA claims.  *Id.*  ("[Defendant] provides no evidence that [the plan participant] assigned his right to receive ERISA benefits to [Plaintiff]. Conclusory allegations that [Plaintiff] is an assignee, without more, is not sufficient to prove an assignment.")  The court was not passing on the sufficiency of the plaintiff's pleadings, but rather, it looked to the available evidence to determine whether the plaintiff could have actually

brought an ERISA claim.[6]  The court's analysis is, thus, not instructive in the present context. Again, in *Tuoro Infirmary v. American Maritime Officer*, the court considered, on a motion to remand, whether the plaintiff had a valid assignment to bring an ERISA claim in order to determine whether the plaintiff's state law claims were preempted.  No. 07-1441, 2007 WL 4181506, at *5-6 (E.D. La. Nov. 21, 2007).  This case, again, does not tell the Court anything about whether the plaintiff's pleading adequately alleged a valid assignment.  As in *Morgan*, it may have been unnecessary for the plaintiff to plead that it obtained an assignment in its original petition, which was filed in state court and alleged only state law causes of action.

The Court concludes that North Cypress has adequately pled the receipt of assignments from its patients that give it standing to sue CINGA for the denial of benefits allegedly owed under the plan.  At this stage, the Court must accept North Cypress' well-pleaded facts as true, and the allegations contained in North Cypress' complaint certainly make it plausible that it possesses standing through its patients to bring ERISA claims.

CIGNA also argues that North Cypress must plead additional elements for assignments to sue for breach of fiduciary duty under ERISA.  It must show, CIGNA argues, that "its patients expressly and knowingly assigned their rights to sue for breach of fiduciary duty."  *Am. Surgical Assistants*, 2010 WL 1340557, at *4.  *American Surgical Assistants*, however, cites to *Texas Life v. Gaylord Entertainment Co.*, for this proposition of law.  105 F.3d 210 (5th Cir. 1997).  *Texas Life* provides revealing context for the Fifth Circuit's holding that an "express and knowing" assignment is required.

> Because an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by

---

[6] In truth, based on the facts provided in the *American Surgical Assistants* court's order, it appears that the plaintiff did not attempt to plead that it obtained a valid assignment of rights to bring ERISA claims, as the plaintiff filed its case in state court and brought only state law causes of action.

> implication or by operation of law. Instead, only an express and knowing
> assignment of an ERISA fiduciary breach claim is valid.

*Id.* at 218.   In that case, on an appeal from a grant of summary judgment, a state insurance guaranty association argued that it had obtained an assignment to sue for breach of fiduciary duty through a state statute purporting to assign such claims by operation of law.   The guaranty association did not obtain an express assignment of rights; rather, it argued that, by accepting benefits under the state statute, the plan administrators assigned all of their policy rights and causes of action.   The Fifth Circuit found that the statute purporting to assign such claims was preempted by ERISA and there was no evidence that the plaintiff had obtained an assignment through other means.   Thus, it was by contrast to an assignment *by operation of law* that the Court held that an "express and knowing" assignment was required.   In this case, North Cypress is not relying on an implicit assignment or an assignment by operation of law.   Rather, North Cypress alleges that it obtained an express assignment of benefits and rights from the plan participants.   This is sufficient for North Cypress's complaint to withstand a facial attack on the Court's subject matter jurisdiction.

## 2. Injury-in-Fact

CIGNA next contends that North Cypress also lacks standing under the Article III of the United States Constitution.   As an assignee, CIGNA argues, North Cypress stands in the shoes of its patients and has standing only to the extent its patients do.   To have standing to bring an ERISA § 502(a)(1)(B) claim for underpaid benefits, CINGA argues that a plaintiff must have suffered or faced the threat of suffering an out-of-pocket loss relating to the benefits at issue. CIGNA contends that North Cypress has failed to allege that its patients suffered such out-of-pocket losses.

North Cypress's complaint contends that CIGNA's "actions . . . serve to maximize the plan member's out-of-pocket expenses and are contrary to its fiduciary duties/responsibilities to the beneficiaries in both its role as an insurer and a third party administrator."  (Compl. ¶ 20.) The complaint also states:

> Every individual that becomes a patient at North Cypress, either through emergent care or elective care signs documentation that clearly states that the patient is totally responsible for all facility and medical charges.  The basic charge for all procedures at north Cypress is a non-discounted charge.   The patients are personally liable for these basic charges because North Cypress does not waive this amount.

(Compl. ¶ 25.)  Taking these two statements together, North Cypress has alleged that its patients are responsible for all hospital charges and that, if North Cypress is not able to collect the appropriate amount from CIGNA, it must seek the unreimbursed portion directly from the patients.

Because North Cypress' patients are legally responsible for any charges CIGNA declines to reimburse in full, CIGNA's failure to pay adequate sums is clearly an injury-in-fact to North Cypress' patients.  The facts provided are sufficiently specific to demonstrate this injury.  The two cases CIGNA cites to the contrary involved motions for summary judgment under Federal Rule of Civil Procedure 56, not motions to dismiss and are, thus, not instructive at this stage.  In both cases, evidence in the record showed that there were no actual or threatened out-of-pocket losses.  Here, North Cypress has clearly alleged that its patients are responsible for the cost of services not reimbursed by CIGNA.  Naturally, these patients suffer greater out-of-pocket losses when CIGNA underpays North Cypress and, therefore, are injured for purposes of Article III standing.

### 3.   Failure to Exhaust Administrative Remedies

Generally, the Fifth Circuit requires that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000); *Coop. Benefit Adm'rs, Inc. v. Odgen*, 367 F.3d 323, 336 (5th Cir. 2004) (internal quotations omitted).  This rule is in place, in part, to "encourage the parties to resolve their dispute at the administrator's level." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999).  "Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense." *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 (5th Cir. 2008) ("'[W]e have never construed the [ERISA exhaustion] doctrine strictly as a jurisdictional bar' and have referred to it as a 'defense.'  Other circuits have expressly held that ERISA exhaustion is not jurisdictional, and we agree.") (internal citations omitted)).  Furthermore, "[a] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.*  (citing *Hall v. Hodgkins*, 305 Fed. Appx. 224, 228 n. 1 (5th Cir. 2008); *see also Wilson v. Kimberly-Clark Corp.*, 254 Fed. Appx. 280, 287 (5th Cir. 2007) ("[T]he Supreme Court has recently found-with respect to exhaustion requirements under the Prison Litigation Reform Act-that exhaustion is an affirmative defense, and that plaintiffs need not 'specially plead or demonstrate exhaustion in their complaints' to avoid 12(b)(6) dismissal.") (internal citations omitted)).  "An exception to this rule may apply if the plaintiff has alleged facts plainly indicating that an affirmative defense does apply, but Plaintiff has not done so here." *Am. Surgical Assistants, Inc.*, 2010 WL 565283, at *2; *see also Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).  The Court is persuaded that dismissal for failure to allege exhaustion of

12

administrative remedies is not appropriate on a motion to dismiss under either 12(b)(1) or
12(b)(6).

Even if dismissal for failure to exhaust were appropriate at this stage, North Cypress has
pled facts indicating that it was denied meaningful access to administrative remedies.  North
Cypress argues and the Court agrees that it could be excused from exhaustion on that basis.
Certainly, there are exceptions to the requirement that plaintiffs exhaust administrative remedies.
The Fifth Circuit has held that "'[e]xceptions to the exhaustion requirement are appropriate
where the available administrative remedies either are unavailable or wholly inappropriate to the
relief sought, or where the attempt to exhaust such remedies would be a patently futile course of
action.'"  *Davis v. AIG Life Ins.*, 945 F. Supp. 961, 967 (S.D. Miss. 1995) (quoting *Hessbrook v.
Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985)).

North Cypress contends that it could not have enjoyed meaningful access to
administrative remedies without possession of the information and data CIGNA used to
determine the amounts paid to North Cypress for services rendered to CIGNA's
members/subscribers.   North Cypress alleges that it "repeatedly requested from Cigna
information and data regarding Cigna's determination as well as payments of the claims.
Despite its repeated requests, Cigna failed to provide such data or documentation and never
provided adequate redress."  (Compl. ¶ 17.)  Elsewhere in the complaint, North Cypress repeats
that it "has requested from Cigna both plan and plan associated documents on claims made by
North Cypress.  Cigna has refused to provide such documents."  (Compl. ¶ 37.)

In *Bernstein v. Citigroup Inc.*, which presented facts similar to those here, the court
declined to dismiss the plaintiff's case on the ground that he did not allege exhaustion of
administrative remedies.   No. 3:06-CV-209-M, 2006 WL 2329385, *2-3 (N.D. Tex. July 5,

2006).  The plaintiff argued, as North Cypress does here, that it requested, but was not provided various plan documents, calculations, and correspondence necessary to pursue administrative remedies.  Indeed, like North Cypress, the plaintiff's complaint alleged that "'Plaintiff . . . repeatedly requested plan documents from Defendant . . . and Defendant wholly failed to respond in any manner whatsoever.'"  *Id*. at *3 n.3.  Noting that whether to apply the exhaustion requirement is discretionary, the court reasoned:

> Until [the plaintiff] could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures. . . . When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion.

*Id*. at *2 (quoting *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846-847 (11th Cir. 1990), *abrogated on other grounds*, *Murphy v. Reliance Standard Life Ins, Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001)).  Based on existing precedent, if North Cypress proves the facts it has alleged, it may be entitled to relief, and dismissal of its claims based on its alleged failure to exhaust administrative remedies would be therefore inappropriate at this juncture.  In other words, even if a complaint were subject to dismissal because it failed to allege exhaustion of remedies, North Cypress has pled facts making it plausible that it should be excused from the requirement on the basis that CIGNA withheld information required for North Cypress to pursue an administrative appeal.  Either theory provides a sufficient basis on which to deny CIGNA's motion to dismiss for failure to exhaust administrative remedies.

### B.  Alleged Substantive Flaws

In addition to the standing arguments it advances, CIGNA contends that North Cypress' claims are substantively flawed and, thus, fail to state a claim upon which relief can be granted.  First, it claims that North Cypress has not alleged that CIGNA is an ERISA benefit plan, and

that, in general, a claim under § 502(a)(1)(B) may be brought only against such plans.  Further, CIGNA argues, a claim for monetary relief under § 502(c) requires a plaintiff to seek relief from the plan administrator.  According to CIGNA, North Cypress has not alleged that CIGNA is the plan administrator for any of North Cypress' patients' plans.  CIGNA also argues that North Cypress cannot seek money damages, the only remedy that it requests in relation to its ERISA § 502(a)(3) claims.  Finally, CIGNA contends that North Cypress has not pled facts supporting the alleged violations underlying its § 502(a)(3) claims.

### 1.  Proper ERISA Defendants

### a.  Proper Defendants Under §502(a)(1)(B)

In Count 1 of North Cypress' complaint, it brings a claim against CIGNA pursuant to ERISA § 502(a)(1)(B).  ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  "This provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  CIGNA argues that a claim under § 502(a)(1)(B) may be brought *only* against a benefits plan and that such claims against other entities are improper.  In this case, North Cypress has alleged that CIGNA insures and/or administers health benefits plans.  CIGNA contends, however, that North Cypress does not, and cannot, allege that CIGNA is *itself* a benefit plan, and its § 502(a)(1)(B) claim therefore must be dismissed.

North Cypress counters that CIGNA is a proper defendant against whom North Cypress may bring a claim under § 502(a)(1)(B) because CIGNA controls plan administration.  Citing *Musmeci v. Schwegmann Giant Super Mkts., Inc.*, North Cypress urges that the Fifth Circuit has found entities other than benefit plans to be proper defendants.  In so doing, the court reasoned:

> While the language [of ERISA Section 502(d)(2)] suggests that the plan is the only proper party defendant, other Circuits have allowed employees to maintain actions against their employers for the denial of benefits [in cases when] . . . it was the employer's decision to deny benefits . . . and when the employer is the plan administrator or sponsor.

332 F.3d 339, 349 (5th Cir. 2003).  Accordingly, the court held that the employer (also the plan sponsor and administrator) in *Musmeci* was a proper defendant under § 502(a)(1)(B) because it was the entity that actually denied the benefits in question.  *Id*. at 350.  Indeed, "[t]he significant factor in the *Musmeci* case was that the employer had the ultimate decisionmaking authority as to whether the plaintiff was entitled to benefits under the plan."  *Kinnison v. Humana Health Plan of Tex. Inc.*, No. 07-381, 2008 WL 2446054, at *10 n. 25 (S.D. Tex. June 17, 2008) (citing *Carroll v. United of Omaha Life Ins. Co.*, 378 F. Supp. 2d 741, 747 (E.D. La. 2005)).

Following *Musmeci*'s reasoning, as well as that of other Circuits, district courts in the Fifth Circuit have "permit[ed] suits against non-plan defendants" when there is "evidence showing that such defendants exert control over plan administration."  *Delgado v. Citigroup Inc.*, No. V-06-39, 2008 WL 548801, at *9 (S.D. Tex. Feb. 26, 2008) (citing *Bernstein*, 2006 WL 2329385 at *7 (a claim under 502(a)(1)(B) "is not *per se* limited to plan defendants" and such claims have been allowed against non-plan defendants that "control[] administration of the plan") (internal quotations ommitted)).  Indeed, many Circuits have held that, a defendant that has control over plan administration may be sued properly under § 502(a)(1)(B).  *See, e.g.*, *Terry v. Bayer Corp.*, 145 F.3d 28, 35-36 (1st Cir. 1998) (proper defendant has authority or control

over administration); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (plan fiduciary is proper defendant); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006), *reh'g en banc denied*, 186 Fed. Appx. 983 (11th Cir. July 13, 2006) (party that controls administration is proper party).  By contrast, few Circuits have held that the plan itself is the *only* proper defendant in all circumstances, and some of those courts that maintained that position in the past have backed away from it in recent years.  *See, e.g.*, *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610-611 (7th Cir. 2007) (While "[g]enerally, in a suit for ERISA benefits, the plaintiff is 'limited to a suit against the Plan' . . . we have allowed plaintiffs in ERISA cases to sue an ERISA plan administrator in some limited instances . . .") (internal citations omitted).  This Court agrees that, apart from a benefit plan itself, "persons or entities having responsibility . . . for administering benefits are proper parties to [a § 502(a)(1)(B)] suit." *Delgado*, 2008 WL 548801, at *10.

In this case, North Cypress has alleged that CIGNA was responsible for making determinations to pay benefits at amounts drastically lower than the applicable ERISA plans require, and as such, exerts control over plan administration in a manner that harms North Cypress.  The Court is satisfied that North Cypress has pled sufficient facts, which if proven true, could plausibly demonstrate that CIGNA sufficiently controlled plan administration to make it a proper defendant for a § 502(a)(1)(B) claim.  The Court therefore declines to dismiss Count 1 of North Cypress' complaint.

### b.  Proper Defendants Under § 502(c)

In Count 5 of its complaint, North Cypress brings a claim for civil penalties under § 502(c) for CIGNA's alleged failure to disclose required information that North Cypress requested.  Section 502(c)(1) provides, in pertinent part:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary [for civil penalties] . . .

CIGNA submits that the plain language of § 502(c) "requires that the plaintiff seek relief from the plan administrator, who is *personally liable* for any disclosure violations. The statute makes no provision for liability to attach to any other person, even when the administrator is an employee of the plan sponsor." *Crowell v. Shell Oil Co.*, 481 F. Supp. 2d 797, 814 (S.D. Tex. 2007) (internal citation omitted) (citing *Thorpe v. Retirement Plan of the Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) ("Because the Retirement Plan specifically designates the Board as its administrator, the Board is the only party liable to [p]laintiff under § 1132(c)"); *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994) ("[A]ny cause of action for violations of these disclosure requirements is proper only against the plan administrator"); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993) (same)).

ERISA § 3(16)(A) defines "administrator" as: "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A). CIGNA contends that North Cypress' § 503(c) claim must be dismissed because North Cypress does not allege that CIGNA is the plan administrator as defined by this section.

While the Court agrees with CIGNA that a § 502(c) claim generally may be brought only against the "plan administrator," some courts have allowed claims to proceed against entities to whom administration was delegated by the administrator designated in the plan documents. The Fifth Circuit has not ruled on whether an entity, in acting as the de facto plan administrator, can

be liable for penalties under § 502(c); however, it favorably discussed the concept in *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073 (5th Cir. 1990).  In that case, the plaintiff contended that, because the defendant had been delegated responsibility for evaluating and administering claims, it took on the obligation to provide him with a copy of the plan when requested.  *Id*. at 1077. The Fifth Circuit reasoned:

> [Plaintiff's] argument that [Defendant] should be regarded as a *de facto* plan administrator has intuitive appeal. . . . The Plan contemplated delegation of the named Plan administrator's responsibilities, thus arguably incorporating the [agreement between the Plan and the third party administrator] as a further delineation of how the Plan would in fact operate. Despite [Defendant's] assertion that it 'merely provides administrative services to the Plan,' its agreement with [the Plan] indicates that it was delegated a wide range of responsibility. The centrality of [Defendant's] role is confirmed by the summary plan description provided all employees which states that 'The Plan Administrator has delegated [Defendant] as its agent *to administer the Plan* and to process all claims and appeals procedures and other administrative services [emphasis added].'

*Id*.  The court ultimately declined to resolve the question of whether the defendant could be considered an administrator for purposes of § 502(c), and instead affirmed the district court on other grounds.  *Id*.  Subsequently, the Fifth Circuit held that a non-plan administrator could not be liable under ERISA §§ 102(a)(1) and 104(b)(1) for failure to furnish a plan participant with notice of a modification to an employee benefit plan.  *See Thomas v. Reliance Standard Life Ins. Co.*, 136 F.3d 138, 1998 WL 30108, at *4 (5th Cir. 1998).  Although it was construing different ERISA liability provisions than the one presented in this case, the Fifth Circuit relied on the same definition of "administrator" provided in ERISA § 3(16)(A) that is at issue here.  *Id*.  Given these precedents, it is unclear whether the Fifth Circuit would recognize claims against de facto plan administrators.  It is unnecessary, however, to reach that question because North Cypress' complaint adequately pleads that CIGNA is a proper defendant under the narrower definition of "administrator."

Indeed, North Cypress' complaint asserts that CIGNA "directly insures many group health plans.  When Cigna insures such group health plans, it functions as the third party 'plan administrator' as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators."  (Compl. ¶ 11).  CIGNA points out, however, that elsewhere in its complaint, North Cypress seems to suggest that CIGNA is not the "plan administrator" for the relevant plans.  Specifically, North Cypress states that "[t]he ERISA health plan is interpreted by the plan administrator, which is the employer and not by a third party administrator such as Cigna."  (Compl. ¶ 9.)

North Cypress responds that the question of whether CIGNA is the plan administrator for purposes of § 502(c) is best resolved after discovery and on a motion for summary judgment, not at the 12(b)(6) motion to dismiss stage.  This is true particularly in this case where CIGNA allegedly refused to provide certain plan documents that may shed light on CIGNA's role with respect to the relevant plans.

On a 12(b)(6) motion to dismiss, the Court must accept as true North Cypress' well-pleaded factual allegation that CIGNA is the "plan administrator" for the benefit plans at issue in this case, as that term is defined under ERISA.  There is no evidence that CIGNA was *not* designated as the administrator by the terms of the plan instrument.  North Cypress' suggestions that CIGNA is not the "plan administrator" are ambiguous and undermined by its more specific allegations that CIGNA undertook plan administration as the term is defined in ERISA.  Thus, CIGNA's motion to dismiss North Cypress' § 502(c) claim must be denied.

## 2.   Availability of Money Damages Under ERISA § 502(a)(3)

ERISA § 502(a)(3) permits a party to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain

other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  CIGNA argues that North Cypress may not seek money damages, the only remedy it requests, pursuant to § 502(a)(3).  *See Kinnison*, 2008 WL 2446054, at *8 ("ERISA Section 502(a)(3) does *not* authorize a claim for money damages.") (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)).  Accordingly, CIGNA contends, North Cypress' claims pursuant to this section must be dismissed.

North Cypress concedes that monetary damages are not available under § 502(a)(3), but responds that it seeks only the available remedies for each claim it asserts.  To the extent CIGNA claims that North Cypress has not properly pled the available remedies under ERISA, North Cypress nevertheless may be entitled to any available relief the Court deems appropriate and just, "even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  The Court sees no reason at this stage to dismiss North Cypress' § 502(a)(3) claims.  Indeed, although there is strong support for the proposition that traditional legal remedies like monetary damages are unavailable pursuant to § 502(a)(3), this fact alone does not require dismissal of North Cypress' claims, as equitable relief may still be ordered.  The claims are dismissed, however, to the extent they seek monetary damages.

CIGNA also argues that, if this Court ultimately finds North Cypress' § 502(a)(1)(B) claim to be viable, North Cypress would be precluded from also pursuing claims under § 502(a)(3).  *See Tolson v. Avandale Indus., Inc.*, 141 F.3d 604, 610-611 (5th Cir. 1998) (plaintiff "has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1)" and therefore "has no claim for breach of fiduciary duty under section 1132(a)(3)").  This Court has found that, based on the allegations in its pleadings, North Cypress has standing

to sue CIGNA and CIGNA is a proper § 502(a)(1)(B) defendant. *See* Sections III.A and III.B.1.a., *supra*. The question is then whether dismissal of North Cypress' § 502(a)(3) claim is appropriate as a result.

Courts disagree whether simultaneous pleading of both § 502(a)(1)(B) and § 502(a)(3) is permissible. This Court agrees with the more expansive approach taken by many courts, which allows plaintiffs to simultaneously plead claims under several subsections of Section 502(a). *See, e.g.*, *Fredericks v. Hartford Life Ins. Co.*, 488 F.Supp.2d 210, 213 (N.D.N.Y. 2007) ("Even if the claims are duplicative, there has been no binding authority holding that a plaintiff cannot plead both claims.") This rule allows plaintiffs time to develop their trial strategy and preserve alternative grounds for relief until a later stage in the litigation. Indeed, in the event that North Cypress' claim under § 502(a)(1)(B) proves not to be viable, it should be permitted to rely on § 502(a)(3) as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996). The Court believes it premature to dismiss North Cypress' § 502(a)(3) claim solely on the basis that North Cypress has sufficiently pled a claim under § 502(a)(1)(B).

### 3.   Alleged Substantive Flaws in § 502(a)(3) Claims

CIGNA alternatively argues that North Cypress' claims under § 502(a)(3) should be dismissed because North Cypress has not pled facts supporting the underlying alleged violations. North Cypress argues that CIGNA has violated § 502(a)(3) by 1) failing to disclose the methodology used to calculate the UCR rates for reimbursement in violation of ERISA § 404; 2) using a methodology to calculate UCR rates that violates ERISA § 406; and, 3) failing to provide a "full and fair review" in violation of ERISA § 503.

### a.   § 404's Disclosure Requirements

While North Cypress alleges that CIGNA's failure to disclose its UCR methodology violated its fiduciary duty under ERISA § 404, CIGNA argues that, absent a "special circumstance," § 404 requires disclosure of only the information specifically enumerated in that statue and its attendant regulations.  (*See* Mot. at 10) (citing *Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 556 (5th Cir. 2000) (affirming dismissal of ERISA claim holding that § 404 did not require disclosure of physician compensation plans)).

North Cypress responds that its claim under ERISA § 404 includes not only CIGNA's failure to disclose its UCR methodology, but also its many alleged violations of the plans' claims procedures.  It also argues that *Ehlmann* does not support CIGNA's position that a fiduciary's disclosure requirements are strictly limited.

The Court agrees with North Cypress that *Ehlmann* does not support the proposition that a fiduciary need only disclose information specifically enumerated in ERISA.  Indeed, the *Ehlmann* court considered only whether to infer from ERISA a broad duty to disclose information *without a specific inquiry from a beneficiary*.  198 F. 3d at 554-55.  The court noted that courts had imposed additional disclosure duties where the plaintiff specifically inquired about the information, and it declined to set forth any rule regarding "what sort of disclosure, if any, that Section 404 might require given a specific inquiry from a plan member."  *Id*. at 556.  CIGNA also cites *Mondry v. Am. Family Mut. Ins. Co.*, for the proposition that ERISA requires disclosure of only the "formal legal documents governing a plan."  557 F.3d 781, 797 (7th Cir. 2009).  *Mondry*, however, involved the scope of disclosure under 29 U.S.C. § 1024(b)(4), which concerns publication of summary plan descriptions and annual reports to beneficiaries, not the scope of fiduciary duties under ERISA § 404.  *Id*.  Finally, CIGNA cites *American Medical Association v. United Healthcare Corp.*, for the proposition that at least one court has

specifically held that § 404 does not require disclosure of UCR information.   Nos. 00-2800(LMM) and 00-7246(LMM), 2001 WL 863561 (S.D.N.Y. July 31, 2001).  *AMA*, however, holds precisely the opposite.  In *AMA*, the plaintiff claimed that the fiduciary had an affirmative duty to inform plan subscribers of its UCR information, and that it breached the duty every time it sent a benefits determination without such data attached.  *Id*. at *8.  Like the Fifth Circuit, the *AMA* court declined to impose such a duty without a request from a subscriber.  *Id.* at *9.  The court went on to hold, however, that the plaintiff's separate allegation that the defendant "denied benefits on the basis of incorrect or nonexistent UCR data suffices to state a claim for breach of fiduciary duty" and that plaintiffs could seek disclosure of the UCR data on that basis.  *Id.* at *8-9.

In light of these precedents, the Court holds that an allegation that a fiduciary refused to provide UCR information in response to a specific inquiry by a plan beneficiary is sufficient to state a claim under ERISA § 404.  In this case, North Cypress has alleged that it requested UCR information from CIGNA, and that CIGNA failed to provide it.  CIGNA's motion to dismiss is therefore denied.

### b.  § 406's Scope

In Count 2 of its complaint, North Cypress alleges that CIGNA breached its duty of loyalty to plan participants under ERISA § 406 "by making reduced UCR determinations without valid data to substantiate such determinations and/or by doing so in an arbitrary fashion."  (Compl. ¶ 48.)  CIGNA argues that ERISA § 406 prohibits a plan fiduciary only from engaging in certain transactions with a party-in-interest, and from dealing with plan assets either in his own interest or contrary to the plan's interests.  (*See* Mot. at 11) (citing 29 U.S.C. § 1106(a),(b)).   Section 406 does not, CIGNA contends, prevent CIGNA from using UCR

methodologies in the way North Cypress alleges CIGNA employed them.  Indeed, CIGNA argues that North Cypress does not allege that CIGNA's use of flawed data somehow constituted a transaction with a party-in-interest or dealing with plan assets in a manner contrary to the plan's interests.  Even if proven true, CIGNA maintains, North Cypress' allegations would not violate ERISA § 406.

North Cypress responds that its ERISA § 406 claim is intertwined with its other claims under § 502(a)(3), and as such, its allegations that CIGNA violated claims procedures when determining UCR rates under ERISA § 406 should not be dismissed.  Under Count 4 of North Cypress' complaint, it separately alleges that CIGNA failed to comply with relevant claims procedures, but that claim appears to rest on independent grounds.  North Cypress does not explain how its claim that CIGNA violated applicable claims procedure regulations and its claim that CIGNA violated § 406 are "intertwined."  Nor does North Cypress respond to CIGNA's argument that § 406 prohibits only a limited set of enumerated transactions, none of which are implicated by North Cypress' allegations about UCR determinations in this case.[7]

Section 406 incorporates a detailed list of specifically prohibited transactions "[a]s a supplement to the general duties imposed on fiduciaries by Section 404."  *Donovan v. Cunningham*, 716 F.2d 1455, 1464 (5th Cir. 1983).  In order to violate § 406, a fiduciary must knowingly cause the plan to engage in one of the prohibited transactions.  Thus, although CIGNA may have violated the more general fiduciary duties in § 404, North Cypress has not

---

[7] Section 406 prohibits a plan fiduciary from engaging in the following transactions: "(A) sale or exchange, or leasing, of any property between the plan and a party in interest;
(B) lending of money or other extension of credit between the plan and a party in interest;
(C) furnishing of goods, services, or facilities between the plan and a party in interest;
(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title."  29 U.S.C. § 1106(a).

properly alleged that CIGNA caused any of the relevant plans to engage in any of the prohibited transactions enumerated in § 406, and its claim resting on § 406 must therefore be dismissed.

### c. § 503's Disclosure Requirements

North Cypress alleges that CIGNA failed to provide a full and fair review of its adverse benefits determination and to make other necessary disclosures as required by ERISA § 503.  29 U.S.C. § 1133.  ERISA § 503, CIGNA argues, requires only that, when a plan denies benefits, it "[set] forth the specific reasons for such denial."  29 U.S.C. § 1133(1).  CIGNA argues that North Cypress' complaint admits that CIGNA told subscribers and providers that its payments reflected UCR amounts.  (*See, e.g.*, Compl. ¶ 19.)  Citing *Barden v. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund*, CIGNA argues that this information is all that § 503 requires. 12 Fed. Appx. 412, 414-15 (7th Cir. 2001).

> ERISA § 503 requires a plan to:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and, (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  To be "full and fair," the review process must allow the claimant "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii).  Information is considered relevant to a claim if it was either "relied upon" or "considered" in making the benefit determination.  29 C.F.R. § 2560.503-1(m)(8)(i)-(ii).

North Cypress alleges that it "repeatedly requested from Cigna information and data regarding Cigna's determination as well as payments of the claims," but CIGNA did not respond to those requests, and thus, denied North Cypress a full and fair review of its decision denying

the claim.  (Compl. ¶ 17.)  Contrary to CIGNA's suggestion, North Cypress' complaint does not demonstrate that member/subscribers were provided with information adequate to meet § 503's requirements.  In fact, it alleges the opposite—that it requested information and data regarding CIGNA's benefits determinations that CIGNA refused to provide.  This is sufficient to state a claim under § 503 and its attendant regulations.

### C.  State Law Claims

North Cypress also brings two state law claims: 1) for violations of Texas Insurance Code's prompt payment provisions; and 2) for breach of contracts that CIGNA allegedly entered into with North Cypress via a re-pricing agent.  CIGNA argues that both claims must be dismissed because they are preempted by ERISA and, alternatively, because North Cypress has not pled adequate supporting facts.

### 1.  ERISA Preemption

ERISA § 514 broadly preempts, with certain exceptions, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Courts have interpreted this section to mean that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Davila*, 542 U.S. at 209.  This is so, in part, because "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  CIGNA argues that North Cypress' state law claims are preempted because they have the effect of a suit to recover benefits under ERISA § 502(a)(1)(B).  Because North Cypress'

Texas Insurance Code claims and breach of contract claim implicate different issues, the Court

will discuss each claim separately.

## 2.  Breach of Contract

North Cypress has brought a claim for breach of the "Discount Agreements" it alleges

CIGNA entered into via its authorized re-pricing agent, the National Health Benefits

Corporation.  Specifically, North Cypress contends:

> Cigna employs an agent/repricing company, National Health Benefits Corporation
> ("NHBC").  With the full authority and direction of Cigna, NHBC approaches
> providers such as North Cypress and presents them with "Discount Agreements"
> offering to pay the provider's invoice for Cigna's members at a reduced price.  On
> many occasions, North Cypress signed Discount Agreements with NHBC
> agreeing to a specific discount.  Notwithstanding this agreement entered into
> between NHBC, Cigna's agent, Cigna refused to even pay the discounted amount.
> As such, Cigna breached its Discount Agreements with North Cypress.

The Court must determine whether this claim for breach of the "Discount Agreements" is

preempted by "ERISA's civil enforcement scheme [which] is laid out in § 502(a) of the ERISA

statute."  *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009).  If

a plaintiff's state law claim falls within § 502(a)'s scope, it is generally preempted.  *Id.*  The

Supreme Court in *Davila* defined the circumstances under which a plaintiff's claim is preempted

by virtue of its overlap with § 502(a):

> [I]f an individual brings suit complaining of a denial of coverage for medical care,
> where the individual is entitled to such coverage only because of the terms of an
> ERISA-regulated employee benefit plan, and where no legal duty (state or
> federal) independent of ERISA or the plan terms is violated, then the suit falls
> 'within the scope of' ERISA § 502(a)(1)(B).  In other words, if an individual, at
> some point in time, could have brought his claim under ERISA § 502(a)(1)(B),
> and where *there is no other independent legal duty* that is implicated by a
> defendant's actions, then the individual's cause of action is completely pre-
> empted by ERISA § 502(a)(1)(B).

28

*Davila*, 542 U.S. at 210 (emphasis added and internal citations omitted). Thus, the question is whether North Cypress's breach of contract claim is based on an alleged legal duty independent of the relevant employee benefit plans.

The "Discount Agreements" in this case are contracts that CIGNA allegedly entered into through an agent, which obligated CIGNA to pay North Cypress a specified discounted amount of North Cypress' invoices. Thus, CIGNA's obligation to pay North Cypress the specified amounts derives from the terms of the "Discount Agreements" and, thus, CIGNA's alleged breach of the contracts implicates an independent legal duty. Certainly, in order to determine CIGNA's alleged liability, a fact finder would need only to look to the terms of the contract, and not to the ERISA plans. According to *Davila* and other relevant precedents, this fact saves North Cypress' breach of contract claim from preemption. Indeed, "[a] majority of the district courts in this Circuit have held no ERISA preemption of state law claims where there is an underlying contract between the provider and the insurance company and the claims are not dependent on interpretation of the plan." *Lone Star*, 579 F.3d at 531 n.5 (claim that implicates only the Provider Agreement and not the right to payment under the ERISA plan is not preempted); *see also Ne. Hosp. Auth. v. Aetna Health Inc.*, H-07-2511, 2007 WL 3036835, (S.D. Tex. Oct. 17, 2007) (state law claims arising from the terms of a contract between hospital and administrator independent of the ERISA plans not preempted). Because the Discount Agreements create a legal duty apart from the ERISA plans and resolution of the claim does not necessarily require interpretation of the plan, North Cypress' breach of contract claim is not preempted by ERISA.

### 3.   Texas Insurance Code Claims

North Cypress maintains that its Texas Insurance Code claims under §§ 843.338 and 843.351 are not preempted because of the ERISA "savings clause." *See* 29 U.S.C. §

1144(b)(2)(A).  The savings clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."  *Id.*  For ERISA's savings clause to exempt a state law from ERISA preemption, "such law must (1) be directed toward entities engaged in insurance, and (2) substantially affect the risk pooling arrangement between the insurer and the insured."  *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 276 (5th Cir. 2004) (citing *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-342 (2003)).[8]  North Cypress maintains that Texas Insurance Code §§ 843.338 and 843.351, which require insurance companies to take action on payment claims within specified time periods or face penalties, clearly satisfy the *Miller* test.

The *Miller* Court "read the second prong to apply whenever a law 'alters the scope of permissible bargains between insurers and insureds.'"  *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 331 (5th Cir. 2008) (directive that prevented insurers from enforcing subrogation rights until the insured had been fully compensated for her injuries saved from preemption).  "Within the insurance industry, 'risk' signifies 'the risk of occurrence or injury or loss for which the insurer contractually agrees to compensate the insured.'"  *Ellis*, 394 F.3d at 277.  "[T]he insurance policy 'defines the scope of risk assumed by the insurer from the insured.'"  *Id.*  These definitions suggest that, in order to meet the second prong of the *Miller* test, a state law must relate to the terms of the risk bargain between the insurer and the insured.  Indeed, the *Ellis* court held that former sections 21.21 and 21.55 of the Texas Insurance Code, which provided for

---

[8] The Supreme Court has held that the savings clause does not apply to state laws regulating self-funded benefit plans because of ERISA's "deemer" clause.  *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 371 n.6 (2002); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).  Indeed, the "deemer" clause provides that neither employee benefit plans nor trusts established under such plans "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any state purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."  29 U.S.C. § 1144(b)(2)(B).  Thus, North Cypress' Texas Insurance Code claims would be preempted as they relate to self-funded benefit plans even if they were generally kept from preemption by the savings clause.

unfair practices and bad faith remedies, were preempted, in part, because "[b]eing remedial, these two articles cannot possibly affect the *bargain* that an insurer makes with its insured *ab initio*. They provide only that 'whatever the bargain struck,' the insured may recover additional damages if thereafter the insurer acts in bad faith or unfairly." *Id*.

In this case, the Texas Insurance Code provisions in question easily meet the first prong of the *Miller* test, as they are explicitly directed toward "health maintenance organizations," entities undoubtedly engaged in insurance. The applicability of the second prong, however, is more difficult to determine based on the limited Supreme Court and Fifth Circuit case law construing *Miller*. On one hand, Texas Insurance Code prompt payment provisions could be said to affect the risk pooling arrangement between the insurer and the insured because they dictate the standards of behavior insurers must comply with in their claims practices. Indeed, the laws force the insurer (as opposed to the insured) to bear the cost of delayed payments by making it liable for penalties. This could be viewed as allocating the "risk" of delay between the two parties. On the other hand, it could be said that the prompt payment provisions simply create a deterrent against delaying the reimbursement of claims and compensate insureds for losses incurred as a result of the insurer's failure to promptly pay. Viewed this way, the provisions are essentially remedial and do not affect risk allocation as the Fifth Circuit imagined in *Ellis*. Indeed, the Fifth Circuit's recent cases appear to deem only laws related to the covered risk (e.g., fire, disability, etc.) for which the parties contracted as affecting the "risk pooling arrangement." As the Fifth Circuit has held, "the risk focused upon is that risk for which the insurance company has specifically contracted to reimburse the insured." *Provident Life & Acc. Ins. Co. v. Sharpless*, 364 F.3d 634, 640 (5th Cir. 2004) (internal quotations omitted). That risk is not directly implicated by the prompt payment provisions at issue in this case.

Moreover, former Texas Insurance Code Section 21.55, now codified under § 542.001 *et seq.,* includes § 542.060, which provides for an 18% per year penalty if a claim is made pursuant to an insurance policy, and the insurer fails to promptly accept or reject the claim in the manner prescribed by the statute.  Tex. Ins. Code § 542.060.  This section, which functions as a prompt payment penalty similar to the one under which North Cypress has brought suit, was held to be preempted by the *Ellis* court, along with the other provisions of former § 21.55.  Thus, based on the Fifth Circuit's restrictive approach to defining the "risk pooling arrangement," and its holding in *Ellis* that § 21.55 was preempted, it seems that the Fifth Circuit would also find Texas Insurance Code §§ 843.338 and 843.351 preempted.

Alternatively, North Cypress argues that ERISA does not preempt Texas Insurance Code claims under §§ 843.338 and 843.351 because they concern only the amount and timeliness of payment, not the determination of coverage.  *See Lone Star*, 579 F.3d at 532.  The *Lone Star* court, however, based its decision, in part, on the fact that coverage determinations under the plan were unnecessary because the provider maintained a Provider Agreement with the relevant insurance company.  The plaintiff's prompt payment claims were based on the defendant's failure to compensate the plaintiff at the rates agreed to in the Provider Agreement.  Thus, it was unnecessary for the court to construe the ERISA plan language in order to resolve the plaintiff's claims.  The defendant's independent contractual duty to pay at the agreed upon rate was necessary to the court's conclusion that the plaintiff's claims were saved from preemption.  It is not clear that the court's conclusion would apply to the situation presented here, where the legal duty to pay the insurance claims in the first instance arises from the plan itself.

### 4.  Substantive Flaws

Even if North Cypress' claims were not preempted, CIGNA argues, its breach of contract and Texas Insurance Code claims must be dismissed for failure to plead sufficient factual allegations. In order to prove its breach of contract claims, North Cypress must plead facts showing "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton*, No. 05-07-01731-CV, 2010 WL 936688, at *3 (Tex. App-Dallas Mar. 17, 2010) (citing *Hussong v. Schwan's Sales Enters.*, 896 S.W.2d 320, 326 (Tex. App.-Houston [1st Dist.] 1995, no writ)).

The substance of North Cypress' breach of contract allegations was discussed, *supra*, in Section III.C.2. CIGNA contends that these facts are insufficient to withstand a motion to dismiss. In particular, CIGNA argues that, because North Cypress has failed to plead facts showing "any authority that may have existed for NHBC to enter into a contract on CIGNA's behalf with North Cypress, and also fails to plead any facts to show a breach of contract by CIGNA." (Mot. at 24.) The Court disagrees with CIGNA that these facts are insufficient; indeed, North Cypress specifically alleges that NHBC had CIGNA's full authority to enter into the contracts and that CIGNA refused to pay the agreed discounted amount. As with CIGNA's arguments regarding North Cypress' assignments to bring ERISA claims, the Court rejects CIGNA's argument that North Cypress must do more to demonstrate it obtained valid assignments to bring claims for breach of contract.[9]

The Court has found North Cypress' Texas Insurance Code claims to be preempted by ERISA and, therefore, it need not reach the issue of whether North Cypress' allegations are sufficient to state a claim.

---

[9] In fact, because the contracts here were allegedly entered into directly between North Cypress and CIGNA via CIGNA's agent, North Cypress would likely not need an assignment from its patients in order to bring a claim for breach of contract.

### D.  Jury Demand

In North Cypress' original complaint, it demanded a jury for "the State and non-ERISA causes of action."  (Doc. No. 1 at 20).  In its first amended complaint, however, North Cypress, without limitation, demands "a trial by jury."  (Compl. at 19.)  CIGNA argues that the Court should strike this subsequent demand because it is untimely and because ERISA does not provide for the right to a trial by jury.

Under Federal Rule of Civil Procedure 38(b), a party is entitled to demand a jury trial by "(1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d)."  Fed. R. Civ. P. 38(b).  The Fifth Circuit has held that "[a] complaint 'raises an issue' only once within Rule 38(b)'s meaning when it introduces it for the first time.  Amendments not introducing new issues will not give rise to a demand for a jury trial."  *Unidev, L.L.C. v. Housing Authority of New Orleans*, 250 F.R.D. 268, 271 (E.D. La. 2008) (citing *Conn. Gen. Life Ins. Co. v. Breslin*, 332 F.2d 928 (5th Cir. 1964)).  CIGNA argues that North Cypress' first amended complaint does not raise new issues that would allow it to expand the limited jury demand in its original complaint.  Even if North Cypress' jury demand had been timely, CIGNA argues, the Fifth Circuit has held that "ERISA claims do not entitle a plaintiff to a jury trial."  *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (citing *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. 1980)).

North Cypress responds that, "[i]n recognition that the Fifth Circuit does not provide for a jury trial in ERISA matters, to the limited extent this Jury Demand overlaps with ERISA claims, Plaintiffs rescind the request."  (Pls.' Resp. ¶ 51.)  The Court therefore strikes North

Cypress' amended jury demand as it relates to claims arising under ERISA.  North Cypress, however, has made a timely and proper demand for a jury trial of its state law claims.

### E.  Defendant CIGNA Healthcare

CIGNA argues that CIGNA Healthcare is an improper defendant because it is not a legal entity but a registered service mark owned by CIGNA Intellectual Property, Inc. that Connecticut General Life Insurance Company is licensed to use.  (*See* Decl. of Michael T. Wade, Doc. No. 21 ¶ 21.)  CIGNA therefore requests that the Court dismiss CIGNA Healthcare from the case.

Several courts have noted that the proper name of the defendant is the legal name of a corporation, not the trademarked name such as CIGNA.  *See, e.g.*, *Cox v. Cigna Group Ins.*, 09-82-JBC, 2009 WL 1651539, at *1 n.1 (E.D. Ky. June 12, 2009), *subsequent decision*, 2010 WL 674640, at *1 n.1 (E.D. Ky. Feb. 24, 2010).  Although the Court agrees that the corporation is the proper defendant, it is not necessary to dismiss CIGNA Healthcare as a defendant at this stage. *See In re Managed Care Litig.*, 00-1334-MD, 2009 WL 742678, at *3 (S.D. Fla. Mar. 20, 2009) ("The Court is mindful of [defendant's] contention that the [named defendant] is merely a trademark corporation that administers the licensing of . . . registered trademarks.  However, at this stage of the proceedings, the Court must take all allegations in a complaint as true 'even if it strikes a savvy judge that actual proof of these facts is improbable.'")

### IV.    CONCLUSION

The Court finds that North Cypress has properly alleged standing to bring claims under ERISA.  The Court also concludes that North Cypress has adequately stated a claim for relief in all but its ERISA § 406 claim.  Additionally, North Cypress' Texas Insurance Code claims are preempted by ERISA.  The Court strikes North Cypress' amended jury demand as it relates to its

ERISA claims.  Therefore, CIGNA's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 2nd day of March, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE