IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD. AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC. | § § § § § | |
| VS. | § § | C.A. No. 4-09-cv-2556 |
| CIGNA HEALTHCARE AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY | § § § § | |

## PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGES OF SAID COURT:**

COME NOW Plaintiffs, **NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD.** and **NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC,** (collectively, "North Cypress" or "Plaintiffs") and file this Second Amended Original Complaint complaining of Defendants, **CIGNA HEALTHCARE, CONNECTICUT GENERAL LIFE INSURANCE COMPANY,** and **CIGNA HEALTHCARE OF TEXAS, INC.** (collectively, "Cigna" or "Defendants") and would show the following:

## PARTIES

1. Plaintiff North Cypress Medical Center Operating Co., Ltd. is a Texas under that name, limited partnership doing business in Harris County, Texas.

2. Plaintiff North Cypress Medical Center Operating Company GP, LLC. is a Texas limited liability company doing business in Harris County, Texas.

3. Defendant Cigna Healthcare is a business entity doing business in Texas, and during all material times acted as either the "third party administrator" of various employers' healthcare plans or as an insurer of various healthcare insurance policies and is the stated

employer of several Cigna representatives deposed in this case. Cigna has appeared and answered herein and may be served by serving its counsel of record, Alan W. Harris of the Law Office of Alan W. Harris, 325 N. St. Paul, Suite 2700, Dallas, Texas 75201 and Andrew R. Dunlap and Melody Wells of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

4.     Defendant Connecticut General Life Insurance Company ("Connecticut") is a corporation doing business in Texas, and during all material times acted as a "third party administrator" of various employers' healthcare plans as an insurer of healthcare insurance policies. Connecticut has appeared and answered herein and may be served by serving its counsel of record, Alan W. Harris of the Law Office of Alan W. Harris, 325 N. St. Paul, Suite 2700, Dallas, Texas 75201 and Andrew R. Dunlap and Melody Wells of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

5.     Defendant Cigna Healthcare of Texas, Inc. ("Texas" or "Cigna") is a corporation doing business in Texas, and during all material times acted as a "third party administrator" of various employers' healthcare plans as an insurer of healthcare insurance policies. Cigna Healthcare of Texas, Inc. may be served by serving its registered agent for service of process CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

**JURISDICTION AND VENUE**

6.     Plaintiffs' claims arise *in part* under 29 USC §§ 1001, *et seq.*, Employment Retirement Income Security Act ("ERISA"), under 28 USC § 1331 (federal question jurisdiction) and under 28 USC § 1332 (diversity of citizenship).

7.     Venue is appropriately established in this Court under 28 USC § 1391 because Defendant Cigna conducts a substantial amount of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRODUCTION

8.     Plaintiffs assert claims sounding in ERISA as well as applicable state law.

9.     Plaintiffs bring this action pursuant to healthcare plans directly insured and/or administered by Cigna.  The plans at issue, PPO and POS permit subscribers to obtain healthcare services from facilities such as North Cypress which have not entered into contracts with Cigna (referred to as "out-of-network," "non-participating" or "non-par" providers).   Furthermore, some HMO plans are at issue since Cigna members/subscribers utilize North Cypress' emergency room facilities which will be covered under their respective HMO plans.  Connecticut issues PPO and POS plans, while Texas issues HMO plans.  Cigna is required under the terms of its healthcare contracts to promptly pay benefits for such out-of-network and emergent care services based on the usual, customary and reasonable rate or the Maximum Reimbursable Charge ("MRC") for that service and/or the rate as defined in the particular Cigna Plan(s) and/or policies.

10.     Generally, a patient's healthcare benefit plan is governed by the applicable provisions of ERISA, 29 USC §§ 1001, *et seq*.  The patient's ERISA health plan is interpreted by the plan administrator, which is the employer and not by a third party administrator such as Cigna unless such authority has been delegated or assigned to Cigna by the Plan Sponsor.  In some of the Plans at issue herein, there is no "Discretionary Authority" provision which means that Cigna cannot lawfully interpret the provisions of the Plans even though it has done so in all such Plans at issue in this case.  The employee member pays a part of the cost of the insurance.

The Plan provides the employee member certain benefits, which includes the right to go to a doctor or facility of his/her choice to treat illness and to obtain reimbursement.

11.    With regard to all Cigna beneficiaries/members/subscribers, North Cypress requires that they sign documents whereby the employee member or subscriber agrees to be personally responsible for all charges of North Cypress.  As a part of these documents, North Cypress obtains an Assignment of Benefits and Rights that makes North Cypress a beneficiary of the ERISA plan and the non-ERISA contracts.  North Cypress does not waive a deductible or co-payment by the acceptance of the Assignment.  With this beneficiary status conferred upon North Cypress comes the standing to sue Cigna under ERISA as well as pursuant to non-ERISA contracts.

## APPLICABLE FACTS

*Background:*

12.    When Cigna does not directly insure such group health plans, it functions as the third party "plan administrator" as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators.  Cigna also acts as a direct insurer for numerous patients who receive benefits at North Cypress.

13.    Cigna also functions as a fiduciary for self-funded health plans and is obligated to comply with ERISA's fiduciary duties.   At times the Plan providing, Cigna exercises discretionary authority and control in its interactions with self-funded health plans and their subscribers.

14.    A self-funded health benefit plan is an insurance plan in which a plan sponsor (such as an employer or a union) acts as the insurer and makes payments on claims out of funds maintained for this purpose.  Many plan sponsors retain the services of an insurance company

4

such as Cigna to administer their self-funded health benefit plans. In administering the self-funded plans that are at issue in this action, Cigna exercises discretionary authority over the management of the plans and the disposition of plan assets; exercises discretionary authority to adjudicate claims; and exercises discretionary authority to make coverage and reimbursement decisions that are (for all practical purposes) final.

15.     As admitted by several Cigna employees deposed in this case, Cigna has entered into ASO Agreements/contracts, pursuant to which Cigna administers those Plan Sponsors' self-funded health benefit plans.

16.     Under present information and belief, the ASO Agreements/contracts between Cigna and Plan Sponsors include the delegation to Cigna by the Plan Sponsor of discretionary authority over each Plan Sponsor's self-funded health benefit plan to determine eligibility and enrollment for coverage under the Plan according to the information provided by the Employer, make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, to conduct a full and fair review each claim which has been denied, to decide level one mandatory appeals of "Urgent Care Claims", and to conduct both mandatory levels of appeal determinations for all Concurrent, Pre-service and Post-service claims and to notify the Member or the Member's authorized representatives of its decision. Most of these obligations are required of the plan administrator by the applicable provisions of ERISA.

17.     Under information and belief, the ASO Agreements/contracts between Cigna and the Plan Sponsors include provisions pursuant to which Cigna's compensation for administering

each plan sponsor's self-funded health benefit plan is determined as a percentage of the net savings or the recovery that Cigna generates for the Plan.

18.     The foregoing contractual provisions, as well as Plaintiffs' dealings with Cigna as described herein, demonstrate that (i) Cigna exercises discretionary authority and/or discretionary control respecting management of the self-funded health benefit plans that Cigna administers (which the Plan Sponsors with whom Cigna contracts have unequivocally yielded to Cigna); (ii) Cigna exercises authority and/or control respecting management or disposition of the assets of the self-funded health benefit plans that Cigna administers and which the Plan Sponsors with whom Cigna contracts have unequivocally yielded to Cigna); and, (iii) Cigna has discretionary authority and/or discretionary responsibility in the administration of the self-funded health benefit plans that Cigna administers and which the Plan Sponsors with whom Cigna contracts have unequivocally yielded to Cigna.

19.     Cigna's discretionary authority over the self-funded health benefit plans, as well as the compensation structure under which Cigna's compensation increases as a function of net savings or recovery to the plan, incentivizes Cigna to make benefits determinations not based on the terms of the Plans, but rather, based on maximizing profit to Cigna.

20.     By making claim determinations without valid or appropriate data and/or reasons to support reduced payments, Cigna violated its fiduciary obligations under ERISA as well as disclosure and other statutory obligations.

21.     When Cigna insures a plan directly, as well as when it exercises discretionary authority or control, Cigna is an ERISA fiduciary.  Cigna therefore owes fiduciary duties to all members and subscribers in its ERISA plans and also to North Cypress as a beneficiary and

6

assignee of the Assignment of Benefits and Rights signed by Cigna's members/subscribers who procure and receive services at North Cypress.

***Improper Claims Determinations:***

22.     In 2006, prior to the time that North Cypress opened its doors for business, Cigna attempted to negotiate an in-network contract with North Cypress.  These negotiations were not successful.

23.     North Cypress opened its doors for business on January 4, 2007.  On the day before the opening, January 3, 2007 (as well as on January 5, 2009), North Cypress provided Cigna with written notice of its Prompt Pay Discount Policy wherein it stated that Cigna's " . . . beneficiaries will be eligible to participate in the NCMC Prompt Payment Out-of-Network Policy on [the] patient responsibility amounts for services and items rendered."  On February 1, 2007, without any evidence whatsoever, one of Cigna's General Counsel, Susan F. Morris, wrote to North Cypress claiming that North Cypress' Prompt Pay Policy was "fee-forgiving"; claimed that such a practice "could constitute fraud and subject the provider to civil and criminal liability" notwithstanding the fact that there was no authority supporting same in the context of non-governmental transactions; improperly cited a provision in Cigna's Plans which allegedly excludes such activity from coverage ("charges which the Employee or Dependent is not legally *[sic]* required to pay"); and, advised North Cypress that its claims "*may be delayed or denied.*" Cigna immediately concluded that future payments made to North Cypress would be "too high."

24.     Thereafter, Cigna paid North Cypress' claims for out-of-network benefits based upon the charges made by the facility using its Maximum Reimbursable Charge-1 methodology ("MRC1").

25.   In 2008, Cigna devised a four-pronged "Approach" for handling North Cypress claims.  This "Approach" was later referred to as an "attack" for "targeting" North Cypress because Cigna still considered that the amounts being paid to the out-of-network facility were too high.  This four-prong Approach included the following:

a.   attempts to persuade Plan Sponsors to change the Plan pricing for out-of-network facilities from a Charge-based methodology known as the MRC1 to a Medicare Cost-based, payment methodology known as MRC2 wherein the Plan Sponsor could select either 110%, 150% or 200% of Medicare-allowed payments for services;

b.   direct *all* claims from North Cypress to Cigna's Special Investigations Unit ("SIU") which had pre-determined that North Cypress was engaged in fee-forgiving, manually handle and delay the claims process and implement a "Fee-Forgiving Protocol" wherein North Cypress would be reimbursed for most claims at approximately $100.00, notwithstanding the fact that North Cypress' Prompt Pay Discount may have never been applied to certain claims, *e.g.*, emergency room claims;

c.   terminate selected par/in-network physicians who had referred patients to North Cypress; and,

d.   implement a "Pay-The-Member" policy wherein North Cypress' claim reimbursements would be paid directly to the member patients as opposed to being paid to North Cypress notwithstanding the individual Assignments of Benefits obtained by North Cypress from all patient members/subscribers.

26.   While Cigna initially contemplated only a conversion of MRC1 to MRC2 pricing in its Plans and policies, it concluded that this was not a drastic enough reduction in the "pay" to North Cypress.  The stated goal of this four-pronged, targeted approach against North Cypress was "to bring [the] Hospital to the table" or to force the Hospital to negotiate an in-network contract wherein the future payments to North Cypress would be lower than the out-of-network payments that were being made to North Cypress under Cigna's MRC1 Plans.   Cigna coordinated numerous teams into one "Interdisciplinary Team" to implement the "multi-pronged approach" against North Cypress that would include the Network Division, the Products

8

Division, the In-House Legal Department, SIU and other departments.  SIU and Cigna's legal department were involved in and orchestrated every step of the "multi-pronged approach/interdisciplinary team" assembled against North Cypress together with Cigna's Medical Director, Dr. Jim Nadler.

27.      Initially, Cigna contemplated paying absolutely nothing on North Cypress' claims but then concluded that paying nothing would appear to lack a genuine effort to determine the proper charges and apply the correct Plan benefits.  As such, Cigna had to come up with a formula which appeared that it was making a good faith effort to determine Plan benefits.  It then determined to pay the approximate $100.00 methodology devised by SIU's Mary Ellen Cisar on all claims known as the "Fee-Forgiving Protocol" notwithstanding the fact that not all claims emanating from North Cypress involved North Cypress' Prompt Pay Discount to make it look more like a genuine attempt to interpret the Plan benefit provisions.  Cigna also contemplated adopting this approach notwithstanding the fact that the Plans and policies utilized by Cigna all stated that facility providers only "may" collect deductibles, co-pays and co-insurance from the members but not that they were required to collect same.  No Cigna plan includes *any* mandatory language requiring the facility provider to collect deductibles, co-pays and/or co-insurance from the members.

28.      While Cigna had already determined to initiate the multi-pronged approach against North Cypress, it decided that it should construct some "evidence" of the alleged fee-forgiving on North Cypress' part.  Therefore, beginning in June, 2008, approximately 36 form letters were sent out to North Cypress' patients stating that Cigna was "performing a post-payment audit on charges [it] received from [North Cypress]" and asked the patients if they had ever been balance billed by North Cypress and if yes, what was the amount billed and what

amount of money, if any, had been paid to North Cypress. Of the 36 patients, 7 responded that they had made payments in the range of $320.00 to $3,305.00; 4 stated that they were not sure if they had made any payments; 3 stated that they had paid $100.00; and 4 stated that they did not recall making any payments to North Cypress. The remaining 18 individuals did not respond. Cigna ignored the majority group of the people who responded stating that they had paid somewhere in the range of $320.00 to $3,305.00 and accepted the statistically insignificant amount of four (4) non-payments as "sufficient proof" that North Cypress had engaged in "fee-forgiving." Even before any of the letters had been returned from the 36 former patients, Cigna prepared a letter to North Cypress stating that through "the SIU's efforts, information has been uncovered which appears to confirm that NCMC has engaged in a practice known as 'fee-forgiving' whereby NCMC accepts Cigna's out-of-network reimbursement/payment as payment in full waiving all or the greater portion of the Cigna Participant's obligation to pay amounts not paid by the Benefit Plan. . . . [M]ore to the point, the SIU has compiled evidence of a pattern of behavior by NCMC in which NCMC generally collects $100.00 from the Cigna Participant, if any amount is collected at all."

29.    There were internal disputes among some of the members of the Inter-Disciplinary Team at Cigna as to whether such a radical approach against North Cypress should be undertaken. Nevertheless, by the second week of November, 2008, several Cigna representatives stated that they had come too far and that the multi-pronged attack against North Cypress had to be implemented. On November 17, 2008, the first three-prongs of the attack/approach were initiated against North Cypress. (The "Pay-the-Member Policy" was not utilized.) It was specifically intended by Cigna that the payments made to North Cypress for the professional services rendered by the hospital would be *drastically reduced.*" As a matter of

fact, one of the managers of the SIU has confirmed this under oath and furthermore stated in an email that payments to North Cypress would be "drastically reduced."  The "Fee-Forgiving Protocol" implemented on November 17, 2008 included instructions from SIU members to claims handlers on how to only pay North Cypress an average of $100.00 per claim notwithstanding the amount of the claim. Under the "Fee-Forgiving Protocol," all North Cypress claims were directed to the SIU for manual handling.  SIU then issued instructions to claims handlers as to how to pay the claims.  This, of course, foreseeably occasioned delays in paying the substantially low amounts (referred to by Cigna as "partial payments") to North Cypress.  By December 1, 2008, Cigna continued to state that the goal of this three-pronged attack against North Cypress was ". . . to get the out-of-network physicians and facilities [North Cypress] contracted, and let's hope this effort gets their attention quickly." On December 23, 2008, the edict from the SIU was to "apply SIU processing rules to **ALL** claims [from North Cypress] at this point."

30.    In the first full month of the three-pronged attack against North Cypress, December, 2008, the "SAVINGS" realized by Cigna with regard to North Cypress claims were almost $1 million. The "SAVINGS" are the difference between the charged amount of the claim and the amount that Cigna ultimately pays less deductible.  By February 18, 2009, Cigna reported that its "spend at North Cypress Medical Center has come down from $2 million/month to $200 thousand/month so all of our hard work is paying off and the pressure is being felt by the physicians in the area as well as NCMC, which is a good thing."

31.    It has been established that when a facility provider is out-of-network or leaves Cigna's network, it is Cigna's standard procedure to report the facility to its SIU for alleged fee forgiving so that pressure can be applied to the facility as it was to North Cypress to force it back

into the network.  This is done because Cigna's out-of-network benefits are greater than the in-network benefits.

32.     As noted above, Cigna enters into ASO (Administrative Services Only) Agreements/contracts with Plan Sponsors who fully-fund their health insurance plans.  Cigna is not only paid a fee for this service, but under present information and belief, it shares in a certain percentage of the "SAVINGS" that it obtains from healthcare providers, including North Cypress.  Hence, Cigna has an incentive to keep the "SAVINGS" as high as possible.

33.     On July 20, 2009, Cigna was advised by North Cypress that pursuant to an Office of the Inspector General ("OIG") Opinion, North Cypress' Prompt Pay Discount Policy is appropriate *vis-à-vis* government programs such as Medicare and that there had been no misrepresentations to Cigna as to any claim or the application of its Prompt Pay Discount.  Cigna ignored the advices.  OIG Advisory Opinion No. 08-03 posted on February 8, 2008 provided advices as to whether prompt pay discounts for ERISA/Medicare claims violated the exclusion authority under § 1128(b)(7) of the Social Security Act and the prohibitions of the Anti-kickback Statute.  (Of course, in this case, there is no governmental funding which would pertain to either the Social Security Act or the prohibitions of the Anti-Kickback Statute.)  Nonetheless, utilized as a guide, the OIG Opinion provides that a provider's prompt pay discount for both in-patient and out-patient services will be acceptable if the discount is:

- offered to patients regardless of financial status or their ability to pay;
- payments are made for the bill prior to discharge or when payment is made after discharge within a reasonable amount of time, there would be a certain deduction;
- no public advertisement of the opportunity;
- the patients are notified of the discount during the ordinary dealings with patients;
- the provider discloses the fact of the discount to third-party payors;
- the provider will not claim the waived amount as bad debt; and
- the prompt pay would not be a part of a price reduction agreement with third-party payors.  OIG Advisory Opinion No. 08-03 (February 8, 2008)

Clearly, if such a policy is acceptable to the Federal Government, assuming that there are federal funds involved, then the institution by North Cypress of such a discount policy with regard to non-federally funded matters is likewise appropriate. Additionally, Cigna was aware that alleged fee-forgiving is neither unlawful nor illegal in Texas nor is it considered to be fraudulent in Texas because it had received advices from the Texas Department of Insurance so stating. Furthermore, the Director of the SIU also advised Cigna that alleged fee forgiving in Texas is neither fraudulent nor illegal. Notwithstanding its goal to get North Cypress "to the table" to negotiate an in-network contract, on July 31, 2009, Cigna declined to accept North Cypress' request to meet to discuss any of the outstanding issues between them.

34.    The provision in all of Cigna's Plans wherein an employer fully funds and in its insurance policies wherein Cigna is the healthcare insurer, Cigna relies upon the following language in the Plans/policies to support the institution of its "Fee-Forgiving Protocol" against North Cypress:

"Payment for the following is specifically excluded from this Plan:

    a.   charges which you are not obligated to pay *or*

    b.   for which you are not billed *or*

    c.   for which you would not have been billed except that they were covered under this Plan."

Cigna utilized item (a) to justify the implementation of the Fee Forgiving Protocol. As to the item (a), the member patients are never obligated to pay the insurance company's or the employer's portion of the covered charge. As such, "charges which you are not obligated to pay" would only apply to those amounts of the hospital's bills which the member patient did not pay and would not pertain to the entire claim made by the hospital provider. With regard to the

item (b) of the exclusion, "for which you are not billed," that would pertain to the amount of the "balanced bill" being the difference between the amount paid by the insurance company and the total amount charged by the facility provider.  Again, this specific amount that was not balanced billed would be excluded and not the entire charge.  As to the item (c), the exclusion "for which you would not have been billed except that they were covered under this Plan" is meaningless and nonsensical.  One of the managers of the SIU at Cigna could not even explain what this provision means.

35.     Based upon the foregoing, this exclusion in the Plan does not support Cigna paying only $100.00 to North Cypress for its claims because of any alleged "fee-forgiving."

36.     On many occasions, Cigna made claims determinations submitted by North Cypress and paid amounts grossly less than the charges submitted by North Cypress, and on many occasions, failed to promptly pay claims as required by law.

37.     As a general acute care facility, North Cypress is required by both federal and Texas law to provide services to all patients seeking emergency care, including Cigna's PPO/POS and HMO members/subscribers. *See, e.g.,* (a) the Emergency Treatment and Active Labor Act, 42 USC § 1395dd - if North Cypress does not comply with this Act, it is subject to a civil penalty of $50,000 per violation and civil liability for personal injuries under state law 42 USC § 1395dd(d) and (d)(2); and (b) §§ 241.027, *et seq.*, Tex. Health & Safety Code (Vernon's 2006).  Many of these patients maintain policies with Cigna or have self-funded policies which are administered by Cigna.  On most occasions, Cigna will either pay substantially less than the emergency room charges claimed by North Cypress, sometimes as low as 1% and on many occasions will refuse to make any payments.  North Cypress has repeatedly requested from Cigna information and data regarding Cigna's determination as well as payments of the claims.

Despite its repeated requests, Cigna failed to provide such data or documentation and never provided adequate redress.  Since North Cypress is required by both federal and state laws to provide emergent care services to Cigna's members/subscribers, it is placed in a precarious, financial position when Cigna either underpays or fails to pay North Cypress for same.  For example, North Cypress will provide emergency room services for $20,000 of which Cigna pays only $100.00 or nothing at all.  Such practices could bankrupt a general acute care hospital and put it out of business.  Public policy alone should prohibit these actions.  North Cypress should not be required by law to provide a community service or act of public policy only to have the health insurer, Cigna financially benefit from same at North Cypress' expense.

38.     As a consequence of Cigna's practices, North Cypress has been reimbursed in amounts substantially less than what it should have been paid pursuant to the healthcare plans of their subscriber patients and in some instances, nothing at all.  Cigna's pursued standard and uniform policies in making MRC determinations in a fashion that conflicted with its contractual obligations under such plans and, in addition, it has misrepresented to its members/subscribers and the assignee thereof, North Cypress that the MRC amounts were calculated on the basis of valid data or legitimate reasons.

*"Plaintiffs' Prompt Pay Discount":*

39.     Cigna has claimed that North Cypress' business decision to provide patients with prompt pay discounts is improper and has denied the payments of many claims based upon that flawed logic.  Each individual member participant has made an economic investment in his or her healthcare by paying the premiums and by making any additional payments to the provider.  Cigna's actions in this regard serve to maximize the plan member's out-of-pocket expenses and

are contrary to its fiduciary duties/responsibilities to the beneficiaries in both its role as an insurer and a third party administrator.

40.     North Cypress has come to the conclusion for the purpose of collections that it is in a better financial position to collect money from the patient upfront – or offer a substantial discount if paid in a relatively short period of time after the procedure is provided rather than having to turn the accounts receivable over to a collection company or attorney.  These accounts receivable can only be sold for a small amount because they virtually have no value.  Moreover, collection companies and attorneys require excessive fees of up to 80%, assuming one can find such a collection company or attorney who would be willing to take on a medical collections case.  North Cypress believes its best and most reasonable option is to follow a collection policy that will maximize its cash flow.

41.     Consequently, North Cypress' business decision provides that it will discount its facility and medical fees if the patient pays a certain amount within a certain period of time.  If the patient does not pay that amount within the applicable time period, then the discount will not apply.

42.     As a provider of medical services, North Cypress seeks to provide the highest level of medical services at a fee structure which is affordable to its patients.  It would be ineffective for North Cypress to establish a collection department that would antagonize the community and individual patients through harassing telephone calls, turning collections over to a collection agency and ultimately lawsuits.  The collection methodology adopted by North Cypress necessarily takes into consideration not only its needs but the needs of the community and its individual members.

43.     Every individual that becomes a patient at North Cypress, either through emergent care or elective care signs documentation that clearly states that the patient is totally responsible for all facility and medical charges.  The basic charge for all procedures at North Cypress is a non-discounted charge.  The patients are personally liable for these basic charges because North Cypress does not waive this amount.  Moreover, at the time of the service, a patient is informed of the discounted collection procedure.

44.     There are never discussions at any time of any waiver of any facility or medical fees.  The collection procedures at North Cypress are not advertised in any fashion whatsoever to the community at large.  Each participant, in writing, assigns his or her rights under his or her health benefits plan to North Cypress.  North Cypress thereby becomes a beneficiary under the terms of the healthcare plan of the participant.

45.     In some of the transactions complained of herein, Cigna acts solely as a third party administrator of employee health benefit plans.  As a third party administrator, Cigna is responsible not only to the employer which adopted the healthcare plan but also to the individual employee members.  The health benefit plans at issue are governed by ERISA.  ERISA requires that the interpretation and implementation of the plan shall be solely in the best interest of the participants and beneficiaries for the exclusive purpose of providing benefits for participants and their beneficiaries.  This is the public policy as set forth in ERISA.  The interpretation of the rights of employees is the responsibility of the plan administrator or the trustees of the healthcare plan.  In these transactions, Cigna is neither, and thus, does not have the authority to interpret an employee healthcare plan document.

46.     The employee members contribute along with the employer to the cost of administering the plan and the benefits provided under the plan.  The employee participant is promised at least two benefits under the terms of the healthcare plan:

(a)     the participant can seek the healthcare provider's choice (freedom of choice); and,

(b)     the participant can expect reasonable reimbursements for healthcare costs.

47.     In some transactions, Cigna has wrongfully attempted to adopt the role of both administrator and trustee by making decisions as to what is allegedly in the best interest of the employee participants.  As noted, Cigna has denied services to employee participants rendered at North Cypress and/or has inappropriately and unilaterally reduced North Cypress' charges for services provided to beneficiaries of plans administered by Cigna claiming that North Cypress has engaged in alleged wrongful "prompt pay discounts" notwithstanding the fact that under federal regulations pertaining to Medicare rules, prompt payment discounts are acceptable because there is a recognition that such a program is not implemented with an improper purpose but rather for the purpose of successful bill collection.  Under Texas law, prompt pay discounts are neither fraudulent nor illegal, a fact known to Cigna.  North Cypress has not engaged in any wrongful "prompt pay discounting" or "fee-forgiving" and Cigna has breached fiduciary duties in its refusal to pay claims.  Nor are there any laws, State or Federal prohibiting same under the circumstances.

48.     The employee participant covered under a self-funded ERISA plan has among his/her benefits the right of freedom of choice to any medical provider and not to have to go into a hostile collection process with the provider of medical services.  This is especially true when the employees are paying a significant amount of the total cost of the healthcare program.

49.    Furthermore, the OIG Advisory Opinion No. 08-03 provides the bases for prompt pay discounts similar to the one alleged by North Cypress as to governmental claims programs.

50.    Based upon the foregoing, Cigna has wrongfully withheld payments from North Cypress in violation of both state and federal law.  As a result of Cigna's unlawful targeted attack, North Cypress has been damaged in excess of $30 million with regard to MRC1 claims and in excess of $250,000 in damages with regard to MRC2 claims.

***Document Requests/Civil Penalties:***

51.    The civil enforcement section of ERISA, particularly 502(c), codified at 29 USC § 1132(c)(1)(B) provides the following:

> "Any administrator who fails to refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within thirty (30) days after such request may in the court's discretion be personally liable to the participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such relief as it deems proper."

52.    When a doctor or hospital, that is a healthcare provider, holding valid Assignments of Benefits and Rights, they are proper beneficiaries for the purposes of this Section.  It has been well established that an assignee of a beneficiary in an ERISA-governed insurance policy has standing to sue under ERISA. *See Herman Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988); *Tango Transp. v. Healthcare Fin. Servs., Inc.*, 322 F.3d 888 (5th Cir. 2003); *I. V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114 (2d Cir. 1998).

53.    In *Total Sleep Diagnostics, Inc., et al v. United Healthcare Ins. Co., et al*, No. 06-4153, 2009 WL 928646 (E.D. La. March 31, 2009), the United States District Court for the

Eastern District of Louisiana held that an assignee such as North Cypress is entitled to seek penalties and relief for failure to produce plan documents under § 104(b)(4), 29 USC § 1024(b) and 29 USC § 1132(c) and that the assignee has an alternative means for seeking documents under § 503.

54.     North Cypress has requested from Cigna both plan and plan associated documents on claims made by North Cypress.  Cigna refused to provide such documents now claiming that North Cypress had to obtain an additional HIPAA Authorization from each patient.  This is false. *See generally* 45 CFR § 164.506 and the U.S. Department of Health and Human Resources Comments thereon.  North Cypress is entitled to the requested plan documents and associated documents and that a civil penalty of $100 per day for failure to timely comply with the request under 29 USC § 1132(c) be imposed until the documents are produced.

***Breach of "Discount Agreements":***

55.     Cigna employs an agent/repricing companies such as National Health Benefits Corporation ("NHBC") and Viant.  With the full authority and direction of Cigna, NHBC, Viant and other Cigna vendors approach providers such as North Cypress and presents them with "Discount Agreements" offering to pay the provider's invoice for Cigna's members' health benefits at a reduced price.  On many occasions, North Cypress signed Discount Agreements with NHBC, Viant and other Cigna vendors agreeing to a specific discount.

56.     Notwithstanding these agreements entered into between NHBC, Viant and other Cigna vendors, Cigna's agent, Cigna refused to even pay the discounted amount.  As such, Cigna breached its Discount Agreements with North Cypress.

### COUNT 1

### CIGNA'S FAILURE TO COMPLY WITH
### GROUP PLANS IN VIOLATION OF ERISA:
### PROVIDER'S CLAIMS AS ASSIGNEE

57.     The allegations contained in paragraphs 1 through 56 are re-alleged and incorporated herein as if set forth *verbatim*.

58.     North Cypress is entitled to enforce the terms of the plans, as assignees of directly insured subscribers/members under 29 USC § 1132(a)(1)(B), for whom Cigna has made claims determinations without valid data and/or has done so in an arbitrary fashion, and to obtain appropriate relief under such provision.  Under § 502(a) of ERISA, Plaintiffs (as beneficiaries and assignees) are entitled to recover benefits due to Plaintiffs and/or the patients from whom Plaintiffs received Assignments of Benefits, under the terms of the plans between the patients and Cigna.

59.     Under § 502(a) of ERISA, Plaintiffs are further entitled to enforce the rights of Plaintiffs and/or the patients from whom Plaintiffs received Assignments of Benefits, under the terms of the plans between the patients and Cigna.

60.     Under § 502(a) of ERISA, Plaintiffs are entitled to clarify the rights to future benefits of Plaintiffs and/or the patients from whom Plaintiffs received Assignments of Benefits, under the terms of the plan between the patients and Cigna.

61.     Cigna acted as fiduciary to beneficiaries, including Plaintiffs and/or to the patients who made the Assignments of Benefits to Plaintiffs because Cigna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries.  As a fiduciary under ERISA, Cigna is subject to a civil action under § 502(a) of ERISA.  In violation of ERISA, Cigna failed to make payments of

benefits to Plaintiffs and/or the patients from whom Plaintiffs received Assignments of Benefits, as required under the terms of the plans between the patients and Cigna.  In further violation of ERISA, Cigna failed to provide Plaintiffs and/or the patients from whom Plaintiffs received Assignments of Benefits with all rights under the terms of the plan between the patients and Cigna, as required by ERISA.  Cigna failed to make clear to Plaintiffs, and/or the patients from whom Plaintiffs received Assignments of Benefits, their rights to future benefits under the terms of the plan between the patients and Cigna, as required by ERISA

62.     Cigna breached the terms of the plans of such directly insured members and subscribers in whose shoes the assignee facility (North Cypress) stands, by making claims determinations that had the effect of reimbursing less than the stated percentage of their provider's actual charges without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion.

63.     As a proximate result of Cigna's wrongful acts, North Cypress has been damaged in the amount of at least $30 million.

## COUNT 2

### CIGNA'S BREACH OF FIDUCIARY DUTIES UNDER ERISA

64.     The allegations contained in paragraphs 1 through 63 are re-alleged and incorporated herein as if set forth *verbatim*.

65.     North Cypress, as the assignee of ERISA subscribers/members is entitled to assert a claim for relief under Cigna's breach of the fiduciary duties of loyalty and care under 29 USC § 1132(a)(3).

66.     Cigna acted as fiduciary to beneficiaries, such as Plaintiffs and/or to the patients who made the Assignments of Benefits to Plaintiffs, in connection with the beneficiaries' group

health plans, as such term is understood under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, Cigna is a fiduciary.

67.     Cigna breached its duties to the assignee, North Cypress by making reduced MRC determinations without valid data or evidence to substantiate such determinations and/or doing so in an arbitrary fashion, by omitting material information about its determinations from its members and/or by making misrepresentations about its MRC determinations.   Specifically, Cigna acted as fiduciary to beneficiaries such as Plaintiffs and/or to the patients who made the Assignments of Benefits to Plaintiffs because Cigna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries.  The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the plan, not in order to maximize profit to Cigna through a compensation structure that increases Cigna's profit as less plan benefits are paid.

68.     By engaging in the conduct described above, Cigna failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan.  Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.  ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D).

69.     Cigna violated its fiduciary duty of care by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would

be paid, to those plan beneficiaries based on maximizing profit to Cigna, rather than based on the terms of the plans and applicable statutes and regulations.

70.     As a fiduciary of a group health plans under ERISA, Cigna owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries.   Cigna cannot, for example, make benefit determinations for the purpose of maximizing profit to Cigna at the expense of beneficiaries.

71.     Cigna violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to Cigna, rather than based on the terms of the plans and applicable statutes and regulations.

72.     Plaintiffs are entitled to assert a claim for relief for Cigna's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

73.     As a direct and proximate cause of Cigna's ERISA breaches, the assignee North Cypress has been and continues to be damaged in the amount of at least $30 million.

## COUNT 3

### CIGNA'S FAILURE TO PROVIDE
### FULL AND FAIR REVIEW UNDER ERISA

74.     The allegations contained in paragraphs 1 through 73 are re-alleged and incorporated herein as if set forth *verbatim*.

75.     Cigna functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator

for such plan.  As such, North Cypress is entitled to assert a claim for relief under 29 USC §
1132(a)(3).

76.     Although Cigna was obligated to do so, it failed to provide a "full and fair
review" and otherwise failed to make necessary disclosures pursuant to 29 USC § 1133 (and its
regulations).

77.     North Cypress was proximately harmed by Cigna's failure to comply with 29
USC § 1133 and has been damaged in the amount of at least $30 million.

## COUNT 4

### CIGNA'S VIOLATIONS OF CLAIMS PROCEDURE VIOLATIONS UNDER ERISA

78.     The allegations contained in paragraphs 1 through 77 are re-alleged and
incorporated herein as if set forth *verbatim.*

79.     Cigna is an insurance company that is subject to regulation under the insurance
laws of more than one state, including the State of Texas.  Further, Cigna processes benefit
claims for self-funded plans providing claims filing and notices of decisions to policyholders in
such plans.

80.     Cigna is an insurance company which therefore must comply with claims
procedures defined by law (e.g., 29 CFR § 2560.503-1) for subscribers and members of which
North Cypress is an assignee.  North Cypress is therefore entitled to seek additional relief if an
insurance company failed to comply with federal law.  29 USC § 1132(a)(3).

81.     Cigna violated these claims procedure regulations by engaging in conduct that
rendered its claims procedures and appeals process unfair to subscribers and their assignees,
North Cypress.

82.     As a proximate result of its violation of such regulations, North Cypress has been harmed in the amount of at least $30 million.

## COUNT 5

### REQUEST FOR INFORMATION

83.     The allegations contained in paragraphs 1 through 82 are re-alleged and incorporated herein as if set forth *verbatim*.

84.     The acts and omissions on the part of Cigna in failing to comply with the request for information pursuant to 29 USC § 1132(c)(1)(B) provides a civil penalty/sanction in the amount of $100 a day for such failure or refusal to provide the requested documents.  As such, North Cypress is not only entitled to the requested documents through the appropriate Order of this Court, but is also entitled to the $100 per day civil penalty.

## COUNT 6

### BREACH OF CONTRACT

85.     The allegations contained in paragraphs 1 through 84 are re-alleged and incorporated herein as if set forth *verbatim*.

86.     The acts and omissions on the part of Cigna noted hereinabove constitute breaches of contract, including but not limited to breaches of the Discount Agreements entered into between North Cypress and Cigna's agents, including but not limited to NHBC.  Cigna knowingly entered into Discount Agreements with North Cypress based on terms and conditions proposed by its own agent.  Cigna nevertheless materially breached this contract by refusing to pay North Cypress the agreed amounts for claims submitted for healthcare services rendered to Cigna insureds.  As a proximate result of same, North Cypress has been damaged in the amount of at least $400,000.

## COUNT 7

## <u>VIOLATIONS OF THE RACKETEER INFLUENCED<br>AND CORRUPT ORGANIZATIONS ACT (RICO)</u>

87.     The allegations contained in paragraphs 1 through 86 are re-alleged and incorporated herein as if set forth *verbatim.*

88.     The acts and omissions on the part of Cigna noted herein above constitute violations of the federal RICO statute, 18 U.S.C. §§ 1962(a)-(d). Defendant Connecticut General Life Insurance Company is the parent and/or controlling company to the related Defendant entity Cigna Healthcare of Texas, Inc.  Connecticut, as a "person" defined under RICO, 18 U.S.C. § 1961(3), has taken steps to cause Cigna Healthcare of Texas, Inc. to be an "enterprise" for illegal racketeering activities under the guise and direction of Cigna's alleged fee forgiving investigations. *See* 18 U.S.C. § 1962(c).

89.     Defendants' pattern of illegal conduct and racketeering activity includes delaying payments to the provider, making what Defendants admit as only "partial payments" of benefits, and also in many instances Defendants have outright denied payment of claims made by North Cypress (and others) as beneficiaries of rights of Cigna insureds.  As a result thereof, Defendants illegally retain these monies as "SAVINGS" and further distribute percentages of these monies to third-parties.  The related "fee forgiveness" scheme concocted by Defendants constitutes a direct intent to unlawfully leverage and extort an out-of-network provider, such as North Cypress, into entering a financially substandard contractual relationship with Cigna.  Defendants have routinely enacted "fee forgiving" investigations as an immediate response to a healthcare provider, such as North Cypress, expressing a desire not to enter into the Cigna network or when a provider leaves Cigna's network.  *See* 18 U.S.C.  § 1961(1) (the act or threat of extortion is a "racketeering activity").  As a result thereof, Defendants have illegally withheld payments and

monies that rightfully should have been paid to the providing healthcare entity for services rendered. This conspiracy further constitutes a violation of 18 U.S.C. § 1962(d).

90.     Pursuant to 18 U.S.C. § 1964, *et seq.*, Plaintiffs are entitled to damages in the amount of at least $30 million arising from Cigna's violations of RICO, including treble damages and attorneys' fees.

## COUNT 8

### RULE 54(c) RELIEF

91.     The allegations contained in paragraphs 1 through 90 are re-alleged and incorporated herein as if set forth *verbatim.*

92.     North Cypress is also entitled to all relief whether or not requested herein pursuant to Rule 54(c), Fed. R. Civ. P., which is supported by the facts, allegations presented herein and evidence presented in the amount of at least $30 million.

## COUNT 9

### DAMAGES

93.     The allegations contained in paragraphs 1 through 92 are re-alleged and incorporated herein as if set forth *verbatim*.

94.     The Plaintiffs are entitled to compensatory damages in the amount of at least $30 million.

## COUNT 10

### ATTORNEY'S FEES

95.     The allegations contained in paragraphs 1 through 94 are re-alleged and incorporated herein as if set forth *verbatim*.

96.     Pursuant to § 17.41, Tex. Bus. & Comm. Code, §§ 38.001, *et seq.*, Tex. Civ. Prac. & Rem. Code, the Plaintiffs are entitled to the award of attorney's fees in the amount of at least $350,000.

## COUNT 11

### PUNITIVE/EXEMPLARY DAMAGES

97.     The allegations contained in paragraphs 1 through 96 are re-alleged and incorporated herein as if set forth *verbatim*.

98.     The acts and omissions on the part of Cigna was committed with malice and were intentional in nature, justifying the imposition of punitive and exemplary damages against Cigna, jointly and severally, in the amount of at least $30 million.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs **NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD.** and **NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC** respectfully pray that upon final hearing hereof that they have judgment of and against Defendants Cigna Healthcare, Connecticut General Life Insurance Company and Cigna Healthcare of Texas, Inc. for damages requested herein, attorneys' fees, both pre-judgment and post-judgment interest at the highest rates allowed by law; taxable costs; the entry of an Order requiring Cigna to produce the requested plan and associated documents; all relief pursuant to Rule 54(c), Fed.R.Civ.P.; and, such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

/s/J. Douglas Sutter

By:_____

**J. DOUGLAS SUTTER**
State Bar No. 19525500
Federal ID No. 3791

### ATTORNEYS IN CHARGE FOR PLAINTIFFS

**OF COUNSEL**
**KELLY, SUTTER & KENDRICK, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, Texas  77056
(713) 595-6000 – Telephone
(713) 595-6001 – Facsimile

**LAMPF LIPKIND PRUPIS & PETIGROW, PA**
Neil Prupis
80 Main Street, Suite 350
West Orange, New Jersey 07052
973-325-2100 - Telephone
973-243-0964 – Fax

### JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims and causes of action not arising under ERISA.

/s/J. Douglas Sutter

_____

**J. DOUGLAS SUTTER**

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2011, a true and correct copy of the foregoing document was provided to opposing counsel via facsimile and United States Mail as follows:

Andrew R. Dunlap
Melody Wells
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

Alan W. Harris
Law Office of Alan W. Harris
325 N. St. Paul Street, Suite 2700
Dallas, TX 75201

/s/ J. Douglas Sutter
_____
**J. DOUGLAS SUTTER**