UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL | § | |
| CENTER OPERATING CO., *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | CIVIL ACTION NO. 4:09-cv-2556 |
| V. | § | |
| | § | |
| CIGNA HEALTHCARE, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss ("Motion to Dismiss"). (Doc. No. 115.) After considering the Motion to Dismiss, all responses and replies thereto, and the applicable law, the Court determines that the Motion to Dismiss must be **GRANTED** in part and **DENIED** in part.

### I.    BACKGROUND

Plaintiffs North Cypress Medical Center Operating Co., Ltd. and North Cypress Medical Center Operating Co. GP, LLC (collectively, "North Cypress" or "Plaintiffs") own and operate a hospital in Houston, Texas. North Cypress brings this action pursuant to healthcare plans insured and/or administered by Defendants CIGNA Healthcare, Connecticut General Life Insurance Company ("CGLIC"), and CIGNA Healthcare of Texas ("CHT") (collectively, "CIGNA" or "Defendants"). North Cypress alleges that many of the thousands of patients North Cypress treats are covered by plans administered or insured by CIGNA. According to the Complaint, CIGNA's Point of Service ("POS")

1

and Preferred Provider Organization ("PPO") plans permit subscribers to obtain healthcare services from hospitals, such as North Cypress, that are "out-of-network," or, in other words, have not entered into contracts with CIGNA. In addition, North Cypress contends, some CIGNA members/subscribers utilize North Cypress' emergency room facilities under their respective HMO plans. According to North Cypress, CIGNA is obligated to pay benefits to North Cypress based on the usual, customary, and reasonable rates for each service in the relevant health care market.

Prior to opening, North Cypress attempted to negotiate an "in-network" contract with CIGNA. As North Cypress and CIGNA were unable to reach an agreement, North Cypress was an "out-of-network" facility when it opened its doors for business. Also, prior to its opening in 2007, North Cypress provided CIGNA with written notice of its Prompt Pay Discount Policy ("the Policy"), under which some patients could pay a lower amount for their hospital bill by paying it up front or within a short period of time. North Cypress believes that this policy is the best and most reasonable option for the hospital, its patients, and the community.

After receiving North Cypress' notification about the Policy, CIGNA's counsel wrote the hospital a letter in which she described the Policy as "fee-forgiving" and claimed that the practice "could constitute fraud and subject the provider to civil and criminal liability." Counsel also informed North Cypress that as a consequence of its Policy, payment of the hospital's claims might be delayed or denied. In 2008, North Cypress alleges, CIGNA developed a "four-pronged Approach" for handling North Cypress claims. North Cypress claims that CIGNA developed this "Approach" because it believed the amounts being paid to the out-of-network facility were too high. North

Cypress explains that CIGNA sought to force North Cypress to negotiate an in-network contract, under which the hospital would receive lower payments.

Pursuant to the new plan of attack, CIGNA allegedly developed a "Fee Forgiving Protocol" ("the Protocol") under which it paid North Cypress significantly less than it owed for patients' claims. To gather evidence supporting its Protocol, North Cypress believes, CIGNA issued 36 letters to North Cypress patients asking if they had ever been "balance billed" by North Cypress and, if yes, what amount they were billed and how much they paid. Eighteen individuals never responded, and only four stated that they did not recall making any payments to North Cypress. North Cypress alleges that CIGNA construed the four non-payments as sufficient proof that North Cypress had engaged in fee forgiving and wrote a letter to North Cypress stating that through the Special Investigation Unit's ("SIU") "efforts, information has been uncovered which appears to confirm that NCMC has engaged in a practice known as 'fee-forgiving' whereby NCMC accepts Cigna's out-of-network reimbursement/payment as payment in full waiving all or the greater portion of the Cigna Participant's obligation to pay amounts not paid by the Benefit Plan."

Under the Protocol, North Cypress states, CIGNA paid North Cypress only an average of $100 per claim notwithstanding the amount of the claim. Furthermore, North Cypress alleges, all North Cypress claims were directed to the SIU for manual handling, causing substantial delays in payments. North Cypress believes that by February 2009, CIGNA had drastically reduced its "spend" at the North Cypress Medical Center from two million dollars a month to $200,000 a month. CIGNA also allegedly breached what are called "Discount Agreements" with North Cypress, and failed to produce plan

documents upon request as required by law. As a consequence of these policies, North Cypress argues, it was substantially underpaid by CIGNA, resulting in damages in excess of $30 million.

North Cypress filed this lawsuit against CIGNA in August 2009, claiming that CIGNA had reimbursed the hospital in amounts substantially less than what it should have been paid under the healthcare plans of CIGNA's subscriber patients and, in some instances, nothing at all. North Cypress argued that CIGNA's policies conflicted with its contractual obligations under those plans. In addition, North Cypress alleged, CIGNA misrepresented to its members/subscribers and the assignee of those plans, North Cypress, that the payment amounts were calculated on the basis of valid data or legitimate reasons.

CIGNA filed a Motion to Dismiss North Cypress' Original Complaint, after which North Cypress filed a First Amended Complaint. In response, CIGNA filed a new Motion to Dismiss, which the Court granted in part and denied in part in March of this year. Soon thereafter, North Cypress filed its Second Amended Complaint ("Second Amended Complaint" or "Complaint"). (Doc. No. 110.) In its Second Amended Complaint, North Cypress brings counts against CIGNA for failing to comply with group plans in violation of the Employee Retirement Income Security Act ("ERISA"), breaching its fiduciary duties under ERISA, failing to provide full and fair review under ERISA, violating claims procedure under ERISA, failing to comply with requests for information pursuant to 29 USC § 1132(c)(1)(B), breaching a contract, and violating the Racketeer Influenced and Corrupt Organizations Act ("RICO").

CIGNA then filed this Motion to Dismiss certain claims in North Cypress' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In its Motion to Dismiss, CIGNA claims that North Cypress fails to state a claim under RICO, and thus its RICO claims should be dismissed in their entirety. CIGNA further believes that North Cypress' Second Amended Complaint violates the Court's March Order because it still seeks monetary damages under ERISA § 502(a)(3) and because it still brings a claim for violation of the fiduciary duty of loyalty under that same provision. CIGNA concludes that North Cypress' claims under ERISA should be dismissed to the extent that they violate the Court's March Order.

## II.    LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

## III.   APPLICATION

The Court will first examine North Cypress' claims under RICO. As explained below, the Court finds that North Cypress has failed to state a plausible claim upon which relief can be granted under any of RICO's provisions. The Court will then turn to North Cypress' ERISA claims. Contrary to CIGNA's allegations, the Court finds that North Cypress' ERISA claims in its Second Amended Complaint do not violate the Court's March Order. Finally, the Court will address whether North Cypress should be permitted to file a Third Amended Complaint. The Court concludes that, as amendment would likely be futile, it will not grant North Cypress leave to amend.

### i.   *North Cypress' RICO Claims*

CIGNA alleges that North Cypress has not succeeded in stating a plausible claim for relief under any of RICO's provisions. CIGNA first claims that North Cypress has not pleaded a pattern of racketeering activity, which is a prerequisite for any RICO claim.

CIGNA also argues that even if North Cypress has succeeded in pleading a pattern of racketeering activity, it has not properly pleaded the individual provisions of RICO §§ 1962(a)-(d). Before analyzing the individual provisions of RICO, the Court will first examine whether North Cypress' Complaint properly states a pattern of racketeering activity. The Court concludes that North Cypress has indeed presented sufficient facts to show a pattern of racketeering activity. Nonetheless, the Court finds, North Cypress' RICO §§ 1962 (a)-(d) claims cannot survive the Motion to Dismiss.

### a.  Pattern of Racketeering Activity

All subsections of RICO "have three common elements: '1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*.'" *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors*, 422 Fed.Appx. 344, 350 (5th Cir. 2011) (quoting *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) (quotation marks and citation omitted)). Thus to survive a motion to dismiss its RICO claims, a plaintiff must plead facts that show a pattern of racketeering activity. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (holding that a plaintiff failed to state a RICO claim, in part because it did not properly plead a pattern of racketeering activity); *Fuller v. Harrah's Entertainment, Inc.*, No. Civ.A. 04-2108, 2004 WL 2452771, at *3 (E.D. La. Oct. 29, 2004). "'A pattern of racketeering activity requires [1] two or more predicate acts and a demonstration that [2] the racketeering predicates are related and [3] amount to or pose a threat of continued criminal activity.'" *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)). In order to survive the Motion to Dismiss, North Cypress must plead these three elements.

*In re Burzynski*, 989 F.2d at 742 ("Assuming that 'predicate acts' exist, one still must plead a 'pattern' of such acts.").

CIGNA believes North Cypress has failed to plead a pattern of racketeering activity for two reasons. First, CIGNA claims, North Cypress has not alleged two or more predicate acts. A racketeering activity includes "any act or threat involving … extortion." 19 U.S.C. § 1961(1). CIGNA alleges that North Cypress only describes a single predicate act in its RICO count: attempted extortion of North Cypress. (Mot. Dismiss 8.) North Cypress disagrees, insisting that it spends eight pages of its Complaint describing CIGNA's attempts to extort North Cypress and others. (Resp. Mot. Dismiss, Doc. No. 130 ¶ 29.) Furthermore, North Cypress contends, several other hospitals, such as Foundation Surgical Hospital, Houston Physicians' Hospital, and Cy-Fair Surgery Center, were victims of CIGNA's Protocol. (*Id.* ¶ 30.)

The Court finds that North Cypress' Complaint does indeed present allegations of multiple predicate acts. North Cypress states, "It has been established that when a facility provider is out-of-network or leaves Cigna's network, it is Cigna's standard procedure to report the facility to its SIU for alleged fee forgiving so that pressure can be applied to the facility as it was to North Cypress to force it back into the network." (Compl. ¶ 31.) Furthermore, North Cypress claims, "Defendants have routinely enacted 'fee forgiving' investigations as an immediate response to a healthcare provider, such as North Cypress, expressing a desire not to enter into the Cigna network or when a provider leaves Cigna's network." (*Id.* ¶ 89.) Of course, this Court need only "accept the complaint's *well-pleaded* facts as true." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (emphasis added). Although North Cypress' factual allegations need not be detailed, they must rise

to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. North Cypress' allegations are more than mere labels and conclusions, however. North Cypress alleges specific acts that it believes CIGNA took against multiple institutions to force them to be "in network," as "Cigna's out-of-network benefits are greater than the in-network benefits." (Compl. ¶ 31.) The Court therefore finds that North Cypress had succeeded in pleading multiple predicate acts.

Second, CIGNA claims that North Cypress has not pleaded facts showing a threat of continued criminal activity, as is required under the pattern-of-racketeering-activity standard. The Supreme Court has explained that a plaintiff may demonstrate continuity of criminal activity in one of two ways. First, a plaintiff "may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Importantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement," as "Congress was concerned in RICO with long-term criminal conduct." *Id.* Second, "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit," such as actions that "themselves include a specific threat of repetition extending indefinitely into the future." *Id.* Open-ended continuity can also be shown if "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 242-43. The Court cautioned that analyses of continuity should "depend[] on the specific facts of each case." *Id.*

Contrary to CIGNA's allegations, the Court finds that North Cypress has succeeded in pleading continuity. The Complaint alleges that, as part of its regular course of doing business, CIGNA investigated "fee-forgiving" practices in order to pressure hospitals to be "in network." According to North Cypress, these facts imply a threat of continued criminal activity because the investigations were a part of CIGNA's "standard procedure." As the alleged criminal activity implicated multiple victims, was a part of North Cypress' general manner of doing a legitimate business, and may have continued indefinitely but for North Cypress' lawsuit, North Cypress has succeeded in pleading continuity. *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (finding continuity because "[u]nlike our precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization … would not have continued indefinitely had the Plaintiffs not filed this lawsuit").

As outlined above, then, the Court finds that North Cypress has presented sufficient facts to plead a pattern of racketeering activity.

### b.  18 U.S.C. § 1962(a)

Section 1962(a) "prohibits any person from investing income derived from a pattern of racketeering activity in an enterprise." *Martin v. Magee*, No. 10–2786, 2011 WL 2413473, at *7 (E.D. La. June 10, 2011). To state a claim under this section, North Cypress must plead the existence of an enterprise, that CIGNA derived income from a pattern of racketeering activity, and CIGNA used any part of that income in acquiring an interest in or operating the enterprise. *St. Paul Mercury Ins. Co.*, 223 F.3d at 441. North Cypress must also show a nexus between the claimed violation and its injury. *Id.* In other words, "[t]o state a claim under subsection (a), a plaintiff must allege an injury from 'the

use or investment of racketeering income.'" *Abraham*, 480 F.3d at 356 (quoting *St. Paul Mercury Ins. Co.*, 224 F.3d at 441).

In its Complaint, North Cypress does not plead that CIGNA used any part of its income in acquiring an interest in or operating the alleged enterprise. Furthermore, North Cypress does not explain how CIGNA's use or investment of racketeering income injured North Cypress. "An injury arising 'solely from the predicate racketeering acts themselves is not sufficient.'" *Id.* (quoting *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002)). *See also Martin*, 2011 WL 2413473, at *7 (holding that plaintiffs had not stated a claim under section 1962(a) because their injuries flowed "from the alleged predicate acts of racketeering, not from any use or investment of racketeering income by defendants"). As North Cypress has failed to plead these basic elements, the Court finds that North Cypress has failed to state a plausible claim for relief under § 1962(a).

### c.   18 U.S.C. § 1962(b)

The Fifth Circuit has "interpreted subsection (b) as stating that 'a person cannot maintain an interest in an enterprise through a pattern of racketeering.'" *Abraham*, 480 F.3d at 357 (quoting *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995)). To state a claim under this section, North Cypress "must show that their injuries were 'proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activities.'" *Id.* (quoting *Crowe*, 43 F.3d at 205). *See also Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 701 (S.D. Tex. 2010) ("Section 1962(b)'s 'acquisition requirement' necessitates that 'the plaintiff's alleged injury be caused by the alleged RICO defendants acquiring or maintaining an interest or

control in the alleged enterprise. The injury caused by the acquisition or maintenance must be distinct from the injury caused by the predicate acts under Section 1962(b).'" (quoting *Blanchard & Co., Inc. v. Contursi*, No. Civ.A. 99-1758, 2000 WL 574590, at *2 (E.D. La. May 11. 2000))). In other words, as under section 1962(a), North Cypress must show a nexus between CIGNA's alleged violation and North Cypress' injury. However, North Cypress' "complaint describes no facts that would show a causal relationship between their injuries" and CIGNA's "acquisition or maintenance of an interest in the enterprise." *Id.* (citing *Crowe*, 43 F.3d at 205). Although North Cypress shows how the alleged extortion caused it significant harm, it does not explain how North Cypress was specifically injured because CIGNA acquired or maintained an enterprise. Thus, North Cypress has failed to state a plausible claim for relief under § 1962(b).

### d.   18 U.S.C. § 1962(c)

CIGNA argues that North Cypress' claim under § 1962(c) should be dismissed because North Cypress does not allege any distinction between CGLIC and CHT. Under 18 U.S.C. § 1962(c),

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or for the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). *See also Abraham*, 480 F.3d at 357 ("To state a claim under

subsection (c), a plaintiff must demonstrate that the RICO person is distinct from the RICO enterprise.").

North Cypress' allegations are not sufficient to show distinctiveness as required under 1962(c). In its Complaint, North Cypress alleges that CGLIC, as the parent or controlling company to the related CHT, is a "person" under RICO 18 U.S.C. § 1961(c). Furthermore, North Cypress states, CGLIC "has taken steps to cause [CHT] to be an 'enterprise' for illegal racketeering activities under the guise and direction of Cigna's alleged fee forgiving investigations." (Compl. ¶ 88.) However, a plaintiff cannot meet the distinctiveness requirement by simply alleging that the RICO parent company is a RICO "person" and the subsidiary is the RICO "enterprise." *ISystems v. Spark Networks, Ltd.*, 428 Fed.Appx. 368, 373 (5th Cir. 2011) ("ISystems fails to show that the alleged RICO 'enterprise' exists because it does not allege that [Spark Inc.'s wholly owned subsidiary,] Spark Ltd.[,] did anything beyond carrying out the regular business of Spark Inc."); *Office Outfitters, Inc. v. A.B. Dick Co., Inc.*, 83 F.Supp.2d 772, 779 (E.D. Tex. 2000) (observing that many courts "have held that to make out a § 1962(c) violation where it is alleged that the parent company is the RICO person and its subsidiary is the enterprise, plaintiff must allege that the parent and the subsidiary had distinct roles in the commission of the fraud complained of"); *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 155 (5th Cir. 1997), *vacated on other grounds by Teel v. Khurana*, 525 U.S. 979 (1998) ("[T]he distinctiveness requirement is not satisfied by pleading a subsidiary corporation or affiliated entity as a perpetrator-defendant if the parent corporation and the subsidiary's roles in the alleged racketeering activities are not sufficiently distinct." (citations omitted)); *Compagnie v. New England*, 57 F.3d 56, 92

(1st Cir. 1995) (affirming dismissal of RICO claim when subsidiary, alleged enterprise, took no actions independent of defendant parents); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993) (determining that RICO claim against parent corporation was not stated when the alleged enterprise, a subsidiary, "merely acts on behalf of, or to the benefit of, its parent"). North Cypress provides nothing beyond threadbare allegations that CGLIC caused CHT to be an enterprise; it fails to explain at all how those entities are distinct from one another. As North Cypress has not sufficiently alleged a distinction between CGLIC and CHT, it has not stated a plausible claim for relief under section 1962(c).

### e.   18 U.S.C. § 1962(d)

Section 1962(d) of RICO contains "three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise; and (3) an overt act, which need not be a crime, in furtherance of the conspiracy." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995) (citing *U.S. v. Sutherland*, 656 F.2d 1181, 1187 n.4 (5th Cir. 1981), *cert. denied*, 455 U.S. 949, 991 (1982)). The Fifth Circuit has recently explained that to prevail on a claim of RICO conspiracy, a plaintiff "must demonstrate '(1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendants] knew of and agreed to the overall objective of the RICO offense.'" *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (quoting *U.S. v. Sharpe*, 193 F.3d 852, 869 (5th Cir. 1999)). "A person cannot be held liable for a RICO conspiracy 'merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a

climate of activity that reeks of something foul.'" *Id.* (quoting *U.S. v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)). As North Cypress has failed to properly plead the elements of RICO §§ 1962(a)-(c), however, its § 1962(d) claim fails. *Pan American Maritime, Inc. v. Esco Marine, Inc.*, No. C.A. B-04-188, 2005 WL 1155149, at *8 (S.D. Tex. May 10, 2005) (holding that plaintiff's failure to adequately allege a violation of § 1962(c) was fatal to plaintiff's conspiracy claim under § 1962(d)); *Nolen*, 293 F.3d at 930 ("[T]he 'failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [plaintiff] cannot plead a conspiracy to violate either section.'" (quoting *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)).

### ii.       *North Cypress' ERISA Claim*

CIGNA also asks that North Cypress' ERISA claims be dismissed to the extent that they are inconsistent with this Court's March Order. First, CIGNA believes North Cypress' ERISA claims are inconsistent with the Court's prior Order because the Court dismissed North Cypress' claims under ERISA § 502(a)(3) to the extent they sought monetary damages. CIGNA alleges that, despite the Court's Order, North Cypress persists in seeking monetary damages. Second, CIGNA argues that North Cypress still includes a claim under § 502(a)(3) based, in part, on its allegation that CIGNA violated its fiduciary duty of loyalty. In the March Order, however, the Court held that North Cypress could not bring an ERISA claim under § 502(a)(3) for CIGNA's alleged failure to comply with its duty of loyalty under ERISA § 406. The Court reached that conclusion because it found that § 406 only prohibits specific transactions, none of which North

Cypress pleaded. As North Cypress does not allege any specific transactions in its new Complaint, CIGNA asserts, any claims based on the duty of loyalty should be dismissed. The Court disagrees with both of CIGNA's arguments.

### a. Damages Claim Under ERISA § 502(a)(3)

ERISA § 502(a)(3) permits a party to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Money damages are not available under § 502(a)(3). *Kinnison v. Humana Health Plan of Texas, Inc.*, No. C-07-381, 2008 WL 2446054, at *8 (S.D. Tex. June 17, 2008) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (observing that "[m]oney damages are, of course, the classic form of legal [and not equitable] relief" and are thus not available under § 502(a)(3))). In its March Order, the Court dismissed North Cypress' ERISA § 502(a)(3) claims to the extent that they sought monetary damages.

CIGNA argues that North Cypress continues to seek money damages under ERISA § 502(a)(3) in violation of the Court's March Order. In response, North Cypress insists that it is merely requesting restitution, injunctive and declaratory relief, and CIGNA's removal as a breaching fiduciary. (Resp. Mot. Dismiss ¶ 38; Compl. ¶ 72.) North Cypress' Second Amended Complaint states, however, that "[a]s a direct and proximate cause of Cigna's ERISA breaches, the assignee North Cypress has been and continues to be damaged in the amount of at least $30 million." (Compl. ¶ 73.) North Cypress claims that, despite this statement, it is not seeking money damages; rather, it

asserts, it merely mentions these damages because they may be a relevant consideration in the Court's decision to award equitable relief. (Resp. Mot. Dismiss ¶ 38.)

North Cypress points the Court to a recent Supreme Court Case, *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011), to demonstrate that this Court may award payment of benefits as equitable relief under ERISA § 502(a)(3). *Cigna Corp.* concerned "a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)." *Id.* at 1879. The district court issued an injunction that required the plan administrator to pay to already retired beneficiaries money owed to them under the plan. The Court observed that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief," as "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 1880. The Court noted that this remedy, described as a "surcharge," "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* The Court observed that the fact that the defendant was analogous to a trustee was critical "insofar as an award of make-whole relief is concerned." *Id.* The Supreme Court did not need to discuss § 502(a)(3) issue, however, as the lower court declined to reach it. *Id.* at 1883 (Scalia, J., concurring). The Court's analysis is therefore dicta, and not binding on this Court. *Id.* at 1884 (Scalia, J., concurring).

The Court finds that North Cypress has not violated the terms of the Court's March Order. North Cypress does describe its monetary damages in the paragraph following its request for equitable relief. Nonetheless, the Court does not interpret North

Cypress to be claiming that it is entitled to money damages under § 502(a)(3). Thus the Court declines to dismiss North Cypress' § 502(a)(3) claim.

### b.  Duty of Loyalty Under ERISA § 502(a)(3)

CIGNA also believes North Cypress has violated the Court's March Order because the Court then found that North Cypress could not bring a claim under ERISA § 503(a)(3) for CIGNA's alleged failure to comply with ERISA § 406's duty of loyalty. (Mot. Dismiss 12.) The Court reasoned that ERISA § 406 only prohibits specific transactions, none of which North Cypress mentioned in its First Amended Complaint. In North Cypress' Second Amended Complaint, it states that it is entitled to assert a claim under ERISA § 502(a)(3) for CIGNA's violations of its fiduciary duties, including its fiduciary duty of loyalty. (Compl. ¶¶ 70-72.) CIGNA believes this count must be dismissed to the extent it is based on an alleged violation of CIGNA's duty of loyalty. (Mot. Dismiss 12.)

The Court does not find CIGNA's argument to be persuasive. In the Second Amended Complaint, North Cypress does not base its allegations of breaches of the duty of loyalty on § 406. Indeed, North Cypress does not mention § 406 at all. (Compl. ¶¶ 70-71.) The duty of loyalty can be found elsewhere in ERISA. ERISA § 404(a) outlines the general duties imposed on ERISA fiduciaries, providing that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-
> > (A) for the exclusive purpose of:
> > > (i) providing benefits to participants and their beneficiaries; and
> > > (ii) defraying reasonable expenses of administering the plan;
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

> capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

This "provision imposes several overlapping duties." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). Among these duties, "Section 404 imposes upon fiduciaries a duty of loyalty and a duty of care." *Donovan v. Cunningham*, 716 F.2d 1455, 1464 (5th Cir. 1983) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1260 (5th Cir. 1980)). *See also Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003) ("Section 404(a)(1) of ERISA incorporates strict standards of trustee conduct, derived from the common law of trusts, including a standard of loyalty and a standard of care."); *Bussian*, 223 F.3d at 294 (noting that "ERISA's duty of loyalty is the highest known to the law").

In its Second Amended Complaint, North Cypress merely alleges that CIGNA violated its fiduciary duty of loyalty; it no longer mentions § 406. Nor does the Court construe North Cypress to be specifically referring to § 406's duty of loyalty. Thus North Cypress has not violated the Court's March Order by alleging breach of its fiduciary duty of loyalty.

### iii.    *Leave to Amend*

North Cypress requests, in the alternative, leave to amend its Complaint. The Court evaluates North Cypress' request for leave to amend under Federal Rule of Civil Procedure 15, which provides that this Court "'should freely give leave when justice so

19

requires.'" *Cole v. Sandel Med. Indus., LLC.*, 413 F.App'x 683, 688 (5th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). "[T]he language of this rule evinces a bias in favor of granting leave to amend," and the Court "must have a substantial reason to deny a request for leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quotations and citations omitted).

Leave to amend "'is not automatic,'" however. *Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2010 WL 1169963, at *1 (S.D. Tex. March 23, 2010) (quoting *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981))). In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). The Court may also consider whether North Cypress knew "'or should have known of the facts upon which the proposed amendment is based but fail[ed] to include them in the original complaint.'" *Udoewa*, 2010 WL 1169963, at *2 (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)). *See also Ross v. Houston Housing Authority*, No. H-09-2361, 2010 WL 1726908, at *2 (S.D. Tex. April 28, 2010) (denying motion to amend on the basis that plaintiff had prior knowledge and possession of supporting evidence); *Pope v. MCI Telecommunications Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying motion for leave to amend in part because plaintiff could have added her proposed amendment years earlier, as it "was not about something recently discovered" but "based upon the same facts as her previous claims").

Balancing these competing factors, the Court determines that it should not grant leave for North Cypress to amend. The Court believes that granting leave to amend would be futile, as the Court is not convinced that North Cypress possesses facts to support plausible claims for relief under §§ 1962(a)-(d). Even if North Cypress possessed sufficient facts, it would have known them prior to filing its Second Amended Complaint, and thus should have pleaded them properly. North Cypress' request to amend is therefore denied.

## IV.    CONCLUSION

Based on the foregoing, the Court dismisses with prejudice North Cypress' RICO claims. The Court finds that North Cypress did not violate the Court March Order, and thus declines CIGNA's request to dismiss any portion of North Cypress' ERISA claims. Finally, the Court is unwilling to grant North Cypress leave to amend its Complaint a fourth time. CIGNA's Motion to Dismiss is thus **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED** this the 3rd day of November, 2011.

.

_____
**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**