# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING CO., LTD.,** *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:09-CV-2556** |
| | § | |
| **CIGNA HEALTHCARE,** *et al*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the parties' Motions for Summary Judgment (Doc. Nos. 443, 447, and 489). After considering the Motions, the responses thereto, and all applicable law, the Court determines that each Motion should be granted in part and denied in part.

## I.    BACKGROUND

This case arises out of a dispute over the obligation of an insurer (Defendants, hereinafter "Cigna") to pay a hospital (Plaintiffs, hereinafter "North Cypress") for medical services provided to insured patients. The facts of the case are familiar to the parties and need not be recited here in full. The central issue remaining in the case is Cigna's interpretation of plan language stating that "payment for the following is specifically excluded:…charges for which you [patients] are not obligated to pay or for which you are not billed." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 187 (5th Cir. 2015). Cigna interpreted this language to mean that patients had no insurance coverage for medical procedures for which the patient was not billed. *Id*. at 189. Accordingly, Cigna implemented a Fee-Forgiving Protocol under which it drastically reduced its payment of claims to North Cypress (typically paying $0 or $100) where Cigna believed that North Cypress had waived or reduced patient contribution. *Id*. Remaining in

1

the case are North Cypress's claims under the Employee Retirement Income Security Act ("ERISA") and for breach of contract.

This Court granted summary judgment to Cigna on North Cypress's ERISA and breach of contract claims. (Doc. Nos. 318, 326, 331). On March 10, 2015, the Fifth Circuit vacated the grants of summary judgment with regard to those claims and remanded for further proceedings. *N. Cypress*, 781 F.3d 182. North Cypress and Cigna each subsequently filed Motions for Summary Judgment. (Doc. Nos. 443, 447).

On June 1, 2016, the United States District Court for the Southern District of Texas issued a ruling in a separate case to which Cigna is a party, *Connecticut General Life Insurance Co., et al. v. Humble Surgical Hosp., LLC*, C.A. No. 4:13-cv-3291, 2016 WL 3077405 (S.D. Tex. Jun. 1, 2016) (hereinafter "*Humble*"). North Cypress argues in a second Motion for Summary Judgment that the *Humble* decision binds this case under the doctrines of *res judicata* and collateral estoppel. (Doc. No. 489.)

At issue in the pending Motions for Summary Judgment are: (1) the preclusive effect, if any of the *Humble* decision; (2) North Cypress's claims under ERISA §§ 502(a)(1)(B), 502(a)(3), 503, and 502(c)(1)(B); and (3) Cigna's affirmative defense of recoupment. *N. Cypress*, 781 F.3d at 195; Doc. Nos. 489, 492, 496, 501.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider

any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### B. *Res judicata* and collateral estoppel

"Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Matter of Swate*, 99 F.3d 1282, 1286 (5th Cir.1996) (citing *Super Van Inc. v. San Antonio*, 92 F.3d 366, 370 (5th Cir.1996)). *Res judicata* applies where: "(1) The parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.* at 1286.

Collateral estoppel, or issue preclusion, prevents a party from litigating an issue already raised in an earlier action if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *Petro–Hunt, L.L.C.*

*v. United States,* 365 F.3d 385, 397 (5th Cir. 2004) (footnotes omitted) (citation omitted). Issue preclusion may apply even if the claims and the subject matter of the suits differ. *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted). In addition, "[u]nlike claim preclusion, the doctrine of issue preclusion may not always require complete identity of the parties. *Id.* (citation omitted) (internal quotation marks omitted). But "[w]hile complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation." *Vines v. Univ. of La. at Monroe,* 398 F.3d 700, 705 (5th Cir. 2005) (citing *Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir. 1989)).

## III.   ANALYSIS

### A.  North Cypress's ERISA § 502(a)(1)(B) claim

#### i.   Legal standard

A benefits plan participant may bring a civil action under ERISA § 502(a)(1)(B) "to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). Healthcare providers may bring ERISA suits standing in the shoes of their patients. *N. Cypress*, 781 F.3d at 191. In this case, the Fifth Circuit found that the patients assigned their rights under their insurance contracts to North Cypress, and that North Cypress has standing under ERISA to enforce the contracts. *Id.* at 191-95.

Where a benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the administrator's interpretation of the plan is reviewed under an abuse of discretion standard. *Anderson v. Cytec Indus.*, 619 F.3d 505, 512 (5th Cir. 2010). First, the court asks whether the interpretation is

"legally correct." *Id*. The most important factor at this stage is whether the contested interpretation is consistent with a fair reading of the plan. *Gosselink v. Am. Tel. & Tel.*, 272 F.3d 722, 727 (5th Cir. 2001). Because ERISA requires that plan descriptions be written in a manner calculated to be understood by the average plan participant, the court must assess whether the administrator's interpretation is consistent with the plan language in its "ordinary and popular sense." 29 U.S.C. § 1022(a); *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009). Additional factors in determining whether an administrator's interpretation is legally correct include whether the administrator has given the plan a uniform construction and whether there are any unanticipated costs resulting from different interpretations of the plan. *Crowell*, 541 F.3d at 312.

If the determination was not legally correct, the court proceeds to the second question: whether the interpretation was an abuse of discretion. *Id*. Factors at this stage include, but are not limited to: whether the plan administrator had a conflict of interest, the internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *N. Cypress*, 781 F.3d at 196.

If the determination was legally correct or within Cigna's discretion, the final inquiry is whether the decision to deny benefits was supported by substantial evidence. *Id*. Substantial evidence is "more than a scintilla, less than a preponderance, and [] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

ERISA claimants are required to exhaust administrative remedies prior to filing a lawsuit. *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1301 (5th Cir. 1985); *see also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997) (the exhaustion requirement "is not one

specifically required by ERISA, but has been uniformly imposed by the courts in keeping with Congress's intent in enacting ERISA"). The exhaustion requirement operates as an affirmative defense rather than a jurisdictional bar. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308 (5th Cir. 2008). "Exhaustion is to be excused only in the most exceptional circumstances." *Davis v. AIG Life Ins. Co.*, No. 95-60664, 1996 WL 255215, at *2 (5th Cir. Apr. 26, 1996) (citing *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 433 (D.C. Cir. 1994)). A claimant is excused from demonstrating exhaustion if she can show that pursuit of administrative remedies would have been futile. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). To qualify for the futility exception to the exhaustion requirement, the claimant must show a "*certainty* of an adverse decision." *Id*. (citing *Commc'ns Workers of Am.*, 40 F.3d at 433) (emphasis in original). The claimant is also required to show hostility or bias on the part of the administrative review committee. *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). In addition to the futility exception, exhaustion is also excused when a plan administrator fails to establish or follow claims procedures consistent with the requirements of ERISA. 29 C.F.R. § 2560.503-1(l). In that case, the claimant is deemed to have exhausted administrative remedies and is entitled to pursue any available remedies under ERISA § 502(a). *Id*.

### ii.    Effect of *Humble* on North Cypress's § 502(a)(1)(B) claim

The *Humble* decision arises out of the same plan language and interpretation that are at issue here. In each case, the service provider waived or reduced the patient contribution for particular medical services while still billing Cigna for Cigna's portion. Cigna then refused to pay all or part of its obligation to the service provider, based on Cigna's interpretation of the exclusionary language in its plans. Under Cigna's interpretation, if the member/patient was not

obligated to pay all or part of the patient contribution for a particular medical service, then that service was not covered. *Humble*, 2016 WL 3077405, at *6. Therefore, according to Cigna, Cigna was not obligated to make a full payment to the service provider if the service provider waived or reduced the patient contribution. *Id*. In the *Humble* litigation, Cigna sued Humble to recover alleged overpayments for services rendered to members/patients. *Id.* at *1. Humble asserted counterclaims against Cigna for, *inter alia*, nonpayment and underpayment of claims in violation of ERISA § 502(a)(1)(B). *Id.* at *2.

In the first stage of its ERISA analysis, the Court found that Cigna's interpretation of the exclusionary plan language was legally incorrect. *Id.* at *17-18. That is, the average plan participant would not interpret the plan language to mean that Cigna was relieved of its obligation to pay based on a waived or reduced patient contribution. *Id*. In the second stage of the ERISA analysis, the Court found that Cigna abused its discretion by "obstinately denying Humble's claims for benefits in spite of the medical services provided." *Id*. at *17. The Court highlighted the fact that Cigna "admittedly has never used the exclusionary language to reject covered services before and was relentless in engaging in an arbitrary manner with regard to Humble and its claims." *Id*. at *18. The issue presented in Plaintiffs' Motion for Summary Judgment (Doc. No. 489) is whether the decision in *Humble* has preclusive effect in this case.

*Res judicata*, or claim preclusion, applies only where the parties are identical or in privity. *Matter of Swate*, 99 F.3d at 1286. Although Cigna is a party to both cases at issue here, the remaining parties, North Cypress and Humble, are not identical. Therefore, *res judicata* applies only if the two hospitals are in privity. North Cypress argues that they are in privity because they have identical interests, pointing to various factual similarities between Cigna's treatment of North Cypress and Humble. (Doc. No. 496 at 23-24.) However, this argument

mischaracterizes the requirements for privity. As a general matter, privity exists in the following circumstances: (1) a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party, (2) a nonparty who controlled the original suit will be bound by the resulting judgment, and (3) a nonparty whose interests were represented adequately by a party in the original suit. *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985). The first two circumstances clearly do not apply to this case. With regard to adequate representation, it is not enough for the parties to have parallel interests. *Id*. Rather, virtual representation "demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues." *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978). Because North Cypress and Humble have no such express or implied legal relationship, they are not in privity. Therefore, *res judicata* does not apply.

Unlike *res judicata*, collateral estoppel does not require complete identity of the parties. *Next Level Comm'cns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999). Therefore, collateral estoppel may apply to certain issues in this case even though North Cypress and Humble are not in privity. North Cypress argues that the holding in *Humble* has preclusive effect with regard to both steps of the ERISA § 502(a)(1)(B) analysis: whether Cigna's interpretation was legally correct and whether it was an abuse of discretion.

Collateral estoppel applies to the issue of whether Cigna's plan interpretation was legally correct. The issue was actually litigated in *Humble*, and the determination of the issue was a necessary part of the judgment on Humble's ERISA § 502(a)(1)(B) counterclaims. *Humble*, 2016 WL 3077405, at *17-18. Moreover, the issue in this case is identical to the issue in Humble. The exclusionary language in the cases was identical, and in both cases, Cigna interpreted the

language to mean that if a patient had no obligation to pay, Cigna was also excused from paying. The legal correctness analysis is based on whether the contested interpretation is consistent with how the average plan participant would interpret the language. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009). Therefore, the only relevant facts are the language of the plan and Cigna's interpretation. The factual differences that Cigna raises to challenge collateral estoppel—billing and disclosure practices, time periods, suspected billing policies, evidence, responses from each hospital, and the lack of overlap in individual claims— are irrelevant to the issue of whether Cigna's interpretation of the plan was legally correct. *See* Doc. No. 492 at 4-5. Because the *Humble* decision has preclusive effect on the issue of legal correctness, this Court holds that Cigna's interpretation of the plan language was legally incorrect.[1]

Collateral estoppel does not, however, apply to the issue of abuse of discretion. Compared to the analysis of legal correctness, abuse of discretion is more fact-specific, taking into account factors such as conflict of interest, internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *See N. Cypress*, 781 F.3d at 196. The holdings in *Humble* on abuse of discretion thus turn on facts specific to the relationship between the parties in that case. Therefore, despite many factual similarities between the two cases, the *issue*—whether Cigna abused its discretion in its interpretation of the plan—is not precisely the same. Because the issues in the cases are merely analogous, not identical, collateral estoppel does not apply. *See NLRB v. W.L. Rives Co.*, 328 F.2d 464, 468 n.5 (5th Cir.

---

[1] The Court is not persuaded by Cigna's argument that prior inconsistent judgments make collateral estoppel inappropriate in this case. *See* Doc. No. 492 at 6-9. The *Humble* decision addresses precisely the issue in this case: the legal correctness of Cigna's interpretation of the same exclusionary plan language. By contrast, the cases Cigna has cited, all of which come from other circuits, concern analogous factual scenarios rather than the same issue.

1964).

### iii.    Abuse of discretion under ERISA § 502(a)(1)(B)

In order to determine whether Cigna abused its discretion in interpreting its plan language, the Court must evaluate whether Cigna had a conflict of interest, the internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith. *See N. Cypress*, 781 F.3d at 196. After considering these factors, the Court finds that Cigna abused its discretion.

Although Cigna did not directly fund most of the plans at issue,[2] North Cypress claims that there was a conflict of interest because Cigna collected contingency fees when it reduced payments to North Cypress. (Doc. No. 443 at 7-10.) As part of its various cost containment programs, Cigna collects a ██████ contingency fee of any savings Cigna provides to plan sponsors.[3] *Id*. If Cigna collected contingency fees for North Cypress claims subject to the Fee-Forgiving Protocol (which targeted North Cypress's practice of reducing patient contribution for particular services), then there was a conflict of interest. *See Humble*, 2016 WL 3077405, at *16 (finding a conflict of interest where "Cigna evaluates the claim for benefits, pays benefits and reimburses itself, based on what it 'saved' the plan sponsors"); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (finding that a conflict of interest exists where "a plan administrator both evaluates claims for benefits and pays benefits claims").

Cigna does not dispute that it collected contingency fees for North Cypress claims under

---

[2] The majority of the claims at issue are part of "Administrative Services Only" (ASO) plans. *N. Cypress*, 781 F.3d at 187. ASOs are funded by plan sponsors (typically employers), with Cigna acting only as the plan administrator. *Id*.

[3] Cigna generates Savings by routing claims to third-party vendors. (Doc. No. 461 at 14 n.8.) If the vendor can resolve the claim with the provider for less than what the plan would have paid, then the plan pays fees to the vendor and Cigna. *Id*.

its cost containment programs. What is in dispute is whether Cigna collected contingency fees for the particular North Cypress claims at issue in this case, those subject to the Fee-Forgiving Protocol. Cigna representative Wendy Sherry testified in a Rule 30(b)(6) deposition on November 10, 2015 that Cigna has discretion about whether to apply cost containment programs to particular claims. (Doc. No. 444-4 at 27-28.) She further testified that fees collected from North Cypress accounts went to Cigna's bottom line. *Id.* at 29. North Cypress alleges that Cigna earned ████████████ contingency fees from North Cypress claims in the relevant time period, citing a "Summary Spreadsheet" from Cigna. (Doc. No. 443 at 7.)[4] Cigna, however, asserts that these contingency fees came from claims that were not subject to the Fee-Forgiving Protocol and therefore are not at issue in this case. (Doc. No. 461 at 5.) Cigna states that in fact it took active steps to reduce potential bias by removing North Cypress claims from its cost containment programs wherever possible. *See* Doc. No. 461 at 14-15; Doc. No. 447 at 24; *see also Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027 (5th Cir. 2015) (conflicts of interest are less important "where the administrator has taken active steps to reduce potential bias and promote accuracy") (citing *Glenn*, 554 U.S. at 116-17). Finally, Cigna cites Ms. Sherry's 2011 Rule 30(b)(6) deposition testimony, in which Ms. Sherry states that Cigna did not receive any part of the reductions or savings that resulted from the Protocol. (Doc. No. 447-1 at 7.) Given the ambiguity in the record as to whether Cigna collected a ██████ contingency fee on North Cypress claims subject to the Fee-Forgiving Protocol, the evidence on conflict of interest is not

---

[4] North Cypress also purports to cite the Rule 30(b)(6) deposition of Wendy Sherry as an admission that some of Cigna's Savings resulted from claims under the Fee-Forgiving Protocol which targeted North Cypress. (Doc. No. 443 at 7, Doc. No. 466 at 13.) However, the document cited is the deposition of Mary Ellen Cisar, a different Cigna representative. Moreover, Ms. Cisar makes no such admission; her testimony is only that Cigna is capable of calculating the percent of savings attributable to North Cypress. (Doc. No. 271-2 at 43.)

conclusive. Because there is a genuine fact dispute regarding conflict of interest, the Court disregards this factor for purposes of summary judgment.

In analyzing the internal consistency factor, the Court must determine whether Cigna's interpretation of the plan language conflicts with any other part of the plan. *See Hollis v. Lubrizol Corp. Long Term Disability Plan*, Civil Action No. 4:06-cv-3691, 2008 WL 7950030, at *5 (S.D. Tex. Feb. 14, 2008). North Cypress has not presented any evidence that it does. Instead, North Cypress argues that the plan language does not specifically authorize or require Cigna's interpretation. (Doc. No. 443 at 14-15, Doc. No. 466 at 11-12, Doc. No. 457 at 29-30.) The lack of specific authorizing language, however, does not make the plan language inconsistent. Second, North Cypress argues that Cigna interpreted the plan language inconsistently across customers. (Doc. No. 457 at 29.) This argument, however, does not go to *internal* inconsistency, that is, conflict between Cigna's interpretation of the plan and the plan language. Finally, North Cypress argues that Cigna's interpretation is inconsistent with the following plan language: "the provider *may* bill you for the difference between the provider's normal charge and the maximum reimbursable charge, in addition to applicable deductibles, co-payments and co-insurance." (Doc. No. 466 at 11.) According to this argument, Cigna's interpretation converts the "may" language to "shall" language. *Id*. In other words, whereas the plan language seems to allow latitude for the provider to charge some amount in patient contribution or not, the interpretation *requires* the provider to charge it. This argument, however, extrapolates too much from the plan language; there is no clear inconsistency between the two statements. Because North Cypress fails to produce evidence of internal inconsistency, this factor weighs in Cigna's favor.

The next factor is the factual background of the determination and any inference of lack of good faith. Cigna claims that it acted in good faith to try to curtail North Cypress's fee-

forgiving practices, relying on *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991). (Doc. Nos. 461 at 12-13, 473 at 8-9). In *Kennedy*, Judge Easterbrook highlighted the benefits of requiring patients to pay for part of their medical care, even when insured: "Co-payments sensitize employees to the cost of health care, leading them not only to use less but also to seek out providers with lower fees. The combination of less use and lower charges…makes medical insurance less expensive and enables employers to furnish broader coverage (or to pay higher wages coupled with the same level of coverage)." 924 F.2d at 699. Accordingly, the Seventh Circuit found that Cigna was entitled to withhold payment where a healthcare provider had intentionally collected its entire fee from Cigna by waiving patient contribution. *Id.*

However, there is a great deal of evidence that Cigna's primary motivation was not to root out fee forgiveness, but instead to pressure North Cypress into negotiating an in-network contract. Prior to North Cypress's 2007 opening, North Cypress and Cigna negotiated for an in-network contract but were unsuccessful. *N. Cypress*, 781 F.3d at 188. On October 24, 2007, a director of client management at Cigna expressed a great deal of interest upon learning that North Cypress had terminated its contract with another insurance company: "Very interesting. So they won't have a contract with anybody. They must be fat and happy—for now." (Doc. No. 267-4 at 11.) By July 2008, Cigna had developed an action plan for northwest Houston that specifically targeted North Cypress Medical Center. (Doc. Nos. 267-6 at 17, 267-7 at 2.) That plan included the Fee-Forgiving Protocol. *Id.* Cigna's medical director Dr. James Nadler wrote in an email about the Fee-Forgiving Protocol, "Recommended reduction in payment ASAP. Goal is to bring hospital to the table." *Id.* The file attached to Dr. Nadler's email states that the goal of the action plan is to "bring the desirable providers into the network at market rates." (Doc. No.

267-6 at 33.) A week later, Dr. Nadler wrote in another email, "[W]e should be implementing [the Fee-Forgiving Protocol] surgically on facilities with aggressive fee forgiving practices with hopes that we'll drive a contract discussion or stop the behavior." (Doc. No. 267-7 at 10.) In an August 6, 2008 email, in response to a question about reasons North Cypress may have to negotiate an in-network contract, another Cigna employee wrote, "our non-payment will hit them hardest." (Doc. No. 270-1 at 3.) By November 12, 2008, Cigna saw signs that its plan was working. Albert Ramirez wrote to Dr. Nadler and others, "FYI—Perhaps the SIU fee-forgiving letter has already had an impact. [Another Cigna employee] tells me the hospital CEO has already sent word (through CIGNA account management for CyFair ISD) of negotiating a possible Cigna contract." *Id*. at 78-79. Cigna employees contemplated delaying the negotiation of the contract because they were "enjoying" North Cypress's response. *Id*. at 109. Subsequent emails by Cigna employees reinforce the idea that Cigna's goal was to pressure North Cypress to negotiate an in-network contract. *See Id.* at 85, Doc. No. 270-2 at 91. These statements from Cigna employees suggest that Cigna's true motivation for the Fee-Forgiving Protocol was to negotiate an in-network contract, not to prevent harmful externalities in the insurance market. Cigna's arguments in response—that it paid North Cypress's claims for two years prior to the Fee-Forgiving Protocol and that North Cypress did not always deal in good faith—do not overcome that showing. Therefore, this factor weighs heavily in favor of North Cypress, since there are strong inferences that Cigna did not act in good faith.

Based on the evidence on the record, the Court finds that Cigna abused its discretion. Although there is no undisputed evidence of a conflict of interest or a lack of internal consistency, there is strong evidence in the record that Cigna acted in bad faith. Cigna claims to have been concerned about eradicating fee forgiveness, relying on a Seventh Circuit decision

from 1991. In fact, the evidence suggests that Cigna deliberately targeted North Cypress with its Fee-Forgiving Protocol in order to pressure it to negotiate an in-network contract. Given the strong evidence of bad faith, the Court finds that Cigna abused its discretion in violation of ERISA § 502(a)(1)(B). As a result, there is no need to reach the question of whether Cigna's actions were based on substantial evidence.

### iv.    Exhaustion of administrative remedies[5]

In order to pursue a claim under ERISA § 502(a)(1)(B), a plaintiff must either exhaust administrative remedies or show that pursuit of administrative remedies would have been futile. North Cypress does not dispute that it failed to exhaust administrative remedies for the vast majority of the benefit claims at issue prior to filing this suit. Instead, North Cypress argues that that any attempt to pursue administrative remedies would have been futile.

North Cypress's futility argument fails because North Cypress cannot show a "*certainty of an adverse decision*" on appeal. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000) (citing *Commc'ns Workers of Am.*, 40 F.3d at 433) (emphasis in original). In fact, of the 24 appeals presented in the cross-motions for summary judgment, three were *completely reversed* on appeal. (Doc. Nos. 278-1, 462-9, 462-10.) That is, although Cigna initially paid North Cypress only the sum calculated under the Fee-Forgiving

---

[5] The administrative exhaustion issue is not precluded by the decision in *Humble*. In that case, the court deemed the hospital's claims exhausted because of Cigna's failure to follow claims procedures, citing 29 C.F.R. § 2560.503-1(1). *Humble*, 2016 WL 3077405, at *2 n.1. The court did not elaborate on the particular acts or omissions of Cigna that triggered the application of § 2560.503-1(1). But regardless of what the court meant by Cigna's failure to follow claims procedures, collateral estoppel does not apply because the application of § 2560.503-1(1) is a fact-specific inquiry. The fact that Cigna failed to follow claims procedures with regard to Humble Surgical Hospital does not automatically mean that Cigna failed to follow claims procedures with regard to North Cypress Medical Center. Therefore, even if Cigna's behavior in this case is very similar to its behavior in the *Humble* case, collateral estoppel is not appropriate.

Protocol, on appeal, Cigna paid the full requested amount. Three more benefit claims were partially reversed on appeal. (Doc. Nos. 462-11; 278-1 at 12-13, 71-73.) North Cypress argues that the sweeping nature of the Fee-Forgiving Protocol made reversal on appeal unlikely. But no matter how unlikely administrative relief appeared ex ante, the record shows that Cigna was willing to grant it in some cases. As such, despite the considerable evidence of Cigna's hostility and bias toward North Cypress, North Cypress cannot show that appeal would have been futile. Therefore, summary judgment is granted to Cigna for all claims for which North Cypress did not exhaust administrative remedies.

### v. Lack of proper assignment

North Cypress is unable to produce written assignments of benefits for some number of its benefits claims.[6] North Cypress alleges that the written assignments for those claims were "misplaced or lost." (Doc. No. 443-12.) In lieu of written assignment forms, North Cypress attempts to prove assignment via the affidavit of Glenda Tankersley, the Business Office Director at North Cypress. *Id*. Ms. Tankersley alleges that each person who receives goods and services at North Cypress must sign a Consent and Assignment, which is reflected on the electronic UB-04 claims form that North Cypress generates. *Id*.

North Cypress argues that Cigna has waived this issue because Cigna failed to raise lack of proper assignment in its denial of claims forms. North Cypress cites only New York state law in support of this proposition, and the Court does not know of any Fifth Circuit law holding the same. Therefore, the Court finds that Cigna has not waived the issue of lack of proper

---

[6] The parties disagree about the exact number of claims lacking a proper assignment. Cigna asserts that 191 claims fall into this category. (Doc. No. 473 at 14.) North Cypress asserts that only 184 claims do. (Doc. No. 466 at 19-20.) The seven in dispute were obtained and scanned into North Cypress's Meditech System but could not be retrieved. *Id*. North Cypress has provided screenshots from the Meditech System evidencing those assignments. *Id*.

assignment.

Because North Cypress's ERISA standing is based on the assignment of benefits, it is crucial that North Cypress prove assignment for each claim. However, Cigna cannot point to any Fifth Circuit law stating that individual written assignments are the only acceptable proof. Courts in other circuits have found affidavits or other evidence besides written assignment forms sufficient to prove assignment in certain circumstances. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009) (affidavit was sufficient evidence of assignment under a preponderance of the evidence standard); *Am. Medical Ass'n v. United HealthCare Corp.*, No. 00 Civ. 2800 (LMM), 2007 WL 1771498, at *17 (S.D.N.Y. Jun. 18, 2007).

The Court also rejects Cigna's claim that North Cypress has provided no evidence with regard to assignment. On a summary judgment motion, an arguably self-serving affidavit such as Ms. Tankerley's suffices to create a fact issue when it is based on personal knowledge and sets forth facts that would be admissible in evidence. *Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016); *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011).

As such, this issue boils down to a genuine dispute of material fact: whether or not the patients in the claims at issue actually assigned their benefits to North Cypress. North Cypress has put forth evidence that they did, and Cigna disputes the sufficiency of that evidence. Because this fact is in dispute, summary judgment for either side on this issue would be inappropriate and is therefore denied.

###### vi.  MRC-2 claims

There is also a genuine dispute of material fact regarding Cigna's liability for MRC-2[7]

claims. The parties do not dispute that the Fee-Forgiving Protocol was applied to MRC-1 claims,

which are paid based on North Cypress's billed charges for particular medical services. *See* Doc.

No. 443 at viii. By contrast, MRC-2 claims are paid based on a percentage of Medicare charges.

*Id*. Cigna asserts that the Fee-Forgiving Protocol was never applied to MRC-2 claims. Two

Cigna representatives testified to that effect in Rule 30(b)(6) depositions, and Cigna has provided

a Special Investigations Provider Flag Request Form regarding the Protocol with the instructions

"Once you have determined the claim is not MRC2…" (Doc. Nos. 447-1 at 79:11-13, 448-12,

448-13 at 32:4-6, 181:17-182:2.) However, North Cypress contends that for some number of

MRC-2 claims, Cigna's explanation of benefits letter cites the exclusionary plan language in

justifying the amount paid. (Doc. No. 443-12 at 1 (Affidavit of Glenda Tankersley, North

Cypress's Business Office Director.)) As with the question of proper assignment, there is a fact

dispute here that cannot be resolved at the summary judgment stage. North Cypress and Cigna

have different accounts of how MRC-2 claims were paid, and they have produced conflicting

evidence. Therefore, neither party can be awarded summary judgment on this issue.

###### vii.  Emergency room claims

North Cypress also asserts damages for emergency room ("E.R.") claims subjected to the

Fee-Forgiving Protocol. In its Motion for Summary Judgment, North Cypress inaccurately states

that Cigna "claimed that it did not apply the Protocol to [North Cypress's] E.R. claims." (Doc.

No. 443 at 26.) In fact, in its opposition brief, Cigna does not deny that the Fee-Forgiving

Protocol applied to some E.R. claims. (Doc. No. 461 at 18-19.) Instead, Cigna argues that it had

---

[7] MRC stands for "Maximum Reimbursable Charge." Doc. No. 447 at viii.

reason to believe that North Cypress was engaging in Fee-Forgiving on E.R. claims. *Id*. Therefore, there is no dispute on this issue, and Cigna is liable (to the extent described *supra*) for violations of ERISA § 502(a)(1)(B) regarding E.R. claims.

### viii.    Calculating damages

North Cypress, through the report of its Business Office Director Glenda Tankersley, has proposed four possible methods to calculate damages for its § 502(a)(1)(B) claim. (Doc. No. 443 at 28-29.) In response, Cigna cites the report of its expert, Dr. Sean May. (Doc. No. 461 at 25-26.) According to Dr. May, Ms. Tankersley's report contains fundamental flaws. *Id*. Dr. May therefore comes to a different conclusion about the maximum amount of damages available. *Id*. Because the experts disagree, and in light of this Court's rulings on the § 502(a)(1)(B) claim *supra*, the Court declines to grant summary judgment on the issue of calculation of damages.

The other arguments regarding § 502(a)(1)(B) damages can be dispensed with quickly. Cigna argues that North Cypress may not recover damages for claims that were denied or reduced for reasons unrelated to fee-forgiving (for example, because the service was not medically necessary). (Doc. No. 447 at 30.) North Cypress does not contest this argument, stating that "claims that were denied for other than Protocol reasons…were not included in [North Cypress's] damage calculations." (Doc. No. 457 at 31.) Cigna also argues that North Cypress may not recover damages for claims for which there is no evidence of underpayment, noting that Ms. Tankersley included several claims in her report with $0 listed in damages. (Doc. No. 447 at 30.) North Cypress has clarified that it is not seeking damages for claims with $0 in damages, so there is no dispute on this issue. (Doc. No. 457 at 31.)

### B. North Cypress's ERISA § 502(a)(3) claim

In addition to its ERISA § 502(a)(1)(B) claim, North Cypress also brings a claim of breach of fiduciary duty under § 502(a)(3). Section 502(a)(3) allows a participant, beneficiary, or fiduciary to "obtain other appropriate equitable relief…to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a).

A plaintiff may not seek a remedy under § 502(a)(3) that is available under § 502(a)(1)(B). *See, e.g., Musmeci v. Schwegmann Giant Super Mkts.*, 332 F.3d 339, 349 n. 5 (5th Cir. 2003) ("Because we have found a remedy is available at law under Section 502(a)(1)(B), the Plaintiffs are foreclosed from equitable relief under Section 502(a)(3).") (citing *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002)); *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1335 (5th Cir. 1992) ("When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is 502(a)(1)(B)."); *Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir. 1998) ("Because Tolson has adequate redress for disavowed claims through his right to bring suit pursuant to Section 1132(a)(1), he has no claim for breach of fiduciary duty under section 1132(a)(3)."). North Cypress's claim clearly falls under § 502(a)(1)(B), as an action "to recover benefits due to [it] under the terms of his plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan." North Cypress may not seek identical relief via an allegation of breach of fiduciary duty under § 502(a)(3). Cigna is thus entitled to summary judgment on North Cypress's § 502(a)(3) claim.

### C. North Cypress's ERISA § 503 claim

North Cypress further alleges that Cigna violated ERISA § 503 by denying North Cypress a full and fair review of the claims at issue. Section 503 requires an employee benefit

plan administrator to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. In order to satisfy § 503, a claim administrator must provide review of the specific ground for an adverse decision. *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 254, 257 (5th Cir. 2005). The standard for a § 503 claim is substantial compliance. *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005). "Technical noncompliance with ERISA procedures will be excused so long as…the beneficiary [receives] an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Sanborn-Alder v. Cigna Group Ins.*, 771 F. Supp. 2d 713, 719 (S.D. Tex. 2011).

North Cypress does not allege any facts suggesting that Cigna failed to provide a full and fair review of the claims at issue. North Cypress points to evidence that Cigna automatically referred North Cypress claims to its Special Investigations Unit (SIU) and that Cigna treated North Cypress claims systematically by subjecting them to the Fee-Forgiving Protocol. Both of these allegations, though, refer to Cigna's *initial* processing of the claims, not to the subsequent review mandated by § 503. In fact, the record shows that Cigna provided clear notice about the specific reason for the denial of claims under the Protocol. In each of the denial letters reviewed by the Court, Cigna cited its concerns about fee-forgiving and quoted the exclusionary plan language. *See* Doc. Nos. 278-1, 462-9, 462-10, 462-11. Moreover, Cigna maintained an administrative review process that resulted in at least a handful of claims being partially or

completely reversed. *See supra* § III(A)(iv). As such, the Court finds that summary judgment should be awarded to Cigna on North Cypress's § 503 claim.

### D. North Cypress's ERISA § 502(c)(1)(B) claim

North Cypress also alleges that Cigna violated ERISA by refusing to provide requested plan documents. ERISA § 1024(b) requires plan administrators to make plan documents available to participants and beneficiaries upon request. 29 U.S.C. § 1024(b). Refusal to comply within 30 days subjects a plan administrator to liability of up to $100 per day under § 502(c)(1)(B). 29 U.S.C. § 1132(c)(1)(B). North Cypress alleges that it made numerous requests for information from Cigna for documentation of claims procedures and that Cigna repeatedly failed to provide the requested information.

North Cypress is neither a plan participant nor a beneficiary and therefore is not automatically entitled to review plan documents under § 1024(b). *See Koenig v. Aetna Life Ins. Co.*, Civil Action No. 4:13-CV-00359, 2015 WL 6473351, at *5 (S.D. Tex. Oct. 27, 2015) (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 959 F.2d 569, 576 (5th Cir. 1992), *overruled in part by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.,* 698 F.3d 229, 230 (5th Cir. 2012)). Although North Cypress as an assignee has the right to enforce the contracts between plan participants and Cigna, "[t]he assignment of a right to payment, without more, does not automatically convert North Cypress into a 'beneficiary' for purposes of…§ 502(c)." *Id*. The record shows that, in those cases where North Cypress presented written authorization from plan participants, Cigna provided the requested plan documents. *See* Doc. Nos. 268-50, 279-4. Because North Cypress was not automatically entitled to review the plan documents by virtue of the assignment of benefits, Cigna had no further obligation to North

Cypress under ERISA § 1024(b). Therefore, Cigna is entitled to summary judgment on North Cypress's § 502(c)(1)(B) claim.[8]

### E. Repricing agreements

Prior to the implementation of the Fee-Forgiving Protocol in 2008, North Cypress and Cigna entered into repricing agreements for hundreds of North Cypress's claims. (Doc. No. 443 at 29.) Once the Protocol was implemented, Cigna refused to honor 337 of those agreements, forming the basis of North Cypress's breach of contract claim. *Id*. Cigna argues that ERISA preempts any claim for breach of contract.[9]

ERISA's preemption clause states that the statute "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Subject to the preemption clause, "if an individual, at some point in time, could have brought his claim under ERISA 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). This provision is "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id*. at 208. The Supreme Court has commented that ERISA's preemption provision is "deliberately

---

[8] Cigna also argues that it cannot be liable under § 502(c) because it is not the designated plan administrator. Because North Cypress is not a participant or beneficiary for purposes of § 502(c), the Court does not reach this issue.

[9] This Court previously addressed the issue of preemption in its August 10, 2012 Memorandum and Order. (Doc. No. 331.) At that time, the Court found that North Cypress lacked standing to pursue its ERISA claims. *Id*. Because North Cypress could not pursue remedies under ERISA, the Court found that the breach of contract claim was not preempted. *Id*. The Fifth Circuit reversed this Court's ruling on the ERISA standing issue, thereby "remov[ing] the foundation of the district court's preemption ruling." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 198 (5th Cir. 2015). The Fifth Circuit remanded to this Court the issue of whether ERISA preempts North Cypress's breach of contract claim in light of the Fifth Circuit's ruling on ERISA standing. *Id.* at 197-98.

expansive" and "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

As the Fifth Circuit noted, the repricing agreements at issue here "by their terms are subject to the underlying ERISA plans." *N. Cypress*, 781 F.3d at 197. Therefore, the Court finds that North Cypress's breach of contract claim is preempted by ERISA. To the extent that North Cypress seeks relief for the repricing agreements under ERISA § 502(a)(1)(B),[10] damages may be available subject to the Court's findings *supra*.

### F. Cigna's affirmative defense of recoupment

Cigna has alleged that, by waiving patient contributions for medical services, North Cypress artificially inflated the cost of the service in the claims submitted to Cigna. (Doc. No. 293 ¶¶ 25-37.) As such, Cigna brought counterclaims under ERISA § 502(a)(3) to recover alleged overpayments to North Cypress prior to the implementation of the Fee-Forgiving Protocol. *Id*. ¶ 49. Alternatively, Cigna sought "a declaration that it may offset from future claim payments to [North Cypress] the amount of these overpayments." *Id*. This Court dismissed Cigna's ERISA claims as time-barred, and the Fifth Circuit affirmed. *N. Cypress*, 781 F.3d at 206. In affirming the dismissal of Cigna's ERISA counterclaims, the Fifth Circuit distinguished between a counterclaim and the affirmative defense of recoupment: "[a]s a purely defensive procedure, [recoupment] is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations." *N. Cypress*, 781 F.3d at 206 (citing *Distribution Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812-13 (5th Cir. 1990)).

---

[10] *See* Doc. No. 447 at 29-30 ("there is no need to determine if [North Cypress's] breach of contract claims are pre-empted….These are still ERISA claims").

Cigna now argues that its claim to recover alleged overpayments should be considered as an affirmative defense—recoupment—to North Cypress's ERISA claims rather than as a counterclaim. (Doc. No. 461 at 27.) Cigna acknowledges that it did not expressly plead recoupment as an affirmative defense, but it argues that it is within this Court's discretion to treat the pleadings as if Cigna had done so. *Id*.

Federal Rule of Civil Procedure 8(c)(1) states that a party "must affirmatively state any avoidance or affirmative defense" in its pleadings. A defendant must plead with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)). Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case. *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 342-43 (5th Cir. 1988). A court may, however, treat an affirmative defense as though it were expressly raised in the pleadings if it has been "tried by the parties' express or implied consent." *Steadfast Ins. Co. v. SMX 98, Inc.*, No. Civ.A. H-06-2736, 2008 WL 62199, at *17 (S.D. Tex. Jan. 3, 2008).

The parties here have not expressly or impliedly consented to try Cigna's affirmative defense to recoupment. In *Steadfast*, the case Cigna cites in support of its recoupment defense, the parties had "already thoroughly addressed in cross motions for summary judgment" the affirmative defense at issue. *Id*. By contrast, here North Cypress has stated that it "squarely objects to Cigna's effort to revive a pleading that has long since been dismissed." (Doc. No. 466 at 29 n.14.) Because the parties have not consented to treat Cigna's overpayment allegations as an affirmative defense to North Cypress's ERISA claims, the Court declines to exercise its discretion to consider them as such. Cigna has thus waived the affirmative defense of

25

recoupment by failing to plead it.

### G. North Cypress's claim for attorneys' fees

North Cypress has requested attorneys' fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1). Because the Court finds that fact questions remain on the issues of lack of proper assignment, the application of the Fee-Forgiving Protocol to MRC-2 claims, and the proper calculation of damages, an award of attorneys' fees would be premature at this stage.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that North Cypress's Motions for Summary Judgment (Doc. Nos. 443, 489) are **GRANTED IN PART**. Cigna's Motion for Summary Judgment (Doc. No. 447) is **GRANTED IN PART**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 28th day of September, 2016.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE