**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **NORTH CYPRESS MEDICAL CENTER OPERATING CO., LTD. AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC.,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:09 CV 02556** |
| **CIGNA HEALTHCARE, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, AND CIGNA HEALTHCARE OF TEXAS, INC.,** | § § § § § § § § | |
| **Defendants.** | § § | |

---

**CIGNA'S RESPONSE TO PLAINTIFFS' TRIAL BRIEF
ON FACTUAL AND LEGAL ISSUES**

---

**LAW OFFICE OF ALAN W. HARRIS**

Alan W. Harris
Attorney-in-charge
State Bar No. 09050800
Southern District ID No. 2171
325 N. St. Paul Street, Suite 3100
Dallas, Texas 75201
Telephone: (214) 965-8200
Facsimile: (214) 965-8209

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
Richard Nicholson
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

**COUNSEL FOR DEFENDANTS**

**OF COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION......................................................................................................... 1

I.  *HUMBLE* IS DISPOSITIVE AND NCMC FAILS TO OFFER A REASON
    WHY *HUMBLE* DOES NOT COMPEL JUDGMENT FOR CIGNA. ...................... 1

    A.  The Fifth Circuit's Decision in *North Cypress* Did Not Decide the Merits
        of this Case............................................................................................................ 3

    B.  NCMC:  "The *Humble Surgical* Facts Are Identical to the Facts in this
        Case."  (D.E. 489 at 10.) ...................................................................................... 6

    C.  The Court Should Find that Cigna's Interpretation Was Legally Correct. ............. 8

    D.  NCMC Has No Response to *Humble's* Core Holding that Cigna's
        Interpretation Was Not an Abuse of Discretion...................................................... 9

    E.  NCMC Fails to Distinguish *Humble's* and this Court's 2012 Holdings that
        Cigna's Actions Were Supported by Substantial Evidence................................... 13

II.  NCMC OFFERS NO RESPONSE TO AMPLE TRIAL EVIDENCE THAT
     PROVED ITS INEQUITABLE AND UNLAWFUL CONDUCT............................. 16

    A.  NCMC Encouraged Physicians-Investors to Breach Their Provider
        Contracts by Making Out-of-Network Patient Referrals to NCMC. .................... 17

    B.  NCMC Lured Patients by Waiving Patients' Cost-Share Obligations—an
        Illegal Practice that Cigna's Plans Forbid............................................................ 18

    C.  NCMC Used Two Sets of Books:  One to Bill Patients, and One to Bill
        Cigna for the Same Services. ............................................................................... 21

    D.  NCMC Knew That Its Conduct Was Illegal and Hid Its Scheme from
        Cigna. .................................................................................................................. 22

III.  NCMC FAILS TO EXPLAIN HOW IT IS NOT BARRED FROM
      RECOVERING ANY ADDITIONAL BENEFITS. ............................................... 24

    A.  NCMC Is Subject to Cigna's Affirmative Defenses as an Assignee. ................... 24

    B.  Cigna's Affirmative Defenses Are Viable............................................................ 26

IV.  IF THE COURT DECIDES TO AWARD DAMAGES TO NCMC
     NOTWITHSTANDING *HUMBLE* AND CIGNA'S DEFENSES, THE
     COURT SHOULD RELY ON CIGNA'S DAMAGES CALCULATIONS,
     NOT NCMC'S.......................................................................................................... 29

    A.  NCMC's Damages Calculations Are Overstated and Flawed. ............................. 29

    B.  NCMC's Attacks on Dr. May Are Unavailing. .................................................... 31

V.  NCMC REHASHES ARGUMENTS ON EXHAUSTION THAT THE
    COURT HAS ALREADY REJECTED; ITS NEW ARGUMENTS FARE
    NO BETTER. ........................................................................................................... 32

VI.  NCMC CANNOT RESURRECT ITS DISMISSED BREACH OF
     FIDUCIARY CLAIMS THROUGH ITS POST-TRIAL BRIEF.............................. 39

VII.  NCMC IS NOT ENTITLED TO ATTORNEYS' FEES. ........................................... 39

CONCLUSION ............................................................................................................ 42

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1 Lincoln Fin. Co. v. Met. Life Ins. Co.*,
    428 Fed. Appx. 394 (5th Cir. 2011)............................................................40

*Adhikari v. Daoud & Partners*,
    2017 WL 5904782 (S.D. Tex. Nov. 22, 2011) (Ellison, J.)......................42

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*,
    171 F. Supp. 3d 1092 (D. Colo. 2016)......................................................40

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
    173 F. Supp. 3d 363 (N.D. Tex. 2016) .....................................................19

*Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*,
    293 F.3d 1139 (9th Cir. 2002) ..................................................................26

*Bland v. Fiatallis N. Am., Inc.*,
    401 F.3d 779 (7th Cir. 2005) ....................................................................21

*Burns v. Bishop*,
    48 S.W.3d 459 (Tex. App. 2001)...............................................................25

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hospital, LLC*,
    2016 WL 3077405 (S.D. Tex. 2017) ........................................................11

*Connecticut General Life Insurance Company v. Humble Surgical Hospital, LLC*,
    878 F.3d 478 (5th Cir. 2017) ........................................................... *passim*

*Dunnagan v. Watson*,
    204 S.W.3d 30 (Tex. App. -- Ft. Worth, 2006, pet. denied)....................28

*Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*,
    2014 WL 3732448 (N.D. Tex. July 29, 2014).........................................33

*Encompass Office Solutions, Inc. v. Connecticut General Life Insurance Company*,
    2017 WL 3268034 (N.D. Tex. July 31, 2017)...................................35, 36

*Hinkle ex rel. Estate of Hinkle v. Assurant Inc.*,
    390 F. App'x 105 (3d Cir. 2010) ..............................................................10

*Franco v. Conn. Gen. Life Ins. Co.*,
    289 F.R.D. 121 (D.N.J. 2013)...................................................................30

ii

## TABLE OF AUTHORITIES (CONT'D)

Page

*Gonzalez v. Autozoners, LLC*,
   2012 WL 3069841 (S.D. Tex. July 27, 2012)......................................................39

*Harris v. Trustmark Nat'l Bank*,
   287 F. App'x 283 (5th Cir. 2008) ......................................................................37

*Matter of HECI Exploration Co., Inc.*,
   862 F.2d 513 (5th Cir. 1988) ..............................................................................26

*Iron Workers Local No. 272 v. Bowen*,
   624 F.2d 1255 (5th Cir. 1980) ......................................................................40, 41

*Jones v. Wells Fargo Bank, N.A*,
   858 F.3d 927 (5th Cir. 2017) ..............................................................................39

*Kennedy v. Connecticut General Life Insurance Company*,
   924 F.2d 698 (7th Cir. 1991) ....................................................................... *passim*

*Makoul v. Prudential Ins. Co. of America*,
   2013 WL 3874045 (N.D. Ill., July 25, 2013).......................................................27

*McCorkle v. Metro. Life Ins. Co.*,
   757 F.3d 452 (5th Cir. 2014) ..............................................................................31

*McGuffie v. Anderson Tully Co.*,
   2014 WL 4658971 (S.D. Miss. Sept. 17, 2014)...................................................10

*North Cypress Medical Center Operating Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) ........................................................................ *passim*

*Pearson v. Holder*,
   2011 WL 13185719 (N.D. Tex. Apr. 29, 2011) .................................................6, 7

*Piecznski v. Dril-Quip, Inc. Long Term Disability Plan*,
   354 F. App'x 207 (5th Cir. 2009) .......................................................................34

*Quality Infusion Care, Inc. v. Health Care Servs. Corp.*,
   628 F.3d 725 (5th Cir. 2010) ..............................................................................24

*Scott v. Durham*,
   772 F. Supp. 2d 978 (N.D. Ind. 2011) ...........................................................25, 26

*Swanson v. Hearst Corp. Long Term Disability Plan*,
   586 F.3d 1016 (5th Cir. 2009) ............................................................................34

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013)..............................................................................................27

## TABLE OF AUTHORITIES (CONT'D)

Page

*Vega v. Nat'l Life Ins. Servs., Inc.*,
    188 F.3d 287 (5th Cir. 1999) ........................................................16

*Wion v. Jenkins*,
    484 F. App'x 943 (5th Cir. Aug. 2, 2012) ..........................................9

**Statutes**

ERISA § 406(b) ..............................................................................39

ERISA § 502(a)(1)(B)...............................................................27, 29, 40

ERISA § 502(a)(3)....................................................................27, 28, 39

ERISA § 502(g)(1)........................................................................39, 40

ERISA § 503 ..................................................................................39

Tex. Occ. Code § 102.001 ..................................................................23

Tex. Occ. Code § 102.001(a) .........................................................17, 18

Texas Insurance Code § 1204.055(b) .............................................19, 20, 23

**Rules**

Rule 30(b)(6)..................................................................................41

Rule 59(e).....................................................................................33

**Other Authorities**

29 C.F.R. §2560.530-1.................................................................35, 36

U.S. Const. Art. III.............................................................................3

## INTRODUCTION[1]

Cigna's post-trial brief showed why the Fifth Circuit's recent decision in *Connecticut General Life Insurance Co. v. Humble Surgical Hospital, LLC*, 878 F.3d 478 (5th Cir. 2017) ["*Humble*"] is outcome-determinative and requires judgment for Cigna.  (D.E. 666 at 1-11.)  NCMC has no answer to *Humble*'s clear holding that Cigna did not abuse its discretion because its plan interpretation was supported by prior case law.  Instead, NCMC asks the Court to ignore that holding, relying on a willful misreading of *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015) ["*North Cypress*"], and a slew of mischaracterized record cites to suggest *Humble* does not apply.[2]  These efforts—along with NCMC's attempt to explain away its inequitable and illegal conduct, and its latest re-litigation of its failure to exhaust administrative remedies—all fail.  The Court should follow *Humble* and enter judgment for Cigna.

## I.   *HUMBLE* IS DISPOSITIVE AND NCMC FAILS TO OFFER A REASON WHY *HUMBLE* DOES NOT COMPEL JUDGMENT FOR CIGNA.

In *Humble*, the Fifth Circuit found that Cigna did not abuse its discretion when it applied the exact same interpretation to the exact same plan provision that is at issue here, on nearly identical facts, because previous courts had upheld that interpretation as legally correct.  878 F.3d at 485.  There is no dispute that this case and *Humble* are identical; NCMC says so itself.  (D.E. 662 at 5 (recognizing that both cases turn on "the ***identical*** Cigna plan exclusion and on the ***identical*** ERISA question/issue") (emphasis in original).)  In fact, NCMC's counsel has made this argument at every stage of this litigation since Judge Hoyt's now-reversed decision in 2016.  (*See,*

---

[1]   "NCMC" refers to Plaintiffs, "Cigna" refers to Defendants, and "FOF" refers to Cigna's Post-Trial Findings of Fact and Conclusions of Law (D.E. 668).  Unless otherwise noted, all emphasis has been added, and all ellipses, citations, and alterations have been omitted.

[2]   Because listing every instance where NCMC mischaracterized the record would require double NCMC's 100 pages, Cigna's brief includes only the most egregious examples.

*e.g.*, D.E. 666 at 1-2.)  But with the tables now turned, NCMC tries to re-write and mischaracterize both *Humble* and *North Cypress* to avoid *Humble*'s obvious dispositive effect.  NCMC's backpedaling is unavailing.

First, NCMC tries to manufacture a conflict between *North Cypress* and *Humble*, particularly on the question of "legal correctness" of Cigna's interpretation, based on a hodgepodge of factual observations from *North Cypress*.  This is nonsense.  *North Cypress* explicitly held it ***was not*** deciding the merits of Cigna's interpretation or abuse of discretion, while *Humble* specifically explained that it ***was*** deciding the merits and that Cigna did not abuse its discretion.  The latter decision is the one that binds this Court.  No amount of mischaracterization by NCMC can change the unambiguously narrow holding of *North Cypress* or *Humble*'s decision on the merits of Cigna's plan interpretation.

Second, NCMC tries to distinguish *Humble* on the facts.  This is remarkable, since before Judge Hoyt's decision was reversed, NCMC endlessly argued—in numerous briefs and at trial — that the facts here and in *Humble* are identical.  To use NCMC's own words: "The *Humble Surgical* Facts Are Identical to the Facts in This Case."  (D.E. 489 at 10.)  NCMC's about-face after the Fifth Circuit's decision and its efforts to now manufacture differences between the two cases are just not credible.

Third, NCMC argues that, even though Judge Hoyt's decision has now been reversed, the Court should still find Cigna's interpretation "legally incorrect."  But this argument fails to grapple with *Humble's* recognition that two courts, *Kennedy* and this Court in 2012, have already found that Cigna's interpretation was legally correct.  The Court should so find again.  In any event, the Court may "skip" this factor—as the Fifth Circuit did in *Humble*—and follow *Humble*'s holding that Cigna did not abuse its discretion.

Fourth, NCMC's brief buries the core holding from *Humble*—that Cigna did not abuse its discretion because two courts had previously upheld Cigna's interpretation. In that circumstance, *Humble* reasoned, these prior rulings were "***dispositive***" of the abuse of discretion issue. Despite this unequivocal holding, with its obvious implications here, NCMC still suggests *Humble* does not apply. But none of NCMC's efforts to explain away *Humble* have merit. What NCMC calls "egregious" facts in *Humble* are identical to the ones here; and a prior finding of "extraordinary" bad faith by Judge Hoyt was no obstacle for the Fifth Circuit when it found in Cigna's favor. And regardless, the evidence at trial in this case—as opposed to a truncated summary judgment record—proved that Cigna did not act in bad faith. (D.E. 666 at 17-19.)

Fifth, relying on *North Cypress*, NCMC argues that Cigna did not act with substantial evidence. This again ignores *Humble*'s holding that Cigna's application of the fee-forgiving protocol against Humble—which was based on ***less*** evidence than Cigna generated in investigating NCMC here—was made with substantial evidence. It also ignores this Court's holding in 2012 that Cigna acted with substantial evidence. And if there was any doubt, the trial evidence showed that Cigna diligently investigated NCMC and that Cigna correctly concluded NCMC was a fee-forgiver despite NCMC's concealment of its fraudulent billing.

A.    **The Fifth Circuit's Decision in *North Cypress* Did Not Decide the Merits of this Case.**

Knowing that this Court is bound by *Humble*, NCMC focuses on the Fifth Circuit's decision in *North Cypress* and claims that this Court is "bound" by that decision. (D.E. 662 at 1, 4.) This argument goes nowhere. As the Fifth Circuit recognized in *Humble*, *North Cypress* only reversed this Court's dismissal of NCMC's ERISA claims for lack of Article III standing, and it outlined the abuse of discretion standard for this Court to resolve NCMC's claims on the merits. *N. Cypress*, 781 F.3d at 196; *see also Humble*, 878 F.3d at 485 (explaining that *North Cypress*

vacated this Court's decision not on the merits but "on other grounds").  Besides asking this Court

to consider its list of abuse of discretion factors on a more fulsome record on remand, *North*

*Cypress* expressly took no position on how that standard should be applied to the limited record

before it, nor on this Court's prior abuse of discretion ruling:

> We say this much not to suggest an answer but only to underline the many issues
> Cigna asks us to decide.  ***We cannot resolve the merits on this record***, truncated as
> it was by the grant of summary judgment for want of standing. . . .
>
> ***We vacate and remand to allow the district court a full opportunity to consider
> all of North Cypress's claims for underpayment of benefits and its other closely
> related ERISA claims with a fully developed record***, including claims that Cigna
> breached duties owed its insureds under ERISA.

781 F.3d at 196-97.  That is also how this Court interpreted *North Cypress*'s mandate, allowing

the parties to engage in additional discovery and again brief summary judgment, and then ruling

on the merits.[3]  (D.E. 521.)  There is no other way to interpret *North Cypress*'s holding.

NCMC tries to muddy the waters of this crystal-clear record.  It cherry-picks a handful of

quotes from *North Cypress*, either altering them or surrounding them with characterizations of trial

testimony and exhibits from October 2017 to disingenuously make them appear to be merits

decisions.  (*See, e.g.*, D.E. 662 at 2-4.)  They clearly are not.  Putting aside the fact that NCMC

mostly mischaracterizes the trial testimony and exhibits it cites, ***none of it*** was before the Fifth

Circuit in 2015.  And as to the *North Cypress* quotes, it is indisputable that *North Cypress* did not

reach the merits and was not making any binding factual determinations.  Indeed, the Fifth Circuit

explicitly acknowledged that it could not decide merits on the "truncated" record before it and that

a "fully developed record" was required for a merits decision.  781 F.3d at 196-97.  The Court now

---

[3]   *See also* D.E. 552, Mem. & Order Denying Mot. for Attorney's Fees, at 4-5 ("The [*North Cypress*] panel made
clear that its decision was not a determination on the merits of the case . . . . [R]ather than achieving success on
the merits, North Cypress merely achieved an opportunity to prevail on the merits when the case was remanded
to this Court.").

has that fully developed record after additional discovery and trial.  And as explained below and in Cigna's post-trial brief, that record proves that Cigna's actions were not an abuse of discretion.

NCMC also claims that *North Cypress* actually did decide the merits issue of "Legal Correctness"—a decision it claims binds this Court—and that *Humble* improperly disagreed with that conclusion.   (D.E. 662 at 6 (decrying *Humble*'s reading of *North Cypress* as "patently inaccurate").)  NCMC's disagreement with the Fifth Circuit's reading of *North Cypress* in *Humble* is no reason for this Court to disregard *Humble*'s unambiguous holding.  And NCMC is wrong in any event, because any claim that *North Cypress* silently decided the merits when it remanded the case to this Court does not square with any plausible reading of that decision.  (*Compare* D.E. 662 at 6 *with North Cypress*, 781 F.3d at 196-97.)  At most, *North Cypress* questioned whether Cigna's interpretation was legally correct and said "[t]here are strong arguments" that it was not, but did so specifically "without deciding" that issue. 781 F.3d at 196; *Humble*, 878 F.3d at 484.  There is no "conflict" between *North Cypress* and *Humble*—despite NCMC's best efforts to manufacture one—and NCMC's desperate appeals to *stare decisis* (D.E. 662 at 6-7), the "law-of-the-case" doctrine (*id.* at 4-5) and Fifth Circuit procedure (*id.* at 7) are all meritless.

In contrast, NCMC does not dispute that *Humble* was a decision on the merits.  (*Id.* at 8-9.)  Nor could it.  In *Humble*, the Fifth Circuit specifically addressed whether Cigna's interpretation of its fee-forgiving exclusion and its corresponding fee-forgiving protocol were an abuse of discretion, and found that they were not.  878 F.3d at 485.  While NCMC of course dislikes *Humble*'s outcome, *Humble* decided the abuse of discretion issue on the merits while *North Cypress* did not.  And ironically, despite its appeals to *stare decisis*, NCMC fails to grasp that *stare decisis* actually obligates this Court to follow *Humble* and enter judgment in Cigna's favor.

*Pearson v. Holder*, 2011 WL 13185719, at *6 (N.D. Tex. Apr. 29, 2011) ("Under the doctrine of stare decisis, a district court is bound by the decisions of its jurisdiction's appellate court.").

B.   **NCMC:  "The *Humble Surgical* Facts Are Identical to the Facts in this Case." (D.E. 489 at 10.)**

Ever since Judge Hoyt's decision in *Humble*, NCMC has argued non-stop that Judge Hoyt's rulings should be given preclusive effect because the factual issues are identical.  (*See, e.g.*, D.E. 666 at 2-3.)  But now, for the first time in its post-trial brief, NCMC argues that *Humble*'s facts are ***distinguishable***.  This about-face is not credible.  And the same goes for NCMC's list of supposedly "distinguishable" facts, which are either irrelevant or directly contracted by its previous filings in this case.

As Cigna already explained, the key facts of this case are nearly identical to *Humble*.  (*Id.* at 2-3.)  But the Court need not take Cigna's word for it:  NCMC itself argued in its motion for summary judgment on preclusion that "The *Humble Surgical* Facts Are Identical to the Facts in This Case."  (D.E. 489 at 10.)  Here is how NCMC described both cases then:

- In both cases, "Cigna claimed that both providers were engaged in a practice allegedly known as 'Fee Forgiving'" and "Cigna alleged that the provider charged 'unreasonably excessive fees'" (*id.* at 10-11);

- Cigna investigated both facilities and "sent surveys in the form of questionnaires to numerous patients and members" (*id.* at 11);

- After concluding that both Humble and NCMC were fee-forgiving, Cigna "flagged both providers' claims and manually processed them through the Cigna SIU" (*id.*);

- To support its actions, "Cigna utilized the *same* exclusion with regard to both providers' claims, 'charges for which you are not obligated to pay'" and "applied the *same* Protocol with regard to both providers' claims" (*id.* (emphases in the original));

- Cigna used the same interpretation of its exclusion in both cases, "claim[ing] that the exclusion 'charges for which you are not obligated to pay' means that Cigna did not have to pay the claims or pay whatever it believed the providers had collected from the members" (*id.*);

- Cigna pointed to "the same language in the ASO Agreements" regarding its discretionary authority, which "was applicable with regard to the claims of both providers." (*Id.* at 12.)

Again, these are all ***NCMC's words***—not Cigna's.

The record in this case did not change between NCMC's prior arguments and its post-trial brief. The only thing that changed was that on those same facts, the Fifth Circuit reversed Judge Hoyt and found that Cigna did not abuse its discretion. Having spent years arguing that both Humble and NCMC engaged in the same conduct, were subject to the same investigations, and were subject to the same fee-forgiving protocols, which were supported by the same interpretations of Cigna's plans and ASO agreements, for NCMC to now argue that *Humble*'s facts are distinguishable in any meaningful way is just not believable.

Not surprisingly, the list of facts that NCMC now disingenuously calls "distinguishable" do not meaningfully differentiate this case from *Humble*. For instance, NCMC argues that while it called its fee-forgiving scheme a "Prompt Pay Discount," Humble did not. (D.E. 662 at 16.) But whatever NCMC called its scheme, its billing practices—which waived patient cost-share and charged exorbitant amounts to Cigna—were the same as Humble's. (*Compare Humble*, 878 F.3d at 482 *with* Tr. 5-115:25-116:9 (Tankersley); DX.030 at 30069; DX.101, 102, 103, 104.) And NCMC's claim that it provided more disclosure than Humble did, by sending form letters to insurers suggesting it was offering a "Prompt Pay Discount" and by stamping the same on its UB-04 forms—with no further information about its billing practices—is actually less disclosure than the patient ledgers Humble provided to Cigna in response to its inquires. *Compare Humble*, 878 F.3d at 482 *with* D.E. 662 at 16. NCMC also argues *Humble* had written agreements that promised payment for referrals (D.E. 662 at 15), apparently forgetting Dr. Behar's letters where he offered investors equity in NCMC for referrals. (DX.058 at NCMC71 0327258; Tr. 1-283:21-84:25 (Behar).) There is no meaningful distinction between the two, and regardless, the issue of how

7

patient referral payments were documented has no relevance to whether Cigna's plan interpretation was an abuse of discretion.

A number of assertions NCMC makes in its post-trial brief are directly contradicted by its prior filings. Most surprisingly, NCMC suggests that Cigna's methodology for paying NCMC's claims under the protocol was different from Humble's. Not only did the Fifth Circuit disagree with that assertion in *Humble*, 878 F.3d at 482 n.1 (referring to *North Cypress* "[f]or a detailed explanation of how Cigna calculated its 'proportionate share'"), but so do NCMC's earlier filings. (D.E. 489 at 11 (Cigna "applied the *same* Protocol with regard to both providers' claims.").) And while NCMC now claims that its contracts with patients "obligating" them to pay the full charge were different than Humble's, NCMC previously argued the opposite. (*Id.* at 10 ("Humble Surgical's Assignment of Benefits are almost identical to the language of the Assignments of Benefits that North Cypress utilizes" and "the patient remains financially responsible in both Humble Surgical's Assignments as they do in North Cypress' Assignments.").) NCMC also argues that in *Humble*, there was no evidence that in-network providers had their claims denied for waiving cost-share, but jere too, NCMC disagrees with itself. (*Id.* at 12 (in both cases, "the Cigna Protocol was not applied to most other out-of-network providers and certainly not applied to in-network providers who did not collect all of the patient responsibility amounts").)

NCMC is free to argue that *Humble* is wrong as a matter of law. But what NCMC cannot do is change the facts in *Humble* or in this case to avoid the Fifth Circuit's holding. As NCMC said time and time again, the facts of both cases are identical in every respect that matters for this Court's abuse of discretion analysis.

### C.    The Court Should Find that Cigna's Interpretation Was Legally Correct.

NCMC also argues that there are "no legal or factual reasons/bases for the Court to change its prior ruling" which found Cigna's interpretation "legally incorrect." (D.E. 662 at 3, 69.) There

are in fact plenty of good reasons for this Court to change that ruling:  it was the result of applying collateral estoppel based on Judge Hoyt's holding in *Humble* that Cigna's interpretation was legally incorrect.  (D.E. 521 at 8-9.)  The Fifth Circuit has now vacated Judge Hoyt's judgment, and it cannot provide a basis for collateral estoppel.  (D.E. 666 at 4 (citing *Wion v. Jenkins*, 484 F. App'x 943, at *1 (5th Cir. Aug. 2, 2012).)  So this Court should now revisit its prior ruling.

Cigna continues to believe that its interpretation of the fee-forgiving language was legally correct, for reasons Cigna set forth in prior briefing and for reasons in this Court's own August 2012 summary judgment opinion.  (D.E. 268, Mar. 16, 2012 Cigna's Mot. for Partial Summ. J., at 31-35; D.E. 331, Aug. 10, 2012 Order on Summ. J., at 12-13 ("Defendants' interpretation was legally correct."); D.E. 447, Jan, 20, 2017 Cigna's Mot. for Partial Summ. J., at 15-22.)  And *Humble*'s endorsement of *Kennedy v. Connecticut General Life Insurance Company*, 924 F.2d 698 (7th Cir. 1991)—a case where the Seventh Circuit interpreted "a nearly-identical exclusionary provision" and read it the same way as Cigna did both in *Humble* and in this case—further proves this Court's 2012 holding correct.  *See* 878 F.3d at 485.  In contrast, NCMC's post-trial brief offers no reason for the Court to decide the legal correctness issue in NCMC's favor, instead merely block quoting *North Cypress*—which, as explained above, did not even decide that issue.  (D.E. 662 at 69.)  Regardless, the Court need not rule on legal correctness, because it can simply follow the Fifth Circuit's approach in *Humble* and skip that inquiry.  *See* 878 F.3d at 482-85.

> **D.  NCMC Has No Response to *Humble's* Core Holding that Cigna's Interpretation Was Not an Abuse of Discretion.**

NCMC tries to bury *Humble*'s core holding—that Cigna did not abuse its discretion in interpreting the fee-forgiving language in its plans, given the available case law at the time—by almost exclusively focusing on *North Cypress* and the legal correctness issue.  (*See* D.E. 662 at 9,

18.)  But as the Fifth Circuit held in *Humble*, this Court need not even reach the "legal correctness" issue because Cigna did not—***and could not***—have abused its discretion in light of prior case law.

Humble *became* the latest in a long line of cases which hold that "where an administrator's interpretation is supported by prior case law, it cannot be an abuse of discretion—even if the interpretation is legally incorrect."  878 F.3d at 484 (citing *Hinkle ex rel. Estate of Hinkle v. Assurant Inc.*, 390 F. App'x 105, 108 (3d Cir. 2010) and *McGuffie v. Anderson Tully Co.*, 2014 WL 4658971 (S.D. Miss. Sept. 17, 2014)).  Acknowledging *Kennedy* and this Court's 2012 summary judgment decision, the Fifth Circuit recognized that when Cigna made its decisions, "[a]t least two other courts have effectively or explicitly concluded that the provision at issue here was legally correct."  878 F.3d at 485.  Because Cigna's reading of the plan was supported by then-available case law, the Fifth Circuit easily concluded that this interpretation "fell within [Cigna's] broad discretion" and that those prior rulings are "***dispositive*** of the issue."  *Id.* at 484-85 (alteration in original).

NCMC tries to latch on to *Humble*'s decision not to adopt a "bright-line rule" that an interpretation supported by prior case law can never be an abuse of discretion.  (*See* D.E. 662 at 9, 19.)  But NCMC offers no reason why that matters here.  NCMC argues that the Fifth Circuit's decision not to adopt a "bright-line rule" was due to "egregious facts" in *Humble*, and that it was narrowly applying *Humble*'s holding to just the facts of that case.  (*Id.*)  This argument does not make sense because *Humble*'s analysis focused on what prior case law supported Cigna's interpretation, not on Cigna's or Humble's conduct.  And even if it were true that *Humble* was narrowly limiting its holding—which it did not, under any plausible reading of that decision— NCMC has previously argued the facts in *Humble* are "identical" to the facts here, so it is not clear how characterizing the *Humble* facts as "egregious" helps NCMC.

10

The same goes for any suggestion by NCMC that this Court's prior finding of bad faith would cause this case to be the exception to *Humble*'s rule.  In his now-reversed opinion, Judge Hoyt went well beyond this Court's finding that Cigna had "mixed motivations" (D.E. 557 at 5), holding that "Cigna's unprecedented claims processing methodology and incessant related acts were ***extraordinary acts of bad faith***."  *Conn. Gen. Life Ins. Co. v. Humble Surgical Hospital, LLC*, 2016 WL 3077405, at *24 (S.D. Tex. 2017).  If the Fifth Circuit was not perturbed by Judge Hoyt's findings of "extraordinary" bad faith before holding that Cigna did not abuse its discretion because it relied on prior case law, there is no reason for this Court to be concerned about doing the same here.

This is particularly true given the trial evidence that showed Cigna in fact was not acting in bad faith.  (*See, e.g.*, D.E. 666 at 11-15.)  For instance, the trial record showed that Cigna lost money acting on behalf of plan sponsors (Tr. 4-151:6-10 (Sherry)), like Cypress Fairbanks Independent School District and its teachers, who had "suffered" because of rising out-of-network costs and premiums due to the "Access NCMC Program."  (Tr. 2-42:21-43:4 (Behar); Tr. 1-292:19-293:6 (Behar); Tr. 1-295:4-24 (Behar); DX.062.) ███████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████, and making tens of millions of dollars as part of the "the financial opportunity of a lifetime" and the "best investment [they] ever made." (Tr. 1-289:20-290:3 (Behar).)  And while the Court had previously questioned Cigna's contract negotiations with NCMC, Dr. Behar himself admitted that there was nothing wrong with using leverage in contract negotiations (Tr. 2-118:24-119:4 (Behar)), and ████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████

████████; Tr. 2-5:23-6:6 (Behar) (in Cigna-NCMC contract negotiations, "both sides were being aggressive").)

So, as Cigna explained in its post-trial brief, even absent *Humble*, the evidence adduced at trial provides another basis for this Court to reconsider and reverse its summary judgment finding of bad faith.  (D.E. 666 at 15.)  NCMC's post-trial brief does not address any of that evidence, and indeed tries to hand-wave the trial evidence away by claiming that the relevant "facts" are the "same" as what was presented to the Fifth Circuit in *North Cypress* and to this Court at summary judgment.  (*See, e.g.*, D.E. 662 at 12-15, 35.)  That simply is not the case.  Nor does NCMC challenge the other two abuse of discretion factors this Court considered at summary judgment— conflict of interest and internal consistency—which also go Cigna's way.  (D.E. 666 at 15-17.)  Taken together, these three factors would merit reconsideration and reversal of the Court's ruling even without *Humble*.

Finally, NCMC tries a scattershot of other arguments to escape *Humble*, but these can be dismissed out of hand.

<u>First</u>, NCMC argues that the facts in *Kennedy* are distinguishable.  (D.E. 662 at 18-19.) This argument is foreclosed by the Fifth Circuit's recognition that *Kennedy* and *Humble* (and therefore this case) "concerned the interpretation of ***a nearly-identical exclusionary provision***," and that in *Kennedy*, the Seventh Circuit upheld Cigna's interpretation "that the patient must be legally responsible for the whole charge."  *See* 878 F.3d at 485 (quoting 924 F.2d at 701).  Under *Humble*, these are the only *Kennedy* facts that matter in deciding abuse of discretion.

<u>Second</u>, NCMC also suggests that *Kennedy* "does not apply to NCMC, and this Court has so found."  (D.E. 662 at 18.)  The opposite is true.  In 2012, this Court found that Cigna's interpretation in *Kennedy* supported a finding of legal correctness (D.E. 331 at 12-13), and as

*Humble* recognized, this decision was "good law" until it was "vacated . . . on other grounds in 2015." 878 F.3d at 485 (citing *N. Cypress*, 781 F.3d at 196). In 2016, this Court found that *Kennedy* also applied (D.E. 521 at 13), but, in the context of an abuse of discretion analysis, decided that Cigna's bad faith outweighed Cigna's reliance on *Kennedy*. *Humble* has now conclusively held otherwise and determined the issue in Cigna's favor.

Finally, NCMC argues that Cigna did not contemporaneously rely on *Kennedy* in applying the fee-forgiving exclusion against NCMC, and therefore, *Humble* should not apply. (D.E. 662 at 17-18.) But *Humble* held that Cigna sufficiently relied on *Kennedy* when it applied the same fee-forgiving protocol, based on the same exclusion, against Humble as it did to NCMC here. And regardless, NCMC's claim that Cigna did not contemporaneously rely on *Kennedy* is also incorrect: Cigna's February 2007 letter notifying NCMC of Cigna's suspicion that NCMC was fee-forgiving both cited and relied on *Kennedy* as basis for reducing payment to a fee-forgiving provider. (PX.3B at CIG-NCMC00000130.)

In sum, NCMC offers no reason for this Court to ignore *Humble* and to stand by its summary judgment decision that Cigna abused its discretion. This is especially true given the evidence Cigna put forth at trial showing its good faith in applying the fee-forgiving protocol. The Court should have no hesitation in reconsidering its holding and finding in Cigna's favor.

### E.   NCMC Fails to Distinguish *Humble*'s and this Court's 2012 Holdings that Cigna's Actions Were Supported by Substantial Evidence.

NCMC alternatively argues that Cigna's investigations did not generate "substantial evidence" of NCMC's fee-forgiving to support application of the protocol. But as Cigna explained in its post-trial brief, the "substantial evidence" burden is a low one: it "is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Humble*, 878 F.3d at 485. And applying this deferential

standard, both *Humble*, on nearly identical facts, and this Court in 2012, on the facts of this case, have already found Cigna acted with substantial evidence in applying the fee-forgiving protocol. (D.E. 666 at 8-10.)  NCMC has no answer to these holdings and provides no reason for this Court to reconsider its 2012 holding that Cigna acted with substantial evidence.

NCMC tries to distinguish the survey evidence in *Humble* from this case.  (D.E. 662 at 20.) There is no meaningful difference.   In *Humble*, the Fifth Circuit found that the SIU's survey evidence showed that members were paying nothing or only a fraction of their required cost-share under their plains.  878 F.3d at 486 (highlighting member who paid nothing for a $25,191 service, and member who paid $276 for a $26,000 service).  Cigna's surveys showed that here too:  NCMC acknowledges there were at least "12 surveys show[ing] that patients were 'billed nothing and paid nothing" (D.E. 662 at 20), and NCMC fails to acknowledge several other surveys which showed that the member was charged less than $100.  (D.E. 331 at 13-14; DX.014, Sharrow Aff. ¶ 7.)

NCMC's attempts to distinguish *Humble* are also beside the point because, ***in this case***, this Court has already found that Cigna acted with substantial evidence based on the administrative record—concluding that "a reasonable mind could conclude that Plaintiffs were consistently waiving or reducing patient copayment amounts, and that patients were most often billed $100 or under.  The survey evidence is substantial." (D.E. 331 at 14.)   The administrative record has not changed since 2012:  in its post-trial brief, NCMC cites the same evidence that was then before the Court.  (D.E. 622 at 20 (citing DX.014, 2012 Sharrow Aff.).)   So the Court's substantial evidence ruling remains as correct today as it was in 2012.

NCMC also attacks the SIU's surveys for two supposed "deficiencies," but neither is relevant to whether Cigna acted with substantial evidence in applying the fee-forgiving protocol. First, NCMC suggests that the surveys did not account for the fact that, after NCMC signed a

repricing agreement, it could not "balance bill" a Cigna member.  (D.E. 662 at 20.)  But NCMC ignores that the "balance bill" it was agreeing to forgo was for the difference between the billed charge and the negotiated amount **with Cigna—not the patient's portion**, which the surveys confirmed NCMC did not collect.  (*See, e.g.*, DX.089.)  And the repricing agreements specifically note the provider should bill separately for "deductibles, co-insurance, or co-payments" and that "[p]ayment of benefits, if any, is subject to the terms and conditions of the Patient's benefit plan." (*Id.*)  So whether NCMC there was a repricing agreement or not, the surveys still would have shown that NCMC was fee-forgiving.

Second, NCMC argues that the surveys did not distinguish between ER and non-ER claims, and that one of the instances where the patient paid nothing was an emergency where the patient may not have been physically able to pay at the time they were admitted.  (D.E. 662 at 20-21.)  But NCMC ignores all of the other non-ER survey results where the patient paid nothing, and regardless, fails to grasp that the surveys were weeks or months after the service, so even if the patient was non-responsive at admission, NCMC could have—and should have—billed for cost-share before the patient received the Cigna survey.[4]

And even if NCMC was right about these minor deficiencies—which it is not—NCMC ignores the trial evidence, which showed Cigna extensively investigated NCMC's billing practices, including the surveys, speaking with employers, and seeking information directly from NCMC. (*See, e.g.*, Tr. 3-90:21-91:17; Tr. 3-202:20-203:6; DX.014 at 1-4; PX.3B at 130; PX.39.)  And NCMC also ignores the fact that it stymied Cigna's investigation at every turn and did not provide any information about its billing practices.  (*See* D.E. 331 at 14 (noting, in addressing substantial

---

[4]    NCMC also notes that one survey showed that a second insurer was billed (in addition to Cigna), but that has nothing to do with the patient's own cost-share obligation.  (D.E. 662 at 21.)

evidence, that Cigna "did not receive any information from Plaintiffs as to the amount of copayments Plaintiffs actually charged their patients"); D.E. 666 at 30-33.)  So even if NCMC's quibbles with Cigna's investigative methods were valid—and they are not—Cigna cannot be penalized for not having perfect knowledge about the way that NCMC's billing practices worked, when NCMC itself resisted giving that information to Cigna.  *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999) ("If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.") (en banc).  As this Court found in 2012, the evidence that Cigna adduced in its investigation clearly passed ERISA's low bar for applying the fee-forgiving protocol to NCMC's claims.

## II.   NCMC OFFERS NO RESPONSE TO AMPLE TRIAL EVIDENCE THAT PROVED ITS INEQUITABLE AND UNLAWFUL CONDUCT.

*Humble* is dispositive here and nothing in NCMC's post-trial brief convincingly argues otherwise.  But even without *Humble*, Cigna proved at trial that NCMC's conduct was inequitable and unlawful.  Thus, NCMC cannot recover any additional benefits even setting *Humble* aside.

NCMC's inequitable and unlawful scheme was multi-faceted, as explained in more detail in Cigna's post-trial brief.  (D.E. 666 at 17-33.)  NCMC offered area doctors the "financial opportunity of a lifetime" if they referred their patients to NCMC's out-of-network facility in violation of their in-network contracts with Cigna and of Texas law that prohibits offering financial remuneration for patient referrals.  To lure patients, NCMC also waived about 90 percent of the patient responsibility it was supposed to collect as an out-of-network provider, breaching Cigna's plans and violating Texas law that prohibits such waiver.  And NCMC also maintained two sets of fee schedules—one it used to bill patients, with rates set at 125 percent of Medicare, and another it used to bill health plans like Cigna, with rates set at 600 to 1,000 percent of Medicare.

At trial, NCMC did not seriously contest that it engaged in any of this conduct.  And not surprisingly, NCMC's post-trial brief offers more of the same.  With no answer to the mountain of trial evidence of its inequitable actions, NCMC instead cobbles together a list of "facts" Cigna did not prove.  This is a sideshow that does nothing to detract from ample evidence that NCMC offered remuneration for patient referrals, waived patient cost-share, had two sets of books—and that NCMC knew what it was doing was wrong.

### A.   NCMC Encouraged Physicians-Investors to Breach Their Provider Contracts by Making Out-of-Network Patient Referrals to NCMC.

Dr. Behar, NCMC's CEO, knew that his provider contract with Cigna, as well as the provider contracts of other Cigna doctors, prohibit referring patients to out-of-network facilities like North Cypress.  (D.E. 666 at 19-20.)  But Dr. Behar nonetheless implored NCMC investors to send patients to North Cypress in breach of their obligations to Cigna.  (*Id.* at 20-21.)  In his letters to investors, Dr. Behar promised them the "financial opportunity of a lifetime," and wrote: ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████  When faced with that evidence, Dr. Behar had to concede that "patient referrals *do serve as a proxy*" for NCMC in deciding how to award shares.  (Tr. 1-284:25 (Behar).) There is no doubt that this evidence establishes a violation of Tex. Occ. Code § 102.001(a) and that it also meets all elements of tortious interference with Cigna's provider contracts.  (D.E. 666 at 22-21.)

NCMC's response to this evidence is twofold.  First, NCMC argues that Cigna did not present evidence that other providers who sent patients to NCMC breached their agreements.  (D.E. 662 at 72-73.)  But NCMC itself presented trial evidence that Cigna terminated two other providers for referring patients to NCMC in violation of their contracts.  (PX.18; PX.31.)  And NCMC also

forgets Dr. Behar's own testimony, which showed that he solicited out-of-network referrals for procedures like X-rays and laboratories (which clearly were not emergencies (D.E. 668, FOF ¶¶ 46-50)), and which also showed that other NCMC investors-doctors in fact regularly referred their patients to NCMC in violation of their contractual obligations to Cigna.  (Tr. 1-280:8-15 (Behar).) This is more than enough to prove tortious interference.  (D.E. 666 at 22-23.)

Second, NCMC argues there is no evidence that it made payments for patient referrals (D.E. 666 at 74-76), but this is a strawman.  A violation of the Texas Occupation Code occurs when there is an "*offer*" of "*any remuneration*" "*for securing or soliciting a patient*"—no actual payment is required.  Tex. Occ. Code § 102.001(a).  And Dr. Behar's letters to investors were clearly soliciting patients by offering investors the opportunity to invest in future syndication rounds—with NCMC then using patient referrals as "a proxy" for awarding equity shares. (DX.057; DX.058; Tr. 1-284:25 (Behar).)

## B. NCMC Lured Patients by Waiving Patients' Cost-Share Obligations—an Illegal Practice that Cigna's Plans Forbid.

NCMC devised the "Access NCMC Program" because it knew that Cigna's plans generally require members to pay higher out-of-pocket costs when they go to out-of-network providers like NCMC, and because no rational patient would have otherwise come to NCMC as opposed to a cheaper in-network provider.  (D.E. 666 at 23-24.)  Under that program, rather than apply out-of-network co-insurance and deductible amounts to the billed charges submitted to Cigna for payment—as NCMC was supposed to do under the terms of Cigna's plans—NCMC instead applied in-network co-insurance and deductible amounts to 125% of the Medicare fee schedule, which NCMC internally described as the "NCMC Fee Schedule."  (*Id.*)  NCMC admitted that the purpose of these calculations was to approximate what patients would have paid had NCMC been an in-network provider, and that patients would not have to pay anything more than their estimated

18

in-network amount if they paid within 120 days.  (*Id.* at 24-25.)  The waiver of patients' out-of-network cost-share destroyed the financial incentives that Cigna's plans use to steer patients toward in-network providers, and it tortiously interfered with Cigna's plans.  This waiver also violated Texas Insurance Code § 1204.055(b), which prohibits health care providers from "waiv[ing] a deductible or copayment by the acceptance of an assignment."

The trial evidence on this issue was so overwhelming that NCMC's post-trial brief offers no facts to dispute it—nor could it.  (D.E. 662 at 78-81.)  Instead, NCMC offers a mélange of legal arguments that are irrelevant, incorrect, or both.

NCMC again falls back on *North Cypress*; but again, that case did ***not*** decide the legal correctness issue.  (*Id.* at 78.)  NCMC then also argues that because at summary judgment, this Court found Cigna's interpretation legally incorrect on collateral estoppel grounds from Judge Hoyt's decision in *Humble*, this somehow shows that NCMC was not waiving cost-share.  (*Id.* at 78.)  This, too, is incorrect.  The collateral estoppel grounds for the Court's summary judgment ruling no longer exist because the Fifth Circuit reversed Judge Hoyt.  And regardless, a court's finding on whether ***Cigna's*** interpretation was legally correct has no relationship to ***NCMC's*** conduct—nor does it undercut the ample evidence of NCMC's cost-share waiving in this case.

Next, NCMC seems to suggest there was some waiver by Cigna (*id.* at 78-79), but this is irrelevant because Cigna's awareness (or not) of NCMC's billing practices does not change NCMC's actions—which plainly did amount to cost-share waiving.  And in any event, NCMC failed to show the elements of waiver, which are "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right."  *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 404-05 (N.D. Tex. 2016).  Contrary to NCMC's

suggestion, Cigna in fact did not know that NCMC was waving cost-share until after its investigation.  And even then Cigna did not fully know the true nature of NCMC's scheme, because NCMC never disclosed it to Cigna.  Nor did Cigna acquiesce to NCMC's bad conduct: Cigna immediately objected to NCMC's practices as soon as it received the Notice of Discount from NCMC, and then it did so again before implementing the fee-forgiving protocol.  (PX.3B at CIG-NCMC00000130; PX.39.)   The only reason Cigna did not take further immediate action was because of NCMC's lawyer's misleading representations that NCMC's charges were real, and that NCMC was actually collecting out-of-network co-insurance.  (PX.47 at CIG-NCMC0011459.)

Equally irrelevant are NCMC's complaints about Cigna's fee-forgiving protocol (D.E. 662 at 79), because again, none of the supposed faults in Cigna's protocol have anything to do with whether NCMC was waiving cost-share.  And NCMC is wrong on the merits in any event, given *Humble*'s finding that the same fee-forgiving protocol was not an abuse of discretion.

Reprising an argument it made at trial, NCMC then argues that Texas Insurance Code § 1204.055(b) does not apply to out-of-network providers.  This argument is foreclosed by the statute's plain language, which states: "[a] physician or other health care provider may not waive a deductible or copayment ***by the acceptance of an assignment***."  The only time a provider would accept an assignment is if they were out-of-network, not in-network, because an in-network provider has a direct contract for reimbursement with the insurer.  And contrary to NCMC's suggestion, the Attorney General Opinion interpreting this statute makes no distinction between in-network and out-of-network providers.  Ironically, that opinion actually cites *Kennedy* (which involved an out-of-network provider) in explaining that it would be improper to use cost-share waiver to "induce that individual to use the health care provider's services."  Tex. Atty. Gen. Op. DM-215 (Tex. A.G.), 1993 WL 360841, *2 (April 13, 1993).

Finally, NCMC also claims that it could not have interfered with Cigna's plans because the plan is not a contract and it was not a party to that contract.  (D.E. 662 at 80-81.)  As to the former, courts routinely recognize that a health plan is a contract.  *E.g.*, *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 783 (7th Cir. 2005) ("An ERISA plan is a contract.").  As to the latter, by taking assignments, NCMC subjected itself to all the same plan requirements to which members are subject.  *See Kennedy*, 924 F.2d at 702 ("[I]f [a provider] wishes to receive payment under a plan that requires co-payments, then he must collect those co-payments[.]"); Sec. III.A.

## C.   NCMC Used Two Sets of Books:  One to Bill Patients, and One to Bill Cigna for the Same Services.

The last piece of NCMC's scheme was to use a completely different and much higher fee schedule to bill Cigna than it used to bill patients.  In submitting claims to Cigna, NCMC did not bill Cigna based on the 125% Medicare rate that it used to calculate Cigna plan members' cost-share responsibility.  (D.E. 666 at 27.)  Instead, NCMC used charges from its alternative fee schedule, known as its "Chargemaster."  And those charges were generally in the range of 600% to 1,000% of Medicare—i.e., substantially higher than the 125% Medicare methodology that NCMC used to charge patients.  (*Id.*)  For instance, as Cigna demonstrated at trial, for one claim NCMC charged Cigna over ***seven times*** as much as NCMC charged the patient.  (*Id.* at 28; *see also* DX.084 at NCMC37 141578; (Tr. 5-147:17-148:1 (Tankersley).)  NCMC never told Cigna that it was charging patients differently than it was charging Cigna, and NCMC never disclosed to Cigna the 125% Medicare-based amounts that it charged patients.  (D.E. 666 at 27-28.)

Here, too, the evidence of NCMC's dual-billing scheme was incontrovertible; and here, too, NCMC's post-trial brief offers no credible response.  NCMC's lone legal argument is that collateral estoppel applies to Judge Hoyt's ruling that Humble did not misrepresent its charges in a near-identical scheme—but as explained above, that decision has been reversed and collateral

21

estoppel cannot apply.  Indeed, the Fifth Circuit's recent reinstatement of Cigna's fraud claim against Humble for misrepresenting its charges supports a finding that Humble's—and NCMC's— conduct was in fact fraudulent.  878 F.3d at 487.

NCMC fares no better on the facts.  NCMC first repeats its claim that there was "only one Chargemaster" at NCMC.  (D.E. 662 at 81.)  This semantics argument ignores the undisputed existence of the "NCMC Fee Schedule" that NCMC used to calculate patient charges.  (Tr. 5-149:24-150:8 (Tankersley).)  NCMC also asserts that it does not "bill" the patient for the amount of the prompt-pay discount, but NCMC ignores its own witnesses' testimony admitting that patients would ***not*** have to pay anything more than the 125% Medicare charge they paid at registration.  (*See* D.E. 668, FOF ¶¶ 69-70.)  NCMC also tries to excuse its scheme because it supposedly could not estimate the true charge at time of registration (D.E. 662 at 82)—but even if that were true, NCMC fails to explain why its charges to Cigna were orders of magnitude greater than what NCMC estimated for the patient, or why they exceeded the estimate for even a single CPT code that was known at the time of admission.  (Tr. 5-144:20-145:20 (Tankersley).)  And NCMC could not accurately calculate Cigna member's cost-share as part of its prompt-pay discount, the discount should not have been offered in the first place.  Finally, NCMC also admits there was no evidence that the dual-billing scheme was disclosed to its patients (*id.*), which only further underscores Cigna's point—that NCMC tricked patients into believing they were paying their actual cost-share based on NCMC's actual charge, when in reality NCMC intended to charge Cigna a much higher rate.

### D.   NCMC Knew That Its Conduct Was Illegal and Hid Its Scheme from Cigna.

NCMC's internal documents revealed it knew from the very beginning that what it was doing was illegal. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ The

trial evidence was clear that NCMC understood this legal risk and concealed the true nature of its

"Access NCMC Program" throughout its interactions with Cigna. (Tr. 5-165:1-24 (Tankersley)

(agreeing that despite Cigna's requests, NCMC "has never disclosed to Cigna that it was using 125

percent of Medicare as the basis for the calculation of patient responsibility," nor did NCMC "ever

disclose[] to Cigna in writing that it was using in-network coinsurance rates").) NCMC's efforts

at concealment are just further evidence of its inequitable and illegal conduct.

Backpedaling both at trial and in its post-trial brief, NCMC now tries to argue that it

truthfully told Cigna about these billing practices. For instance, NCMC relies on its "Notice of

Discount" letters and stamping of UB-04 forms with "Prompt Pay Discount" as evidence of its

supposed disclosure. (*E.g.*, D.E. 662 at 82-83.) But in fact, these were lawyer-driven efforts to

create the appearance of disclosure, while concealing the actual mechanics of NCMC's billing

practices. (D.E. 666 at 30-31.) Indeed, NCMC's own witnesses conceded at trial that neither the

letters nor the UB-04 stamps disclosed that NCMC was basing patient responsibility amounts on

125 percent of Medicare or on in-network co-insurance rates. (*Id.*)

NCMC also points to letters from its lawyers to Cigna as more evidence of disclosure.

(*E.g.*, D.E. 662 at 76.) But, again, NCMC witnesses agreed that none of those letters disclosed the

125% Medicare calculation or the use of in-network co-insurance rates. (*Id.* at 31-32.) In fact,

those letters falsely stated the opposite. (PX.47 at CIG-NCMC0011459.; PX.46 at

CIG-NCMC0008766.)

NCMC similarly suggests that Cigna knew of "NCMC's billing practices" since 2007 (D.E.

662, at 81), citing to Wendy Sherry 30(b)(6) deposition preparation notes *from 2012* that make no

reference to the mechanics of the "Access NCMC Program" or NCMC's 125% of Medicare

calculation.  (PX.85B.)  Ms. Sherry was clear in her testimony at trial that Cigna **only** learned of the 125% of Medicare as a result of this litigation.  (Tr. 4-222:11-15 (Sherry).)

Finally, NCMC asserts that Cigna learned of the Chargemaster rates when it processed NCMC's claims and paid the Chargemaster rates for close to two years before implementing the fee-forgiving protocol.  (D.E. 662 at 77-78.)  While Cigna did pay NCMC's egregious charges for that period of time,[5] it was only because NCMC never disclosed to Cigna that it was not collecting out-of-network co-insurance or charging the patient at the significantly lower rate of 125% of Medicare.  Indeed, NCMC's lack of disclosure was the reason why Cigna was forced to perform its investigation in the first place, and why it was forced to estimate the amount NCMC collected from Cigna members as part of its fee-forgiving protocol.  (PX.39 at 000636-37.)

## III.  NCMC FAILS TO EXPLAIN HOW IT IS NOT BARRED FROM RECOVERING ANY ADDITIONAL BENEFITS.

### A.  NCMC Is Subject to Cigna's Affirmative Defenses as an Assignee.

In an effort to avoid the obvious consequences of its inequitable conduct, NCMC has espoused a novel theory that, as an assignee, NCMC can take advantage of all the rights that Cigna's plan members may enjoy under ERISA (such as the right to recover unpaid benefits due under the plan), but that NCMC does not have to accept any of the corresponding burdens (such as the obligation to comply with plan terms, or being subject to defenses like unclean hands).  (D.E. 662 at 24.)  This theory has no support in the law.  In fact, the opposite is true.  *Quality Infusion Care, Inc. v. Health Care Servs. Corp.*, 628 F.3d 725 (5th Cir. 2010) ("The positive aspects of assigned rights are accompanied by their corollary negatives," and "[a]n assignee is also subject

---

[5]   No doubt concerned with Dr. May's testimony explaining that NCMC's egregious charges were nearly twice that of other Houston hospitals, NCMC inappropriately attached a document from outside the trial record to its post-trial brief, which suggests that NCMC's rates **in 2018**, were "average."  The Court should disregard this exhibit as both improperly raised in NCMC's brief, and irrelevant to what NCMC was charging from 2008 to 2012.

to any defenses, limitations, or setoffs that could be asserted against the assignor's rights."); *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App. 2001) ("It is axiomatic that an assignee or subrogee walks in the shoes of his assignor and takes the assigned rights subject to ***all defenses*** which the opposing party might be able to assert against his assignor.").  Nor does NCMC's theory square with any of the other instances where an assignee like NCMC is subject to affirmative defenses, such as exhaustion of administrative remedies.  And it conflicts with NCMC's own claims for attorneys' fees in this litigation, which are the result of NCMC's own ***post-assignment*** conduct in pursuing this case, rather than the ***pre-assignment*** conduct of Cigna plan members.  (D.E. 666, at 36-37.)  If NCMC was right, then only the Cigna member could bring a claim for attorneys' fees, not NCMC.

In its post-trial brief, NCMC cites a single, out-of-circuit case, *Scott v. Durham*, 772 F. Supp. 2d 978, 979-80 (N.D. Ind. 2011), to supports its theory that it is not subject to an unclean hands defense as an assignee.  But NCMC misreads that case.  In *Scott*, the court recognized an exception to the general rule that an assignee is only subject to defenses available to the obligor against the assignor.  This exception addresses an "assignee's own conduct" with respect to the claim it was assigned.  *Id.* at 981 ("An assignee's right against the obligor is subject to any defense or claim ***arising from his conduct or to which he was subject as a party***") (quoting § 336(4) of the Restatement (Second) of Contracts)).  The court found the exception inapplicable, however, because the defendant tried to use ***pre-assignment*** conduct by the plaintiff-assignee as a ***post-assignment*** defense to a claim that was assigned to plaintiff by an unrelated third party.  *Id.* at 981.  And because the pre-assignment conduct was in no way related to the claim transferred by the assignment, the Court found the unclean hands defense inapplicable.  *Id.*

NCMC completely omits the exception from its discussion of *Scott*, and ignores that the facts of that case are very different.  Here, Cigna is asserting an unclean hands defense based on NCMC's ***post-assignment*** conduct directly related to the claim for benefits it now asserts against Cigna.  This is precisely the factual scenario where *Scott* court suggested the exception applies, and where an unclean hands defense could be used against the assignee as a result of its own conduct, even though that defense could not be used against the assignor.  *See id.* at 981.  And that makes sense, because to find otherwise would be the "perverse result" of an assignee being immunized against the consequences of its own inequitable or illegal conduct merely because it received its claim via assignment from a third party.  Rather than support NCMC's arguments, *Scott* actually does the opposite.

### B.        Cigna's Affirmative Defenses Are Viable.

The cases cited in Cigna's pre-trial brief demonstrate that courts have long recognized that equitable defenses apply to a claim for benefits under ERISA and can bar recovery on such a claim. (D.E. 666 at 30-31 (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1146 n.3 (9th Cir. 2002) ("the affirmative defenses of fraud and estoppel are available to plan administrators against employees seeking benefits."); *Matter of HECI Exploration Co., Inc.*, 862 F.2d 513, 523 n.18 (5th Cir. 1988) ("federal courts have entertained the defense of waiver in actions to recover benefits under ERISA.").)  Moreover, this Court already recognized at trial that unclean hands are a viable defense to an ERISA claim for benefits.  (Tr. 8-37:14-16.)  Nor does NCMC contest the validity of affirmative defenses against plan members under ERISA.  (D.E. 662 at 30.)  NCMC only contests affirmative defenses applied against itself as an assignee, but as explained above, NCMC's attempt to immunize itself from its own fraudulent conduct has no support in the law.  NCMC is subject to the defense of unclean hands just like a Cigna plan member, and thus cases like *Bergt* and *HECI* are directly on point.

NCMC also copies and pastes a series of arguments that it made before trial, when the parties briefed whether Cigna's affirmative defenses were viable and whether Cigna could put on evidence of unclean hands. (D.E. 594; D.E. 610; D.E. 614.) Considering the Court has already answered both these questions in the affirmative, it is not surprising that NCMC's arguments are just as unavailing after trial.

NCMC again claims that *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) bars Cigna from raising equitable defenses to NCMC's ERISA benefits claim. But NCMC continues to over-read *McCutchen*, which supports only the limited proposition that a participant sued by an administrator on an equitable lien by agreement under ERISA § 502(a)(3) may not assert equitable defenses that expressly contradict plan terms. *See id.* at 103. It says nothing about whether an administrator sued for benefits under ERISA § 502(a)(1)(B) can assert equitable defenses that are not addressed by plan terms. And here, Cigna's reliance on equitable defenses does not contradict plan terms—in contrast with other cases, where plans specifically bar the application of equitable defenses. The same goes for NCMC's reliance on *Makoul v. Prudential Ins. Co. of America*, 2013 WL 3874045, *4-5 (N.D. Ill., July 25, 2013), which itself relies on *McCutcheon*, and is distinguishable for that same reason.

NCMC also argues that Cigna's defense of unclean hands, waiver, and estoppel are identical to its dismissed offset and unjust enrichment claims. (D.E. 662 at 29-30.) But with these defenses, Cigna seeks no affirmative relief and it brings no claim for offset or recoupment—instead, it seeks to bar NCMC from recovering more money on NCMC's claim against Cigna. (D.E. 666 at 33-34.) Because Cigna seeks no affirmative relief with these defenses, they are not identical to an offset or unjust enrichment claim.

Next, NCMC argues that because the Court previously found hostility and bias, that somehow precludes Cigna from raising defenses to NCMC's claim.  (D.E. 662 at 6-8.)  This makes no sense:  **Cigna's** conduct is a separate issue from whether **NCMC's** unclean hands bar NCMC from obtaining relief.  The case NCMC cites stands for the general proposition that a party first do equity before it can claim any equitable relief, but this rule only applies to the party seeking affirmative relief from the court, like NCMC is doing here in seeking additional benefits. *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App. -- Ft. Worth, 2006, pet. denied).  Here, the only party seeking affirmative relief is NCMC.  And NCMC has cited no case that this rule applies to a party asserting an unclean hands defense against the party seeking affirmative relief.

Finally, NCMC also appears to argue that Cigna's November 2011 Answer (D.E. 220), which raised these defenses, is not operative because Cigna later filed amended counterclaims in April 2012 (D.E. 292).  (See D.E. 662 at 23 n.5.)  Cigna filed those amended counterclaims because in ruling on NCMC's motion to dismiss, the Court dismissed Cigna's counterclaims—not its affirmative defenses—as preempted, but it gave Cigna leave to re-file those counterclaims "to bring claims under ERISA in light of this Court's ruling[.]"  (See D.E. 283 at 19, 34.)  Cigna then refiled its counterclaims as an ERISA § 502(a)(3) claim (D.E. 292), but there was no need for Cigna to file an amended Answer.  So, the November 2011 Answer remains operative.  For the same reason, NCMC's related arguments of preemption and waiver of Cigna's affirmative defenses also fail.

**IV.    IF THE COURT DECIDES TO AWARD DAMAGES TO NCMC NOTWITHSTANDING *HUMBLE* AND CIGNA'S DEFENSES, THE COURT SHOULD RELY ON CIGNA'S DAMAGES CALCULATIONS, NOT NCMC'S.**

For reasons detailed above and as explained in Cigna's post-trial brief, the Court need not reach the issue of damages because the Fifth Circuit's decision in *Humble* is dispositive and requires entry of judgment in Cigna's favor, and because NCMC's illegal and inequitable conduct bars recovery.  If the Court were inclined to address damages, however, it should rely on Cigna's damages calculation of either $1.06 or $1.67 million performed by its expert, Dr. Sean May, rather than NCMC's ever-changing calculation of damages performed by its expert, Glenda Tankersley.

**A.    NCMC's Damages Calculations Are Overstated and Flawed.**

The alleged damages calculations put forth in NCMC's post-trial brief are significantly overstated for three reasons.  <u>First</u>, NCMC inappropriately relies on a damages estimate of $41,971,502.57 based on the 9,921 claims NCMC originally asserted in this litigation.  This figure ignores that the scope of this case was greatly narrowed by the Court's 2016 ruling on the parties' cross-motions for summary judgment—which dismissed all of NCMC's claims save for its ERISA § 502(a)(1)(B) count and which also eliminated all but 575 of NCMC's benefit claims that were originally in dispute due to NCMC's failure to exhaust its administrative remedies.  (*See* D.E. 521, 568.)  Effectively conceding the point, NCMC calls this damages calculation an "offer of proof," but doing so does not change the fact that an "offer of proof" is not *evidence* in the record (D.E. 666 at 51-52) and cannot serve as a basis for the Court's decision.  NCMC's "offer of proof" damages calculation should therefore be disregarded.[6]

---

[6]    Likewise, NCMC's repeated request for readjudication of the 9,921 claims it originally put at issue (D.E. 662 at 98-99) ignores the Court's summary judgment opinion dismissing all but 575 of those claims and, regardless, is inappropriate and redundant of the October 2017 trial on damages that will decide the amount to which NCMC is entitled, if anything.  To the extent the Court has any interest in entertaining NCMC's request (which it has not to date), Cigna incorporates its response to NCMC's prior motion for readjudication.  (D.E. 426.)

Second, NCMC's damages model 3, the one actually presented as evidence at trial, relies on NCMC's calculations of how Cigna actually paid NCMC's claims before Cigna implemented the fee-forgiving protocol—but this assumes Cigna would have paid claims based on NCMC's inflated **billed** charges to Cigna, rather than basing them on the substantially lower 125% Medicare amounts that NCMC **normally** charged patients.  (D.E. 666 at 41-42.)  The **normal** charge, as opposed to the **billed** charge, is the one included in Cigna's Maximum Reimbursable Charge ("MRC") definition (DX.001.035 at CIG-NCMC0582442; Tr. 4-221:5-10 (Sherry)), which, as Ms. Tankersley admitted, is essential for calculating damages in this case.  (Tr. 5-176:20-23 (Tankersley).)  Courts considering both definitions in Cigna plans have expressly acknowledged the distinction between the two, finding that Cigna's plan language requires payment based on the **normal** charge.  (D.E. 666 at 43 (citing *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121 (D.N.J. 2013)).)  And here, NCMC's "normal charge" for non-emergency care services was indisputably 125% of the Medicare fee schedule, far below the billed charges that NCMC then submitted to Cigna (which were generally 600% to 1,000% of Medicare).  (*See, e.g.*, Tr. 4-220:7-19; Tr. 4-221:25-222:9 (Sherry); Tr. 3-55:9-12 (Jones).)

NCMC's brief agrees that "the ERISA plans cover the subject matter of the dispute." (D.E. 662 at 90), but argues that the **billed** charge and the **normal** charge are the same thing because Cigna paid NCMC's billed rates before implementing the fee-forgiving protocol.  (D.E. 662 at 90-91.)  But NCMC ignores that Cigna did not know about its 125% of Medicare charge before the fee-forgiving protocol (indeed, until this litigation), and only paid NCMC's billed rates because it believed that also reflected NCMC's charge to Cigna members.  (Tr. 4-99:12-14 (Sherry).)  Had Cigna known of NCMC's dual-billing scheme, it would have paid claims based on the much lower 125% rate, as Cigna plans require.  (Tr. 4-91:10-12 (Sherry); *see also* Tr. 4-97:10-24 (Sherry).)

Moreover, NCMC fails to grapple with the deference accorded to Cigna's interpretation of what "normal charge" means under its plans, *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 n.12 (5th Cir. 2014) and the lack of deference NCMC's own interpretation would have.  Nor does NCMC realize that because Cigna's normal charge interpretation is supported by prior case law (D.E. 666 at 43-44), Cigna's interpretation cannot be an abuse of discretion.  *See Humble*, 878 F.3d at 485.

Because Ms. Tankersley did not calculate damages based on 125% of Medicare as required by Cigna's plans, her calculations of $2,770,086.92 in damages for the 180 claims where the fee-forgiving protocol were applied are unreliable and wrong.  The damages model consistent with Cigna's plan language is Dr. May's "normal charge" damages methodology, which estimated damages of $1,677,014.  (Tr. 6-62:3-6 (May).)

Third, Ms. Tankersley also calculated $2,388,182 in damages for MRC-2 claims.  (Tr. 5-196:10-12 (Tankersley).)  As Ms. Tankersley conceded at trial, however, Cigna "didn't apply the fee-forgiving protocol to MRC-2 claims."  (Tr. 5-196:16-18 (Tankersley); *see also* Tr. 4-187:9-13 (Sherry) (Cigna's fee-forgiving protocol "was not intended to be applied against [MRC-2] claims.").)  And NCMC **admits as much** in its brief.  (D.E. 662 at 70 ("Cigna did not apply the Protocol to MRC-2 plan claims.").)  NCMC has consistently failed to identify any basis to award **any** damages on these claims.  Its damages calculations of $5,215,528, which include damages for 395 MRC-2 claims, are unreliable.

B.    **NCMC's Attacks on Dr. May Are Unavailing.**

Rather than rehabilitating Ms. Tankersley's flawed damages calculations, NCMC spends most of its time attacking Cigna's damages expert, Dr. Sean May, on various grounds.  Here, too, most of NCMC's arguments are copied-and-pasted from elsewhere—including from NCMC's pre-trial motion to strike Dr. May, which the Court denied.  (*Compare* D.E. 662 at 87-91, 93-94, *with*

31

D.E. 595 at 2-7.)  The Court can dismiss these already-rejected arguments out of hand.  NCMC's remaining arguments are a screed about Dr. May's credibility, and a disagreement with legal assumptions about the Court's summary judgment ruling.  Neither argument has merit.

NCMC's attacks on Dr. May's credibility center on the amount of money Dr. May's firm, Charles River Associates ("CRA"), billed Cigna for its work in this case—but as the Court observed, CRA's fees are "not all that surprising" given the course of this nearly decade-old case. (Tr. 6-87:17-18.)  NCMC's attacks on Dr. May also ignore that Ms. Tankersley, NCMC's own expert, was director of NCMC's business office.  (Tr. 5-7:12-20 (Tankersley).)  If either of the two experts lacked independence, it was Ms. Tankersley.  NCMC also fails to identify one instance where it impeached Dr. May, or even one instance where his calculations were shown to be inaccurate.  At most, NCMC attacks assumptions that Dr. May was asked to make in calculating damages—but those assumptions go to the merits, not Dr. May's credibility.  For instance, NCMC takes issue with Dr. May's reliance on the Court's summary judgment opinion that dismissed all non-exhausted claims.  (D.E. 662 at 91-92.)  This issue has already been resolved:  NCMC did not dispute Cigna's claim-by-claim analysis, and the Court has already ruled on what claims are not exhausted (*see* D.E. 568 at 2), so Dr. May's exclusion of those claims from his damages calculations was proper.  NCMC's continued re-litigation of this issue is not.[7]

## V.     NCMC REHASHES ARGUMENTS ON EXHAUSTION THAT THE COURT HAS ALREADY REJECTED; ITS NEW ARGUMENTS FARE NO BETTER.

As Cigna anticipated in its post-trial brief (D.E. 666 at 50), NCMC devotes nearly thirty pages of its brief to again ask the Court to reconsider its summary judgment holding that NCMC

---

[7]   NCMC also incorrectly asserts Dr. May excluded all claims where NCMC did not have a written assignment. (D.E. 662 at 92.)  While Dr. May's report considered a scenario where the Court dismissed those claims, the damages he put forth at trial did not.  Those damages **only** excluded claims where NCMC had not exhausted administrative remedies.

failed to exhaust administrative remedies for the vast majority of its claims.  (D.E. 662 at 42-68.)

Not only is this procedurally improper (D.E. 662 at 50-52), it is unnecessary in light of *Humble*'s

finding that Cigna did not abuse its discretion in applying the fee-forgiving protocol.  Nor does

NCMC's exhaustion section offer anything new for the Court to consider.  It is primarily an

amalgamation of its prior arguments—recounted verbatim—from its numerous motions for

reconsideration.  (C*ompare* D.E. 662 at 42-68, *with* D.E. 526, D.E. 577, D.E. 585, *and* D.E. 619-

6 at 1-29, 37-38.)  In contrast to Cigna's motion for reconsideration due to *Humble*'s change in the

law, NCMC's repeat arguments—almost all of which could have been made to the Court prior to

summary judgment but were not—are precisely the kind that Rule 59(e) bars.  *See, e.g., Eagle Oil*

*& Gas Co. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 3732448, at *7 (N.D. Tex. July 29, 2014)

(denying motion for reconsideration where "brief supporting reconsideration is replete with

arguments previously made in its earlier opposition to Plaintiffs' motion for partial summary

judgment, and in support of its own cross-motion for summary judgment").

On the merits, NCMC still fails to offer the Court any good reason to reconsider its holding.

At summary judgment, NCMC's own evidence showed that Cigna reversed a number of claims

determinations on appeal, and the Court correctly held that exhaustion was thus not futile because

NCMC could not show a "certainty" of denial.  (D.E. 521 at 15-16.)  This evidence remains

uncontroverted.  NCMC still has not identified even a single claim (from the thousands it appealed)

where NCMC provided Cigna with evidence of what the member paid out of pocket, and where

the appeal was later denied and no additional benefits were paid.  In fact, the only evidence in the

record is to the contrary.  (*E.g.*, PX.86, at CIG-NCMC0719001 ("With regards to NCMC your

EOB reflects $250 but we will adjust your claim accordingly since you paid the provider

$1130.35."); *see also* D.E. 462 at 19-20 & Exs. 47-48; D.E. 521 at 15-16.)

Moreover, while NCMC repetitively highlighted the number of appeals that were ultimately denied as evidence of futility at trial and did so again in its brief (*see, e.g.*, D.E. 662 at 65-66), the reason the number of denied appeals was so high was due to NCMC's decision to only provide Cigna with form letters that intentionally omitted any evidence or documentation about the amount it charged the Cigna member.  (Tr. 5-172:2-15 (Tankersley); *see also* PX.85 at 56 (merely stating that "a prompt pay discount *may* have been offered to the member patient who qualified.").)  In fact, as the testimony and documents showed, it was NCMC's policy ***not to provide that information*** to insurers like Cigna at all. ███████████████████

██████████████████████████████████████████

████████  Under Fifth Circuit case law, where NCMC gave Cigna "nothing . . . to consider on appeal," the court correctly found that NCMC failed to exhaust its appeals.  *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009) (finding no exhaustion where "letter included no factual or substantive arguments, and no evidence."); *Piecznski v. Dril-Quip, Inc. Long Term Disability Plan*, 354 F. App'x 207, 211 (5th Cir. 2009) (finding no exhaustion where the "letter did not include the required information for an appeal letter; he did not 'include . . . the reasons(s) [sic] [he] believed that [his] claim was improperly denied,' and he did not 'submit any additional comments, documents, records or other information relating to [his] claim that [he] deem[ed] appropriate for [the Plan] to give [his] appeal proper consideration'").

Ultimately, the evidence in the record is clear.  Whenever Cigna was presented with evidence of the amount NCMC charged the member, Cigna reversed its initial determination.  In contrast, NCMC's policy was to withhold any information about what it collected from Cigna members, despite the fact that providing that information would have led to a successful adjudications on appeal.  This, as the Court already held, is fatal to NCMC's exhaustion and futility

claims.[8]  (D.E. 557 at 7-8.)  In addition to this core failing, NCMC makes a handful of arguments that fail for other reasons.

First, NCMC continues to rely on Judge Hoyt's decision in *Humble* and *Encompass Office Solutions, Inc. v. Connecticut General Life Insurance Company*, 2017 WL 3268034, at *13 (N.D. Tex. July 31, 2017), arguing that these cases hold that the involvement of Cigna's SIU did not provide "full and fair review" of the claims and that Cigna did not follow "claims procedures." (D.E. 662 at 62-64.)  As to *Humble*, it has now been reversed, and the Fifth Circuit's finding that Cigna's decision to implement the fee-forgiving protocol was not an abuse of discretion shows that Judge Hoyt's holding is no longer good law.  And as to *Encompass*, which NCMC continues to misread, the court did not even rule on exhaustion.  *Id.* at *13.  *Encompass* is also factually distinct because there, the court found Cigna had upheld denials on appeal "in every instance," 2017 WL 3268034, at *20, whereas here—as the Court previously recognized—Cigna reversed a number of claim determinations when provided with additional information.  (D.E. 557 at 10.)

NCMC also continues to cite 29 C.F.R. §2560.530-1 to support similar arguments that Cigna's claims procedures were deficient.  (D.E. 662 at 62-64.)  But, as the Court has already explained at summary judgment and again in its denial of NCMC's motion for reconsideration, NCMC's argument that Cigna's claims procedures were flawed has no record support.  (*See* D.E. 521 at 20-21) ("North Cypress does not allege any facts suggesting that Cigna failed to provide a full and fair review of the claims at issue."); D.E. 557 at 10-11 ("The evidence shows that Cigna provided notice in its denial letters of the reasons for denial, reviewed claims that were administratively appealed, and in some cases, reversed denials on appeal.").)  This is especially

---

[8]    In any event, to the extent the Court wishes to engage with any of NCMC's repeated arguments specifically, Cigna incorporates by reference its prior responses to NCMC's motions for summary judgment and various motions for reconsideration.  (*See, e.g.*, D.E. 461; D.E. 492; D.E. 533; D.E. 561; D.E. 581.)

true given the Fifth Circuit holding that Cigna's adjudication of Humble's claims, using the same process, was not an abuse of discretion.  Thus, NCMC's reliance on 29 C.F.R. §2560.530-1 is as misplaced as its reliance on Judge Hoyt's *Humble* decision and *Encompass*.

Second, NCMC disingenuously claims that based on privilege redactions in the SIU's updated investigative case notes, Kirkland & Ellis lawyers "were advising the SIU on NCMC's appeals."  (D.E. 662 at 46-47.)  NCMC then claims that this alleged involvement was another reason why NCMC did not receive a "full and fair review" of its claims and appeals.  (*Id.*)  While NCMC cites no case law suggesting involvement of a law firm in the appeals process is grounds for futility, the Court need not reach that issue because NCMC's assertions are wrong as a factual matter.  As Cigna's privilege log explains, Kirkland's involvement had ***nothing to do*** with appeals; instead, it related to routine collection of information as part of Cigna's response to NCMC's discovery requests.  While NCMC's mischaracterizations are of a piece with its other scorched-earth litigation tactics, if the Court has an even an ounce of doubt, Cigna would be glad to produce unredacted versions of the case notes for the Court's *in camera* review.

Third, NCMC argues that Cigna created a "*de facto* impossibility for NCMC to make second level appeals" because Cigna purportedly required "another" signed authorization before releasing the information supporting the first-level appeal determination.  (*Id.* at 47.)  The evidence NCMC cites does not support this argument.  In fact, the pages NCMC cites all suggest that Cigna "reviewed the submitted documentation," "determined that a signed authorization or consent was not included with the appeal," and was instructing NCMC how to properly provide an authorization if it chose to file a second level appeal.  (D.E. 662 at 47 (citing PX.86B at 5, 5E, 8, 32, and 37).)  Regardless, NCMC's argument that it was "impossible" to make second level appeals is belied by the fact that NCMC did file second level appeals in some instances.  (*See, e.g.*, PX.86B

at 12, 36, 86 ("We received a second level appeal request . . . from North Cypress Medical Center.").)  And, more importantly, NCMC's authorization argument ignores that the information NCMC needed to provide Cigna to make an appeal successful—evidence of the member's cost-share amount—was entirely within NCMC's own control.  Finally, the reason why NCMC's appeals were generally unsuccessful was because of its choice of filing the same form letter over and over again, and failing to provide any actual evidence or supporting documentation that showed how it was charging Cigna members.

Fourth, NCMC claims that its "generally worded, UCR appeal letters" were sufficient for exhaustion of administration remedies.  (D.E. 622 at 48.)  Not only is NCMC's argument untimely (since there is no reason NCMC could not have raised this issue at summary judgment), NCMC cites no case law to support this proposition, and ignores, as Cigna already explained in its own brief, Fifth Circuit case law that goes the other way.  (D.E. 666 at 54 & n.16 (citing *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 288 (5th Cir. 2008) ("A plaintiff has not exhausted his administrative remedies on an issue if he fails to raise it before the plan administrator.").)  Perhaps recognizing this "general" appeal letter argument is dead in the water, the spin NCMC offers in its post-trial brief appears to be that Cigna somehow waived its argument at trial that generally worded, UCR appeal letters were not exhausted, and therefore the Court should award damages on those claims.  (D.E. 662 at 67-68.)  This argument makes no sense, however, because as Cigna has repeatedly argued, and as the Court has so held, those claims were already correctly dismissed for failure to exhaust *at summary judgment*.  (D.E. 521 at 15-16; D.E. 568 at 1-2.)  It is not possible for Cigna to waive an argument that it has already won.  And while NCMC put on its so-called "offer of proof" at trial relating to the exhaustion issue (in vain hope of changing this Court's mind), Dr. May correctly excluded the claims dismissed at summary judgment by the Court from

the remaining 575 claims that were not.  Thus, NCMC's baseless claim of "waiver" and attempts to yet again circumvent the Court's summary judgment ruling fail.

Fifth, NCMC argues that exhaustion was futile because "Cigna also pre-authorized/pre-certified both inpatient and outpatient procedures to be reimbursed at the MRC level" and suggests that, after the treatment, Cigna then applied the fee-forgiving protocol to those claims.  (D.E. 662 at 48.)  But NCMC cites no case to support futility in such circumstances, nor does it even cite any evidence that Cigna's authorizations guaranteed that it would reimburse at the "MRC level."  Nor has NCMC put forth any evidence that Cigna applied the fee-forgiving protocol to any claim that was pre-authorized.  NCMC also contends that Cigna applied the protocol to numerous emergency room claims, but the fact that a claim went through the emergency room does not absolve NCMC of exhausting administrative remedies.

Finally, NCMC argues that in response to Cigna's letters asking for "clear evidence" that "the charges shown on the NCMC submitted billing are NCMC's actual charges for the services rendered" and that "the CIGNA Participant has paid their applicable out-of-network coinsurance and/or deductible in accordance with their CIGNA benefit plan" (PX.39 at 000636-37), the Court must also consider NCMC's response to Cigna's letter in deciding whether futility has been proven.  (D.E. 662 at 53-54.)  Those letters did not disclose to Cigna that NCMC was collecting in-network co-insurance or that it was collecting patient responsibility based on 125% of Medicare, as the trial record unequivocally showed.  Instead, that letter, as NCMC had falsely asserted before, "assur[ed Cigna] that charges shown on claims forms submitted to Cigna are NCMC's actual charges" and that "Cigna insured are liable for amounts such as OON co-insurance and deductibles."  (PX.46 at 000705.)  This is more evidence of NCMC's concealment of its billing

practices, both through its direct communications with Cigna and its appeals, which completely undercuts NCMC's argument of futility.

## VI.    NCMC CANNOT RESURRECT ITS DISMISSED BREACH OF FIDUCIARY CLAIMS THROUGH ITS POST-TRIAL BRIEF.

NCMC also uses its post-trial brief to raise various alleged breaches of Cigna's fiduciary duties under ERISA §§ 502(a)(3), 503, and 406(b).  (D.E. 662 at 71, 84-87.)  This is improper. The language in *North Cypress* that NCMC cites is merely an instruction to the Court that, in deciding the merits, it should also consider NCMC's breach of fiduciary duty claims.  781 F.3d at 197.  The Court did precisely that in its summary judgment opinion, and it dismissed those claims as a matter of law.  (D.E. 521 at 20-23 (dismissing Sec. 502(a)(3), 503, and 502(c)(1)(B) breach of fiduciary duty claims); D.E. 100 (dismissing Sec. 406(b) claim breach of fiduciary duty).) NCMC cannot use its post-trial brief to resurrect these dismissed claims.  *See, e.g.*, *Gonzalez v. Autozoners, LLC*, 2012 WL 3069841, at \*2 (S.D. Tex. July 27, 2012) (holding that Plaintiffs may not "resurrect his claim" after Court entered judgment against him, because "Defendants are entitled to finality of the Court's rulings").  Nor can it assert—after trial—new claims not contained in its pleadings.  *E.g.*, *Jones v. Wells Fargo Bank, N.A*, 858 F.3d 927, 933-34 (5th Cir. 2017) (reversing an award of damages on unpleaded claim after trial on separate claim).  Thus, NCMC is foreclosed from asserting any of the breach of fiduciary claims.

## VII.    NCMC IS NOT ENTITLED TO ATTORNEYS' FEES.

Finally, NCMC is not entitled to attorneys' fees under ERISA § 502(g)(1) because it has not yet achieved "some degree of success on the merits."  NCMC claims that it obtained success on the merits in its appeal to the Fifth Circuit.  (D.E. 662 at 101.)  Not so.  This Court already so held when it denied NCMC's interim application for attorneys' fees, explaining that "the panel made clear that its decision was not a determination on the merits of the case . . . .  [R]ather than

achieving success on the merits, North Cypress merely achieved an *opportunity* to prevail on the merits when the case was remanded to this Court."  (*See* D.E. 552 at 4-5 (emphasis original).)[9]

And even with respect to NCMC's claim of success at summary judgment, given the Court's forthcoming trial decision and the likelihood of a potential appeal, NCMC's request for attorneys' fees is still premature.  (*Cf.* Tr. 8-36:9-11 (Court noting that the parties "may even want to wait until after the appeal" to brief the issue of attorneys' fees).)  NCMC's request for fees is also particularly inapt because in light of *Humble*, as discussed above and in Cigna's post-trial brief, this Court's summary judgment rulings against Cigna on the § 502(a)(1)(B) claim should be resolved in Cigna's favor.  (*See* D.E. 666 at 4-10.)

In fact, if any party in this action is entitled to attorneys' fees, it is Cigna.[10]  A decision in Cigna's favor shows some success on the merits under Section 502(g).  *See, e.g.*, *1 Lincoln Fin. Co. v. Met. Life Ins. Co.*, 428 Fed. Appx. 394, 396 (5th Cir. 2011) (awarding attorneys' fees under 29 U.S.C. § 1132(g) to defendant insurance company where it prevailed on the merits and claim was dismissed).).  And an analysis of the five discretionary *Bowen* factors that NCMC recounts in its brief[11] shows that Cigna is entitled to fees.

---

[9]    Contrary to Plaintiffs' assertion, the number of cases, appellate briefs, secondary sources and pleadings citing the Fifth Circuit's decision in this case does not demonstrate that NCMC has achieved "success on the merits."  (D.E. 662 at 101.)  Not only does NCMC fail to cite a single case that supports its novel theory of "success on the merits," it fails to address or account for decisions that expressly acknowledged that the Fifth Circuit did not reach the merits of the case.  *See, e.g.*, *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1112 (D. Colo. 2016) ("[T]he Fifth Circuit's analysis raised questions but did not offer definitive answers, and was arguably dicta, since the issue of legal correctness was not decided but was remanded to the district court."); *Humble*, 878 F.3d at 485 (noting that the Fifth Circuit did not reach the issue of legal correctness and vacated this Court's opinion on other grounds).

[10]   ERISA § 502(g)(1) grants district courts discretion to award attorneys' fees and costs "to *either* party."

[11]   *See* D.E. 662 at 102 ("(a) the degree of the opposing party's culpability or bad faith; (b) the ability of the opposing party to satisfy an award of attorney's fees; (c) whether a fee award would deter other persons acting under similar circumstances; (d) whether the party seeking fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant question regarding ERISA itself; and, (e) the relative merits of the parties' position.") (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

For instance, as described in Sec. II, the trial record confirmed that North Cypress engaged in inequitable and illegal conduct through its improper referrals, cost-share waiver, and dual-billing scheme. NCMC plainly has the ability to satisfy an award of attorneys' fees, given Dr. Behar's unabashed proclamations of NCMC's success and windfall profits. (D.E. 662 at 21.) An award of attorneys' fees for Cigna would also deter other fee-forgiving providers, like NCMC and Humble, from trying to hoodwink insurers and plan members through their misleading billing practices. Cigna's application of the fee-forgiving protocol sought to benefit ASO plan sponsors and their members from the rising costs and premiums caused by the "Access NCMC Program." Finally, given the ample evidence at trial of North Cypress's inequitable conduct, and the Fifth Circuit's unequivocal holding in *Humble* that Cigna did not abuse its discretion, the relative merits favor Cigna. So, in contrast to what NCMC writes in its brief, the *Bowen* factors strongly weigh in favor of an award of fees for Cigna—not NCMC.

In addition to the *Bowen* factors, the Court should also consider the significant time, resources, and expense that Cigna and this Court have been forced to spend to address NCMC's frivolous, duplicative, and costly litigation tactics through the duration of this nearly decade-old litigation. (*See, e.g.*, D.E. 114 & May 11, 2011 unnumbered docket entry (ordering Rule 30(b)(6) deposition of NCMC's corporate representative to be conducted in court before Judge Ellison); D.E. 264 (NCMC's *Daubert* motion to exclude Cigna's expert's first report); Aug. 18, 2015 unnumbered docket entry denying NCMC's *Daubert* motion to exclude Cigna's expert's first report; D.E. 504 (NCMC's latest motion to exclude the same report); D.E. 418 (NCMC's motion to compel Cigna to adjudicate claims); D.E. 432 (NCMC's "supplement[al]" reply brief in support of motion to compel claim adjudication); D.E. 487 (NCMC's "request for a ruling" on its motion to compel claim adjudication); D.E. 497 (NCMC's "Request to Consider Its Motion to Compel

Cigna to Adjudicate Claims"); July 28, 2016 unnumbered docket entry deferring consideration of motion to compel pending rulings on motions for summary judgment.).)  Courts, including this one, have found these kinds of scorched-earth tactics an additional factor that weighs in favor of awarding attorney's fees to a prevailing party.  *See, e.g., Adhikari v. Daoud & Partners*, 2017 WL 5904782, at *9 (S.D. Tex. Nov. 22, 2011) (Ellison, J.) ("Each instance in which courts have found expenses warranted has featured conduct, either by the movant or non-movant, that somehow rendered the litigation markedly less fair, less speedy, or more costly.").

For these reasons, the Court should deny NCMC's request for fees and costs and instead award the same to Cigna.

## CONCLUSION

Cigna respectfully requests that the Court enter the proposed findings of fact and conclusions of law that Cigna filed with its opening post-trial brief and motion for reconsideration (D.E. 668), and enter an order dismissing all of NCMC's remaining claims and awarding NCMC nothing in damages, fees, or costs.

DATED this 7th day of February, 2018

Respectfully submitted,

*/s/ Joshua B. Simon*        
Alan W. Harris
Attorney-in-charge
State Bar No. 09050800
Southern District ID No. 2171
325 N. St. Paul Street, Suite 3100
Dallas, Texas 75201
Telephone: (214) 965-8200
Facsimile: (214) 965-8209

**COUNSEL FOR DEFENDANTS**

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
Richard Nicholson
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

**OF COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2018, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users":

> J. Douglas Sutter, Esq.
> Kelly, Sutter & Kendrick, P.C.
> 3050 Post Oak Blvd., Suite 200
> Houston, TX 77056
> Telephone: (713) 595-6000
> Facsimile: (713) 595-6001

In addition, I caused a true and correct copy of the foregoing document to be served via e-mail on Mr. Sutter.

> */s/ Joshua Simon*
> Joshua Simon